**GUTRIDE SAFIER LLP**

Seth A. Safier (State Bar No. 197427)
   seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
   todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jyotindra Shakya and Thanh Tran, on behalf of themselves and those similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>Fantasia Trading LLC; Anker Technology Corporation<br><br>          Defendants. | Case No. _____<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR, UNLAWFUL, AND DECEPTIVE TRADE PRACTICES; AND UNJUST ENRICHMENT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Jyotindra Shakya and Thanh Tran (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Fantasia Trading LLC and Anker Technology Corporation (collectively, "Defendants" or "Anker"). Plaintiffs' allegations against Defendants are based upon information and belief and upon investigation of Plaintiffs' counsel, except for allegations specifically pertaining to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

## **INTRODUCTION**

1.     This case concerns Defendants' false and deceptive labeling, advertising, marketing, and sale of their Eufy brand security cameras (the "Eufy Cameras").[1] Although Defendants prominently represents in their marketing and packaging that the Eufy Cameras have "1080p" / "HD," "2K," or "4K" / "UHD" video resolution, they do not. To the contrary, the actual video resolution of the Eufy Cameras is significantly lower than "1080p" / "HD," "2K," or "4K" / "UHD" video resolution.

2.     Video resolution is a critical factor that consumers consider in determining what security camera to purchase. Higher resolution cameras are desirable because they enable recorded subjects to be identified with greater accuracy and longer distances. A security camera with true 1080p / HD, 2K, and/or 4K / UHD video resolution is capable of producing a crisp image that can enable users to identify subject by their faces, hair, clothing, tattoos, and other indicia. As a result, security cameras with higher resolutions, such as 1080p / HD,

---

[1] As used in this Complaint, including in the Class definition, the terms "Eufy Camera" and "Eufy Cameras" shall refer exclusively to Eufy security cameras that were advertised as being capable of "1080p" / "HD," "2K," or "4K" / "UHD" resolution.

2K, and/or 4K / UHD command a higher price than cameras with lower resolutions.

3.    Anker Technology, a sophisticated and well-established company who markets various electronic devices under several brands, knows this to be the case, and deliberately advertises, markets and sells the Eufy Cameras in a way that deceives consumers into falsely believing that they have a higher resolution than that of which Eufy Cameras are capable.

4.    Defendants made the "1080p" / "HD," "2K," or "4K" / "UHD" resolution claims throughout the Class Period in all of their significant marketing: on the Eufy Cameras product pages (available at https://us.eufy.com/); on their Amazon.com product pages; on the pages and in the advertising material of other third-party retailers; in the Eufy Cameras product specifications; and on the packaging of the Eufy Cameras themselves.

5.    Defendants never disclosed to consumers that the Cameras are incapable of achieving "1080p" / "HD," "2K," or "4K" / "UHD" video resolution under any circumstances.

## PARTIES

6.    Plaintiff Thanh Tran is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Jose, California. Mr. Tran intends to remain in San Jose and makes his permanent home there.

7.    Plaintiff Jyotindra Shakya is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Fremont, California. Mr. Shakya intends to remain in Fremont, California and makes his permanent home there.

8.      Defendant Fantasia Trading, LLC ("Fantasia") is a limited liability company existing under the laws of the State of Delaware, having its principal place of business in Ontario, California.

9.      Defendant Anker Technology Corporation ("Anker") is a corporation existing under the laws of the State of Delaware, having its principal place of business in Bellevue, Washington.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class members, and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs.

11.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

12.     The injuries, damages, and/or harm upon which this action is based occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendants have engaged, and continues to engage, in substantial and continuous business practices in the State of California.

13.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including within this District.

14.    In accordance with California Civil Code Section 1780(d), Plaintiff Shakya concurrently file herewith a declaration establishing that, at various times throughout the class period, he purchased one or more Eufy Cameras while located in California. (*See* Exhibit A.)

15.    Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

### SUBSTANTIVE ALLEGATIONS

**A.    Image Resolution is Critical to Purchasers of Security Cameras.**

16.    In the security camera industry, image resolution is everything. The higher a camera's resolution, the more likely it is that suspects can be identified by faces, hair, clothing, tattoos, and other indicia—especially as the distance between the camera and the subject increases.

17.    Anker advertises that each of the Eufy Cameras it sells offers a video resolution of ***at least*** "1080p" (also called "HD"). A "1080p" camera is one that is capable of recording an image with 2,073,600 ***distinct*** pixels. Specifically, "1080p" cameras record images at 1,920 distinct pixels horizontally by 1,080 distinct pixels vertically.[2]

18.    However, ***most*** of the Eufy Cameras Anker sells are advertised as being capable of providing "2K" video resolution. "2K" video resolution is greater than "1080p" video resolution. A "2K" camera is one that is capable of recording an image with 3,686,400 ***distinct*** pixels. Specifically, "2K" cameras

---

[2] *See* https://www.boxcast.com/blog/what-does-4k-actually-mean, accessed 7/22/2023

1   record images at 2,560 distinct pixels horizontally by 1,440 distinct pixels

2   vertically.[3]

3        19.   Some of the most expensive, purportedly high resolution Eufy Cameras

4   Anker sells are advertised as being capable of providing "4K" video resolution

5   (or "Ultra HD," also "UHD" resolution, terms which Anker also places on certain

6   of its product specification sheets). "4K" video resolution is greater than "2K"

7   video resolution, providing "far greater image detail than any other resolution."[4]

8   A "4K" camera is one that is capable of recording an image with 8,294,400

9   *distinct* pixels. Specifically, "4K" cameras record images at 3,840 distinct pixels

10  horizontally by 2,160 distinct pixels vertically.[5]

11       20.   *Distinct* pixel density is critical to the crispness of an image. For

12  example, compare the following images:

13

14

15

16

17

18

19

20

21

22
    _____

23      [3] *See* https://www.cctvcameraworld.com/2k-vs-4k-security-cameras-systems/,
    accessed 7/22/2023

24      [4] *See* https://www.boxcast.com/blog/what-does-4k-actually-mean, accessed
    7/22/2023

25      [5] *Id.*

26

Figure 1



Figure 2

21.    Both images are the same size: 1,920 pixels wide and 1,080 pixels high. Further, both images contain the same number of pixels: 2,073,500. However, the second image has only one-tenth the number of **distinct** pixels as the first image.[6] The loss in pixel density severely degrades the image, making it difficult or impossible to identify the subjects.

**B.    Anker Advertises the Eufy Cameras as Being Capable of "1080p" / "HD," "2K," or "4K" / "UHD" Video Resolution**

**1.    Overview of Eufy Cameras**

22.    Anker prominently markets the Eufy Cameras as being capable of, variously, "1080p" / "HD," "2K," or "4K" / "UHD" video resolutions. The following representations concerning video resolution accompanied the listed Eufy Cameras advertised on Defendants' website (https://us.eufy.com/)[7]:

| Eufy Camera Model | Advertised Video Resolution |
| --- | --- |
| 2 | 1080p |
| 2 Pro | 2K |
| 2C | 1080p |
| 2C Pro | 2K |
| S220 and S220 video doorbell | 2K |
| S230 | 2K |
| S330 video doorbell | 2K |
| Video doorbell 2K pro | 2K |
| S330 floodlight Cam 2 Pro | 2K |
| S330 video smart lock | 2K |
| S100 wall light cam | 2K |
| S120 solar wall light cam | 2K |
| S300 | 4K |
| S330 | 4K |

---

[6] To achieve this, the first image was compressed to 192 x 108 pixels (i.e., 1/10th its original size), and then upscaled back to its original size of 1,920 x 1,080 pixels.

[7] Verified on July 22, 2023. This list is not exhaustive and excludes differing model variants, kits, and product bundles Defendants advertise.

1

2                    **2.    The "S300 eufyCam" (a "4K" Eufy Camera)**

3        23.    Defendants' representations concerning each Eufy Camera's video

4    resolution features prominently in Defendants' advertising for each of the

5    products. For example, Anker prominently advertises the S300 eufyCam

6    (eufyCam3C) as being capable of providing "4K" video resolution. The

7    advertising for this Eufy Camera lists "4K" as the first product attribute and also

8    touts, as the first bullet point in the product description, that the cameras have

9    "4K Detail Day and Night"[8]:

10

11

12

13                                    

14

15

16

17

18

19        24.    Additional statements found under the "Quick Intro" and "Unboxing &

20    Reviews" section of the same page further advertise the S300 Eufy Camera as

21    being capable of "4K" video resolution, and some of the advertising material even

22    describes 4K as "detail[ed]" video with more than "8 million pixels":

23

24    _____

25         [8] *See* https://us.eufy.com/products/t8882121?variant=41871155921082,
     accessed 7/22/2023

26                                                    Class Action Complaint, p. 8

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17



18      25.    The "Specs" and "Features" section of the same page provides the

19    purported "4K" resolution of the S300 Eufy Camera as follows:

20                                                        **Specs**

21
      Features
22

23      **Resolution**                    4K (3840x2160)°

24      26.    Anker makes similar representations wherever it advertises the Eufy

25    Cameras. For example, the S300 product page on Amazon.com also represents

26                                                Class Action Complaint, p. 9

this Eufy Camera is capable of "4K" video resolution and of delivering

"detail[ed]" video images consisting of "8 million pixels"[9]:



27.     Statements found beneath the S300 listing further represent this Eufy

Camera as being capable of providing "4K Detail Day and Night" with a

resolution of "2160p" (another term for "4K"[10]):

| | |
|---|---|
| **Video Capture Resolution** | 2160p |
| **Special Feature** | Night Vision, Motion Sensor |
| **Memory Storage Capacity** | 16 TB |

**About this item**

- See 4K Detail Day and Night: Spot tiny features on any potential trespasser (human or animal) with eufyCam 3C—even at night. The Starlight photosensitive system enhances low light conditions for clarity in color.
- Local Expandable Storage: With this local 4K security camera system, you're

---

[9] *See* https://www.amazon.com/eufy-security-Expandable-Recognition-Spotlight/dp/B0B87RYGJ7?th=1, accessed 7/23/2023

[10] *See* https://en.wikipedia.org/wiki/4K_resolution under "2160p resolution," accessed 7/23/2023

28.    Based on these representations, consumers reasonably believe that when they use a S300 eufyCam, and other purportedly "4K" Eufy Cameras similarly advertised, they will be able to view both live and recorded video of a quality concomitant with 4K—or 3,840 by 2,160—resolution.

### 3.    The "Video Doorbell Dual" (a "2K" Eufy Camera)

29.    Anker advertises each of its Eufy Cameras similarly, prominently featuring representations concerning their purported video resolution. For example, the "Video Doorbell Dual," a kit configuration consisting of the "S330 Video Doorbell" and "S230 SoloCam," purports to be capable of capturing "every event that occurs around your home in ultra-clear 2K resolution"[11]:



---

[11] *See* https://us.eufy.com/products/bundle-e8213181-1-t81241w1-2?_pos=9&_sid=f35aa128c&_ss=r, accessed 7/23/2023

30.    Individually, the S330 Video Doorbell is presented as a "2K" camera that allows purchasers to "see 2K Ultra-HD details"[12]:




31.    The specifications also assert this Eufy Camera is capable of "2K" video resolution in one of the two "dual" cameras found on the device:

## Specs

Features

| | |
|---|---|
| **Dual Camera** | Front Camera 160°, Package Camera 97° |
| **Video Quality** | Front Camera 2K (2560 ×1920), Package Camera 1080p (1600 × 1200) |

---

[12] *See* https://us.eufy.com/products/t8213181?_pos=4&_sid=29a6b81cf&_ss=r, accessed 7/23/2023

32.    The Amazon listing makes similar representations as to the camera's "2K" and "Ultra-HD" resolution[13]:



33.    Likewise, the S230 Eufy Camera, as presented separately, also touts its purported "2K" resolution in multiple places on the Eufy website including, based on the image accompanying this listing, on the product itself[14]:



---

1

2

3          34.    The S230 SoloCam is further advertised on the Eufy website, like other

4    Eufy Cameras, as offering "crisp 2K high-definition video"[15]:

5

6    

7

8

9

10

11

12

13

14          35.    A "Product Comparison" found on the same page purports to compare

15    the S230 SoloCam with other Eufy Cameras, none of which offer video resolution

16    below "1080p":

17

18

19

20

21

22

23

24

25    _____

      [15] *Id.*

26



|  | SoloCam S40 | SoloCam L20 | SoloCam E40 | SoloCam E20 |
|---|---|---|---|---|
| MSRP | $199.99 | $149.99 | $129.99 | $99.99 |
| Resolution | 2K | 1080p | 2K | 1080p |

36.    The Amazon listing makes similar representations as to the Eufy Camera's "2K" resolution that purports to allow prospective purchasers or consumers to "see every detail"[16]:

eufy security S230 SoloCam S40, Solar-Powered, Wireless Outdoor Security Camera, Battery Camera, 2K Resolution, No Monthly Fee (Renewed)

Visit the Amazon Renewed Store
4.3 ★★★★☆    214 ratings    |    30 answered questions

New Price: $169.99 Details
Price: $159.99 ✓prime
FREE Returns ⌄
You Save: $10.00 (5%)

Eligible for Return, Refund or Replacement within 90 days of receipt | Free Amazon product support included ⌄

| Recommended Uses For Product | Outdoor Security |
|---|---|
| Brand | Eufy Security |
| Connectivity Technology | Wireless |
| Special Feature | Night Vision |
| Indoor/Outdoor Usage | Outdoor |

Roll over image to zoom in

[16] *See* https://a.co/d/7zvz6wP, accessed 7/23/2023

37.     Based on these representations, consumers reasonably believe that when they use Eufy Cameras such as the "Video Doorbell Dual," and other purportedly "2K" Eufy Cameras similarly advertised, they will be able to view both live and recorded video of a quality concomitant with 2K—or 2,560 by 1,440—resolution.

### 4.     The "S200 eufyCam" (a "1080p" Eufy Camera)

38.     Anker represents none of its Eufy Cameras as being capable of delivering a maximum video resolution of less than 1080p. The S200 eufyCam, for example, is advertised as streaming and recording footage in "crystal clear 1080p HD," which is further contrasted with the purportedly inferior resolution of unspecified "others"[17]:



---

[17] *See* https://us.eufy.com/products/bundle-e8213181-1-t81241w1-2?_pos=9&_sid=f35aa128c&_ss=r, last accessed 7/23/2023

39.    Based on these representations, consumers reasonably believe that when they use a S200 eufyCam, and other purportedly "1080p" Eufy Cameras similarly advertised, they will be able to view both live and recorded video of a quality concomitant with 1080p—or 1,920 by 1,080—resolution.

### 5.    Other Eufy Cameras

40.    Defendants have advertised, marketed, and sold a variety of other Eufy Cameras, which they falsely claim as being capable of providing, variously, "1080p" / "HD," "2K," or "4K" / "UHD" video resolutions.

41.    Anker has also sold these cameras in a variety of different sets, packages, kits, or variants, such as packages that include multiple cameras, solar panel charging units, digital video storage devices, or other products. The "1080p" / "HD," "2K," and "4K" / "UHD" representations with respect to all of these other Eufy Cameras are identical to the representations Anker makes with respect to the Eufy Cameras specifically described above. All of these supposedly "1080p" / "HD," "2K," or "4K" / "UHD" cameras are included in the term "Eufy Camera(s)," as used herein.

42.    Based on Defendants' representations with respect to each and every Eufy Camera, consumers reasonably believe that when they use a Eufy Camera, they will be able to view both live and recorded video of a quality concomitant with that which Defendants have advertised and represented: "1080p" / "HD," "2K," or "4K" / "UHD."

### C.    Third-Party Retailers

43.    Although, on information and belief, Defendant Fantasia is the primary retailer of Eufy Cameras—advertising, marketing, and selling the cameras

through the Eufy website—the cameras are also sold on other websites, and

through brick-and-mortar stores like Home Depot. Defendants provide these

third-party retailers with specifications and advertising materials representing that

the Eufy Cameras are "1080p" / "HD," "2K," or "4K" / "UHD." *See, e.g.*,

https://www.homedepot.com/p/eufy-Security-SoloCam-S40-Wireless-Home-

Security-Outdoor-Surveillance-Spotlight-Camera-2K-HD-T81241W1/318410424

(stating that the Eufy Camera provides "2K HD" video resolution).

44.    Because of these inaccurate specifications and advertising material,

every retailer who sells Eufy Cameras represents that they are "1080p" / "HD,"

"2K," or "4K" / "UHD." Accordingly, any consumer who purchases a Eufy

Camera reasonably believes, based on Defendants' representations, that they will

be able to view both live and recorded video in "1080p" / "HD," "2K," or "4K" /

"UHD" resolution.

**D.    The Eufy Cameras Are Not Capable of Providing ANY of Their Advertised Resolutions**

45.    Despite Defendants' advertising, the Eufy Cameras are not capable of

providing "1080p" / "HD," "2K," or "4K" / "UHD" resolution.

46.    Indeed, the resolution produced by the Eufy Cameras, especially those

Eufy Cameras that purport to be "4K" or "UHD," is so significantly inferior to 4K

that one can readily distinguish between images produced by a purported "4K"

Eufy Camera and images produced by a true 4K camera.

47.    To test the Eufy Cameras' capabilities, video was taken of a subject at

distances of ten feet and twenty feet. The S300 eufyCam 3C camera (the "Test

Eufy Camera") was chosen for the test because it is currently offered for sale and

purports to be one of the high resolution "4K" Eufy Cameras. The Test Eufy

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Camera was set to optimal settings and connected to a fast Wi-Fi connection. The video subject was an individual holding a hardcover book with text in various font sizes. One video clip was taken using the Test Eufy Camera, and the other clip was taken using a true 4K video camera. After the video was taken, a still image from each camera's video output was cropped to focus on the subject's face and book cover:

 



Test Eufy Camera at 10 ft                    True 4K Camera at 10 ft

48.    As the images above show, the image taken by the Test Eufy Camera at only ten feet is at such a low resolution that the subject cannot be easily identified, and key details are lacking—note the lack of definition in the houseplant leaf, jacket logo, and in the level of detail that appears on the book cover. In contrast, the image taken by the true 4K camera is far sharper—the subject can be easily

1
2
3

identified, the veins and definition in the houseplant leaf can be seen, the jacket

logo appears distinctly rather than as a blur, and much more detail emerges in the

book cover.[18]

4
5

49.    At 20 feet, the differences are even more stark:

6
7
8
9
10
11
12
13
14
15
16

 

| Test Eufy Camera at 20 ft | True 4K Camera at 20 ft |

17
18
19
20
21
22

50.    At twenty feet, the image produced by the Test Eufy Camera has lost

nearly all facial features. In comparison, the true 4K image is clear enough that

one may still be able to identify the subject. Additionally, the true 4K image

preserves other details, including the ridges in the subject's jacket, the shape of

the jacket logo, and the title of the book, which can still be discerned.

23
24
25

[18] The images in this brief are best viewed in PDF format on a computer screen. Printing this brief may cause loss in image quality, depending on the printer used.

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

51.    The same is true of all Eufy Cameras, which use either the same or older camera technology as the Test Eufy Camera. None of the Eufy Cameras offer 4K video, nor any video resolution at or above 1080p, and all would be significantly outperformed in a comparison with a true 4K, 2K, or 1080p cameras.

**E.    The Actual Image Quality of Eufy Cameras is Less Than 1080p and Closer to 720p**

52.    Despite Defendants' advertising, the Eufy Cameras are not capable of providing "1080p" / "HD," "2K," or "4K" / "UHD" resolution.

53.    To estimate the true image quality of the purportedly "4K" Test Eufy Camera, a 4K still image from the footage captured by the true 4K camera at ten feet was reduced to various lower resolutions, and then upscaled back to 4K resolution, or 3,840 pixels horizontally by 2,160 pixels vertically. These resulting images were then compared to the image produced by the Test Eufy Camera at ten feet. This experiment revealed that the purportedly "4K" Test Eufy Camera's actual image quality is approximately 720p.

54.    The image from the true 4K camera reduced to 2K and 1080p is still higher quality than the Test Eufy Camera image (which claims to be 4K):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

 

Test Eufy Camera at 10 ft    True 4K Camera, 10 ft (scaled to 2K)

 

Test Eufy Camera at 10 ft    True 4K Camera, 10 ft (scaled to 1080p)

1

2

3

4

5

6

7

8

9

10

11

12



Test Eufy Camera at 10 ft          True 4K Camera, 10 ft (scaled to 720p)

13

14      55.     As the images above show, the Test Eufy Camera's image quality

15  cannot compete with 2K video quality (i.e., 2,560 by 1,440 pixels), nor can it

16  compete with 1080p quality (i.e., 1,920 by 1,080 pixels). Rather, it is closer to

17  720p quality (i.e., 1,280 by 720 pixels), as seen in certain indicia of the

18  comparison images. Although the title of the book becomes illegible as the image

19  from the true 4K camera is reduced, other details remain, which cannot be seen in

20  the "4K" image produced from the Test Eufy Camera, such as the ridges in the

21  subject's jacket, the detail and distinctiveness of the jacket logo, and the

22  definition in the leaf of the houseplant. Importantly, the level of detail in the

23  subject's face in the 720p image is about the same as the image produced from

24  the Test Eufy Camera, suggesting the Test Eufy Camera actually delivers a video

25

26

resolution of 720p. Judging solely based on the legibility of the book title, the video resolution of the purported 4K Test Eufy Camera is still no more than 1080p (and probably less based on the aforementioned indicia that appear in the true 4K images compared to those generated by the Eufy Test Camera). Accordingly, even being generous to Anker and assuming its purported "4K" camera has a true video resolution of 1080p, it still has been exaggerating the "4K" Eufy Test Camera's capabilities by at least 200%.

**F.  Plaintiffs' Experiences**

**1.    Thanh Tran**

56.    In July 2022, while residing in San Jose, California, Plaintiff Thanh Tran was shopping for security cameras. He was specifically looking for security cameras that had the highest resolution possible while still being within his budget. Seeking high-resolution cameras was important to him because he understood that subjects can be more easily identified in video recorded at higher resolutions.

57.    During his shopping process, he visited Amazon and located (i) the Eufy security Video Doorbell Dual Camera with HomeBase, and (ii) the Eufy S330 Floodlight Cam 2 Pro. He read the entire Amazon listings for each of these products, including the various representations that the cameras were "2K" (*see supra*, Section B). He also saw that the cameras were within his budget.

58.    Based on the representations he saw on Amazon, Mr. Tran purchased each of the two cameras, at the listed price.

59.    After he installed and used the cameras, Mr. Tran was disappointed in the image quality they produced. He had believed, based on the "2K"

representations he had read on Amazon, that the image quality would have been substantially clearer than the image quality he got from the cameras.

60.    Had Mr. Tran known before his initial purchase that the Eufy Cameras were not capable of providing video quality concomitant with the advertised or represented video quality—in this case 2K resolution—he would not have purchased either Eufy Camera or, at a minimum, he would have paid less for it.

### 2.    Jyotindra Shakya

61.    In November 2022, while residing in Fremont, California, Plaintiff Jyotindra Shakya was shopping for security cameras. He was specifically looking for security cameras that had the highest resolution possible while still being within his budget. Seeking high-resolution cameras was important to him because he understood that subjects can be more easily identified in video recorded at higher resolutions.

62.    During his shopping process, he visited the Eufy website at https://us.eufy.com, and located the S300 eufyCam (eufyCam 3C)—the same camera used in the comparison test described above. He read the entire listing on the Eufy website—including the various representations that the camera was "4K" (*see supra*, Section B). He also saw that the camera was within his budget.

63.    Based on the representations he saw on the Eufy website, Mr. Shakya purchased the S300 eufyCam (eufyCam 3C), for $363.80.

64.    After he installed and used the camera, Mr. Shakya was disappointed in the image quality it produced. He had believed, based on the "4K" representation he had read on the Eufy website, that the image quality would have been substantially clearer than the image quality he got from the camera.

1    65.    Had Mr. Shakya known before his initial purchase that the Eufy

2    Cameras were not capable of providing video quality concomitant with the

3    advertised or represented video quality—in this case 4K resolution—he would

4    not have purchased the camera or, at a minimum, he would have paid less for it.

5

6                              **CLASS ALLEGATIONS**

7        66.    In addition to their individual claims, Plaintiffs bring this class action

8    lawsuit on behalf of themselves and a proposed class and subclass of similarly

9    situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of

10   Civil Procedure.

11       67.    Plaintiffs seek to represent the following groups of similarly situated

12   persons, defined as follows:

13

14       The "Class": All natural persons who purchased Eufy Cameras in the United
         States within the four years preceding the filing of this Complaint (the "Class
         Period").

15       The "California Subclass": All Class Members who purchased Eufy Cameras
16       in California.

17       68.    This action has been brought and may properly be maintained as a class

18   action against Anker because there is a well-defined community of interest in the

19   litigation and the proposed classes are easily ascertainable.

20       69.    Numerosity: Plaintiffs do not know the exact size of the Class, but they

21   estimate that it is composed of more than 100 persons. The persons in the Class

22   are so numerous that the joinder of all such persons is impracticable and the

23   disposition of their claims in a class action rather than in individual actions will

24   benefit the parties and the courts.

25

26

70.    Common Questions Predominate: This action involves common questions of law and fact to the Class because each class member's claim derives from the deceptive, unlawful, misleading, unfair, and/or false statements and omissions that led them to believe that the Eufy Cameras were, variously, capable of providing "1080p" / "HD," "2K," and/or "4K" / "UHD" video resolution, when they were not. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

a.    whether the Eufy Cameras are capable of providing video quality concomitant with "1080p" / "HD," "2K," and/or "4K" / "UHD" resolution, as advertised;

b.    whether the Eufy Cameras can record video of a quality that is concomitant with "1080p" / "HD," "2K," and/or "4K" / "UHD" resolution, as advertised;

c.    whether users can view "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video from the Eufy Cameras on users' devices, as advertised;

d.    whether Anker unfairly, unlawfully, and/or deceptively misrepresented that the Eufy Cameras are capable of providing "1080p" / "HD," "2K," and/or "4K" / "UHD" quality resolution; that they can record "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; and that users can view "1080p" / "HD," "2K,"

and/or "4K" / "UHD" quality video from the Eufy Cameras on users' devices;

e. whether the use of the terms "1080p" / "HD," "2K," and/or "4K" / "UHD" in Defendants' marketing violated Federal and/or California state law;

f. whether the advertising of the Eufy Cameras as being capable of "1080p" / "HD," "2K," and/or "4K" / "UHD" quality resolution caused them to command a premium in the market as compared with similar products that do not make such a claim;

g. whether Defendants' advertising and marketing regarding the Eufy Cameras sold to the class members was likely to deceive the class members and/or was unfair;

h. whether a "1080p" / "HD," "2K," and/or "4K" / "UHD" claim on product advertising is material to a reasonable consumer;

i. whether Anker engaged in the alleged conduct knowingly, recklessly, or negligently;

j. the amount of profits and revenues earned by Anker as a result of the conduct;

k. whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and,

l. whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

1

2

3       71.   Typicality: Plaintiffs' claims are typical of the claims of other members

of the Class because, among other things, all such claims arise out of the same

unlawful course of conduct in which Anker engaged. Plaintiffs and those

similarly situated purchased the Eufy Cameras in reliance on Defendants'

misrepresentations and omissions that Eufy Cameras are, variously, "1080p" /

"HD," "2K," and/or "4K" / "UHD" cameras, capable of providing "1080p" /

"HD," "2K," and/or "4K" / "UHD" quality video. Thus, they and the class

members sustained the same injuries and damages arising out of Defendants'

conduct in violation of the law. The injuries and damages of each class member

were caused directly by Defendants' wrongful conduct in violation of law as

alleged.

        72.   Adequacy of Representation: Plaintiffs will fairly and adequately

protect the interests of all Class members because it is in his best interests to

prosecute the claims alleged herein to obtain full compensation due to them for

the unfair and illegal conduct of which they complain. Plaintiffs also have no

interests in conflict with, or antagonistic to, the interests of Class members.

Plaintiffs have retained highly competent and experienced class action attorneys

to represent their interests and that of the Class. By prevailing on their claims,

Plaintiffs will establish Defendants' liability to all Class members. Plaintiffs and

their counsel have the necessary financial resources to adequately and vigorously

litigate this class action, and Plaintiffs and counsel are aware of their fiduciary

responsibilities to the Class members and are determined to diligently discharge

those duties by vigorously seeking the maximum possible recovery for class

members.

73.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Anker and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

74.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### First Cause of Action
**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, et seq.)**
**(On Behalf of Plaintiffs and the California Subclass)**

75.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

76.    Defendants' actions, representations, and conduct have violated, and continue to violate, the CLRA, because they extend to transactions that are

intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

77.    Plaintiffs and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

78.    The Eufy Cameras that Plaintiffs (and other similarly situated class members) purchased from Anker constitute "goods" within the meaning of California Civil Code § 1761(a).

79.    Defendants' acts and practices, set forth in this Class Action Complaint, led customers to falsely believe that the Eufy Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" video resolution; that the Eufy Cameras could record video in, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" video resolution; and that users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Anker has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA.

80.    In violation of California Civil Code § 1770(a)(5), Defendants' acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code § 1770(a)(7), Defendants' acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code § 1770(a)(8), Anker has disparaged the goods,

services, or business of another by false or misleading representation of fact. In violation of California Civil Code § 1770(a)(9), Anker has advertised goods or services with intent not to sell them as advertised. Finally, regarding California Civil Code § 1770(a)(8), Anker falsely or deceptively marketed and advertised that the Eufy Cameras are capable of, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" video resolution, when they are not.

81.    Plaintiffs request that this Court enjoin Anker from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Anker is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.

82.    On or about May 19, 2023, Defendants were provided with notice and a demand to correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendants failed to do so in that, among other things, they failed to identify consumers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, statutory penalties, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

83.    Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**Second Cause of Action**
**False Advertising, Business and Professions Code § 17500, *et seq*. ("FAL")**
**(On Behalf of Plaintiffs and the California Subclass)**

84.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

85.    Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Anker made untrue, false, deceptive, and/or misleading statements in connection with the advertising and marketing of the Eufy Cameras.

86.    Anker made representations and statements (by omission and commission) that led reasonable customers to believe (i) that the Eufy Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video resolution; (ii) that the Eufy Cameras could record, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; (iii) that users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices.

87.    Plaintiffs and those similarly situated relied to their detriment on Defendants' false, misleading, and deceptive advertising and marketing practices, including, without limitation, each of the misrepresentations and omissions set forth in paragraphs 21–43 above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing the Eufy Cameras, or paying less for them.

88.    Defendants' acts and omissions are likely to deceive the general public.

89.    Anker engaged in these false, misleading, and deceptive advertising and marketing practices to increase their profits. Accordingly, Anker has engaged

in false advertising, as defined and prohibited by section 17500, *et seq*. of the California Business and Professions Code.

90.     These practices, which Anker used, and continues to use, to its significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

91.     As a direct and proximate result of such actions, Plaintiffs and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

92.     Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from them, the general public, or those similarly situated by means of the false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon.

93.     Plaintiffs seek on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading, and deceptive advertising.

94.     Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Anker from Plaintiffs, the general public, or those similarly situated by means of the false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon. Pursuant to

Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory, and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent Class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Anker acted in good faith.

95.    Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

96.    Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Anker from continuing to engage in the false, misleading

1   and deceptive advertising and marketing practices complained of herein. Such

2   misconduct by Anker, unless and until enjoined and restrained by order of this

3   Court, will continue to cause injury in fact to the general public and the loss of

4   money and property in that Anker will continue to violate the laws of California,

5   unless specifically ordered to comply with the same. This expectation of future

6   violations will require current and future consumers to repeatedly and

7   continuously seek legal redress in order to recover monies paid to Anker to which

8   it is not entitled. Plaintiffs, those similarly situated, and/or other consumers

9   nationwide have no other adequate remedy at law to ensure future compliance

10  with the California Business and Professions Code alleged to have been violated

11  herein.

12

13                        **Third Cause of Action**
14        **Common Law Fraud, Deceit, and/or Misrepresentation**
                 **(On Behalf of Plaintiffs and the Class)**

15        97.    Plaintiffs reallege and incorporate by reference all paragraphs alleged

16  herein.

17        98.    Continuously throughout the last four years Anker fraudulently and

18  deceptively represented to Plaintiffs and those similarly situated that (i) the Eufy

19  Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K"

20  / "UHD" quality video resolution; (ii) that the Eufy Cameras could record,

21  variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; (iii) that

22  users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality

23  video recorded by the Eufy Cameras on users' devices. Further, continuously over

24  the last four years, Anker failed to inform Plaintiffs that the video quality

25

26

provided by the Eufy Cameras is less than, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD."

99.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Anker, not reasonably known to Plaintiffs, and material at the time they were made. Anker knew the true capabilities of the Eufy Cameras, and they knew that the Eufy Cameras were not capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video resolution; that consumers could not record, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video using the Eufy Cameras; and that consumers could not view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices. Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Eufy Cameras. In misleading Plaintiffs and not so informing them, Anker breached its duty to them. Anker also gained financially from, and as a result of, its breach.

100.    Plaintiffs and those similarly situated relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had they and those similarly situated been adequately informed and not intentionally deceived by Anker, they would have acted differently by, without limitation: (i) declining to purchase the Eufy Cameras, or (ii) paying less for the Eufy Cameras.

101.    By and through such fraud, deceit, misrepresentations and/or omissions, Anker intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Anker fraudulently and deceptively induced them and those similarly situated to, without limitation, purchase the

Eufy Cameras, including the price premium they paid for the false representations described herein.

102. Plaintiffs and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Anker.

103. As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Eufy Cameras.

104. Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Anker knew that its conduct would cause loss and harm to Plaintiffs and those similarly situated.

**Fourth Cause of Action**
**Unlawful, unfair, and fraudulent trade practices violation of the Business and Professions Code § 17200, *et seq*.**
**(On Behalf of Plaintiffs and the California Subclass)**

105. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

106. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Anker has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

107. In particular, Anker has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; and (ii) the FAL as described herein.

108. In particular, Anker has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting

in their marketing that the Eufy Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video resolution; (ii) misrepresenting in their marketing that the Eufy Cameras could record, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; (iii) misrepresenting in their marketing that users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices; and (iv) failing to inform Plaintiffs, and those similarly situated, that the representations stated in (i), (ii), and (iii) above are false.

109.   Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Anker, they would have acted differently by, without limitation: (i) declining to purchase Eufy Cameras, or (ii) paying less for Eufy Cameras.

110.   Defendants' acts and omissions are likely to deceive the general public.

111.   Anker engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Anker has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq*. of the California Business and Professions Code.

112.   These practices, which Anker used to its significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

113.   As a direct and proximate result of such actions, Plaintiffs and the other class members have suffered and continue to suffer injury in fact and have lost money and/or property in an amount which will be proven at trial, but which is in

excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class members lost the amount they paid for the Eufy Cameras, and/or the price premium they paid for the Eufy Cameras based on Defendants' false representations.

114.   As a direct and proximate result of such actions, Anker has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

115.   Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including the restitution for the premium and/or full price that they or others paid to Anker as a result of Defendants' conduct. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of

UCL claim for entire class). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Anker acted in good faith.

116. Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

117. Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Anker from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Anker, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Anker will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Anker to which they were not entitled. Plaintiffs and those similarly situated have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### Fifth Cause of Action
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Class)

118. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

119.  Plaintiffs and members of the Class conferred a benefit on the Anker by purchasing the Eufy Cameras.

120.  Anker has been unjustly enriched in retaining the revenues from Plaintiffs' and Class members' purchases of the Eufy Cameras, which retention is unjust and inequitable, because Anker (i) misrepresented in their marketing that the Eufy Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video resolution; (ii) misrepresented in their marketing that the Eufy Cameras could record, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; (iii) misrepresented in their marketing that users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices; and (iv) failed to inform Plaintiffs, and those similarly situated, that the representations stated in (i), (ii), and (iii) above are false. This harmed Plaintiffs and Class members because they paid a price premium as a result.

121.  Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Anker must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendants as follows:

A.  Certification of the proposed Class, including appointment of

Plaintiffs' counsel as Class Counsel;

B.  An award of compensatory damages, including statutory damages and penalties, where available at law, to Plaintiffs and the Class Members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including both pre- and post-judgment interest thereon;

C.  An order for full restitution;

D.  An order requiring Defendants to disgorge revenues and profits wrongfully obtained;

E.  An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

F.  For reasonable attorneys' fees and the costs of suit incurred; and

G.  For such further relief as this Court may deem just and proper.

## **<u>JURY TRIAL DEMANDED</u>**

Plaintiffs hereby demand a trial by jury.

Dated: August 4, 2023                    **GUTRIDE SAFIER LLP**

*/s/Seth Safier/s/*
Seth A. Safier, Esq.
Todd Kennedy, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

I, Jyotindra Shakya, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      I reside in Freemont, California. I purchased Eufy security cameras products from their website at https://us.eufy.com while I was in California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 7th day of February 2023, in Freemont, California.



Jyotindra Shakya

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION