DIANA M. RUTOWSKI (STATE BAR NO. 238878)
drutowski@orrick.com
JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:	+1 650 614-7400
Facsimile:	+1 650 614-7401

REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:	+1 415 773 5700
Facsimile:	+1 415 773 5759

THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Ave., Suite 2700
Los Angeles, CA  90071-1596
Telephone:	+1 213 629-2020
Facsimile:	+1 213 612-2499

Attorneys for Defendant Fantasia Trading LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JYOTINDRA SHAKYA and THANH TRAN, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FANTASIA TRADING LLC and ANKER TECHNOLOGY CORPORATION,<br><br>Defendants. | Case No. 3:23-cv-03925-JD<br><br>**DEFENDANT FANTASIA TRADING LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF STANDING**<br><br>Date:     December 14, 2023<br>Time:     10:00 a.m.<br><br>Judge:     Hon. James Donato<br>Location:  Courtroom 11, 19th Floor |

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

Defendant Fantasia Trading LLC's
Motion To Dismiss
Case No. 3:23-cv-03925-JD

# NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 14, 2023, at 10:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable James Donato, located at 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, California 94102, Defendant Fantasia Trading LLC, will and hereby does move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

Fantasia Trading LLC seeks an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Complaint for failure to state a claim upon which relief can be granted, or in the alternative pursuant to Federal Rule of Civil Procedure 12(b)(1) dismissing certain claims for lack of subject matter jurisdiction, specifically lack of Article III standing.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

DEFENDANT FANTASIA TRADING LLC'S
NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:23-CV-03925-JD

## **TABLE OF CONTENTS**

Page

I. STATEMENT OF ISSUES TO BE DECIDED ................................................................... 2
II. SUMMARY OF RELEVANT FACTS ............................................................................... 2
III. LEGAL STANDARD .......................................................................................................... 3
IV. LEGAL ARGUMENT ......................................................................................................... 5
   A. The Complaint Must Be Dismissed In Its Entirety, Because It To Plead Facts Showing That Defendants' Cameras Lacked The Advertised Resolutions. ................... 5
   B. In All Events, Plaintiffs' Lawsuit Must Be Dismissed As To Products They Did Not Purchase. ........................................................................................... 10
V. CONCLUSION .................................................................................................................. 10

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- i -

TABLE OF CONTENTS
CASE NO. 3:23-CV-03925-JD

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 3, 6

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 6

*Estell v. McHugh*,
  2017 WL 1175589 (N.D. Cal. 2017) ........................................................................................ 6

*Gomez v. Smith*,
  2022 WL 117763 (N.D. Cal. 2022) .......................................................................................... 4

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ................................................................................... 6

*Gonzalez v. Planned Parenthood of L.A.*,
  759 F.3d 1112 (9th Cir. 2014) .................................................................................................. 3

*Herrera v. Cathay Pac. Airways Ltd.*,
  2021 WL 673448 (N.D. Cal. 2021) (Spero, J.) ........................................................................ 2

*In re Outlaw Lab., LLP*,
  463 F. Supp. 3d 1068 (S.D. Cal. 2020) .................................................................................... 4

*Lorentzen v. Kroger Co.*,
  532 F. Supp. 3d 901 (C.D. Cal. 2021) ................................................................................. 4, 10

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .................................................................................................. 4

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................................................................. 4

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .......................................................................................... 4, 6, 10

**Rules**

Federal Rule of Civil Procedure
  8 ........................................................................................................................... 1, 6, 10
  9(b) ...................................................................................................................... 1, 4, 10
  12(b)(1) ................................................................................................................. 1, 2, 4
  12(b)(6) ................................................................................................................. 1, 2, 3

Plaintiffs' entire Complaint rests on a single premise: that cameras advertised by Defendants Fantasia Trading LLC ("Fantasia") and Anker Technology Corporation[1] (collectively, "Defendants") as having video resolutions of "1080p," "2K," or "4K," in fact had resolutions that were lower. A video's "resolution" is simply the number of pixels it has in each frame (according to the sources cited in Plaintiffs' Complaint, 2,073,600 pixels for "1080p" resolution; 3,686,400 pixels for "2K" resolution; and 8,294,400 pixels for "4K" resolution), a number that is empirically verifiable. So, Plaintiffs' case rests on the contention that the video produced by Defendants' cameras had fewer pixels than advertised. But Plaintiffs fail to plausibly allege as much—indeed, as established herein, Plaintiffs' Complaint is based on falsehoods easily ascertainable from the four corners of the Complaint.

Given the nature of Plaintiffs' theory, one would expect the allegations they make in support of it to be relatively straightforward. After all, a video's resolution can be found with only a few mouse clicks. And so, if Plaintiffs truly had purchased cameras with resolutions lower than advertised, one would expect them to straightforwardly allege, for each camera, that the video produced had only *X* pixels per frame, despite being advertised as having *Y* pixels per frame.

But Plaintiffs conspicuously fail to make any such allegation. Indeed, they go to great lengths to avoid doing so (because they cannot do so). Rather than making any direct allegation about the actual resolution of the video produced by Defendants' cameras, the Complaint merely *insinuates* that it must be something less than advertised—based on what Plaintiffs themselves admit are *doctored photos* (taken from only one of the fourteen products supposedly at issue). That gambit is doubly flawed. First, and most fundamentally, Plaintiffs' refusal to allege the most crucial fact to their claims—the actual resolution of Defendants' cameras—runs afoul of Rule 8's requirement that their Complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and certainly falls short of Rule 9(b)'s heightened pleading standard. Second, Plaintiffs' attempt to sidestep this fatal defect also fails, as nothing about the doctored

---

[1] Anker Technology Corporation was an affiliate of Fantasia Trading LLC, but was dissolved in December 2015. Anker Technology Corporation has therefore not been served, is not represented by Fantasia Trading LLC's counsel, and is not included in this Motion.

- 1 -

DEFENDANT FANTASIA TRADING LLC'S
MOTION TO DISMISS
CASE NO. 3:23-CV-03925-JD

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

photos they offer shows *any purported facts* about the resolution of any of Defendants' cameras—much less that *all* the accused devices' resolutions were less than advertised.

What is more, although their Complaint purports to seek recovery based on Defendants' sales of at least *fourteen* separate products, Plaintiffs are ultimately forced to admit (though they do their best to bury it) that they only actually purchased *three* of them. By their own admission, then, Plaintiffs have suffered no harm that is fairly traceable to the vast majority of the products they now challenge—and they thus lack standing to pursue any claims based on those products.

Plaintiffs' Complaint reflects exactly the kind of pleading by sleight of hand that the Federal Rules were designed to weed out. It should be dismissed in its entirety.

**I.   STATEMENT OF ISSUES TO BE DECIDED**

Fantasia seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the suit for failure to state a claim, and an order pursuant to Federal Rule of Civil Procedure 12(b)(1) dismissing certain claims for lack of standing.

**II.   SUMMARY OF RELEVANT FACTS**

According to the Complaint, Defendants are responsible for manufacturing and selling "eufy" branded security cameras. *See, e.g.*, Compl. ¶ 1. Plaintiffs allege that fourteen products bearing the eufy brand are advertised as offering a "video resolution" of either "4K," "2K," or "1080p." Compl. ¶¶ 17-19, 22. As explained by the sources cited in Plaintiffs' Complaint, those labels refer to the number of pixels included in the video produced by the cameras. For instance, "4K refers to a video resolution of 3,840 x 2,160 pixels." *What Does 4K Actually Mean*, Boxcast, https://www.boxcast.com/blog/what-does-4k-actually-mean, *cited at* Compl. ¶¶ 17, 19, nn.2, 4; *see also* Compl. ¶ 24 (alleging that Defendants' advertisements "describe[] 4K as 'detailed' video with more than '8 million pixels'"); *id.* ¶ 26 (alleging that Defendants represent that "'4K' video resolution," means "video images consisting of '8 million pixels'").[2] The "2K" label, according to Plaintiffs, means that the "cameras provide a high resolution picture of 2560x1440" pixels. *2K vs*

---

[2] Because these sources are cited in the Complaint, they are incorporated by reference into it, and thus may be considered on a motion to dismiss under Rule 12(b)(6). *See Herrera v. Cathay Pac. Airways Ltd.*, 2021 WL 673448, at *6 (N.D. Cal. 2021) (Spero, J.).

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 2 -

DEFENDANT FANTASIA TRADING LLC'S
MOTION TO DISMISS
CASE NO. 3:23-CV-03925-JD

*4K Security Cameras and Systems*, CCTV Camera World, https://www.cctvcameraworld.com/2k-vs-4k-security-cameras-systems, *cited at* Compl. ¶ 18, n.3.[3]  And the "1080p" label refers to a video that is "made up of 1,920 x 1,080 pixels."  *What Does 4K Actually Mean*, Boxcast, https://www.boxcast.com/blog/what-does-4k-actually-mean, *cited at* Compl. ¶¶ 17, 19, nn.2, 4.

Plaintiffs Thanh Tran and Jyotindra Shakya are two individuals who claim to have collectively purchased three specific eufy branded products: (1) the Video Doorbell Dual Camera with HomeBase; (2) the S330 Floodlight Cam 2 Pro; and (3) the S300 eufyCam.  Compl. ¶¶ 57-58, 62-63.  According to Plaintiffs, the first two of those products were advertised as having "2K" resolution, while the third was advertised as having "4K" resolution.  *Id.*  Plaintiffs claim that, after purchasing those products, they were "disappointed in the image quality they produced."  Compl. ¶¶ 59, 64.  On that basis, Plaintiffs filed this lawsuit, and asserted that "the actual video resolution" of the three cameras they purchased, as well as eleven others they did not, "is significantly lower than '1080p' / 'HD,' '2K,' or '4K' / 'UHD' video resolution"—that is, that the videos produced by the cameras did not contain the number of pixels advertised.  Compl. ¶¶ 1, 22.  Notably, Plaintiffs do not include any allegations about the actual resolutions or pixel counts of the devices they claim to have purchased.

### III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citation omitted).  While a court must accept all material factual allegations as true, it is not required to accept as true any allegations that are contradicted by matters that are subject to judicial notice, that are exhibits to a complaint, or that are incorporated by reference in a complaint.  *See, e.g.*, *Gonzalez v. Planned*

---

[3] Other authorities, however, including the International Telecommunications Union (the United Nations' specialized agency for information and communication technologies) explain that this is not the only resolution that qualifies as "2K," as that label is also often applied to resolutions of 1920 x 1080 pixels.  *See, e.g.*, International Telecommunications Union, *HDTV and UHDTV including HRD-TV Test Materials for Assessment of Picture Quality*, https://www.itu.int/dms_pub/itu-r/opb/rep/R-REP-BT.2245-6-2019-PDF-E.pdf (2019).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

DEFENDANT FANTASIA TRADING LLC'S
MOTION TO DISMISS
CASE NO. 3:23-CV-03925-JD

*Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014).

What is more, where (as here) a complaint rests on a theory of false advertising, its allegations "are subject to the heightened pleading requirements of Rule 9(b)." *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1085 (S.D. Cal. 2020). That is true even if not all causes of action require a showing of fraud as "a necessary element of [the] claim," because Rule 9(b) applies to any claim that "sound[s] in fraud"—i.e., any claim where the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [the] claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Here, as demonstrated below, every one of Plaintiffs' claims rests on the assertion that Defendants purportedly lied about their products' resolutions, and so every one of those claims must state "'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106. That is, Plaintiffs "must set forth *more* than the neutral facts necessary to identify the transaction," and must plead facts showing "what is false or misleading about a statement, and why it is false." *Id.*

To survive a Rule 12(b)(1) motion to dismiss, "the party asserting federal subject matter jurisdiction [here, Plaintiffs] has the burden of proving the existence of federal jurisdiction." *Gomez v. Smith*, 2022 WL 117763, at *1 (N.D. Cal. 2022). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here, Fantasia's jurisdictional challenge (for lack of Article III standing) is a facial one, so Plaintiffs must show that they have alleged facts that, if true, would show that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 906 (C.D. Cal. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)).

## IV. LEGAL ARGUMENT

### A. The Complaint Must Be Dismissed In Its Entirety, Because It Fails To Plead Facts Showing That Defendants' Cameras Lacked The Advertised Resolutions.

Each of Plaintiffs' five causes of action rests on the assertion that Defendants' cameras did not, in fact, produce video at the advertised resolutions—*i.e.*, with the advertised number of pixels. Compl. ¶ 79 (Count I); *id.* ¶¶ 86-87 (Count II); *id.* ¶ 98 (Count III); *id.* ¶ 108 (Count IV); *id.* ¶ 120 (Count V). Given the importance of that conclusion to each of their claims, one would have expected Plaintiffs to include in their Complaint some factual allegations supporting it. Specifically, one would have expected Plaintiffs to allege that the video produced by Defendants' cameras, in fact, contained $X$ pixels, which is less than the $Y$ pixels that were advertised. After all, measuring the resolution of a video is simple, requiring nothing more than a few mouse clicks.[4] And so if the resolutions of the cameras on Defendants' products were truly lesser than advertised, it would have been trivial for Plaintiffs to determine that true resolution/pixel count, and to provide that information in their Complaint.

Plaintiffs, however, conspicuously *avoid* making any such allegations. While they claim repeatedly that Defendants' claims about their products' camera resolutions are "false," *see, e.g.*, Compl. ¶¶ 1, 70, 80, Plaintiffs notably steer clear of making any concrete factual allegations in support of that bare assertion. Indeed, despite claiming to have collectively purchased three different models of Defendants' products, Plaintiffs do not make allegations about what they believe the actual resolution of *any* of those products to be. Plaintiffs either did not check the resolution before filing, which calls into question the reasonableness of their pre-filing investigation, or, worse, they did so and opted to exclude what they saw from the Complaint.

That failure is remarkable. This is not a situation where Plaintiffs are being forced to guess at facts that are unknowable without discovery. (Although as courts have noted, even that is "not

---

[4] On Windows, one simply right clicks the video and clicks "Properties," then the resolution is displayed on the "Details" tab. https://www.guidingtech.com/check-video-resolution-windows-android. On Mac, one simply opens the video in the pre-installed QuickTime Player program and clicks "Command-I." https://support.apple.com/guide/quicktime-player/view-information-about-a-movie-file-qtp65619118c/mac.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

DEFENDANT FANTASIA TRADING LLC'S
MOTION TO DISMISS
CASE NO. 3:23-CV-03925-JD

[a] persuasive" excuse for failing to provide important factual allegations "following the United States Supreme Court's decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1088 (N.D. Cal. 2018)). Instead, this is a case where the key fact—the actual resolution of Defendants' products—is readily determinable by Plaintiffs. Yet Plaintiffs conspicuously fail to allege that fact in their Complaint, and "offer[] no explanation why [they] cannot identify" that fact. *Estell v. McHugh*, 2017 WL 1175589, at *10 (N.D. Cal. 2017) (dismissing claim under Rule 8 because plaintiff's complaint omitted basic facts, wholly within her knowledge). As such, Plaintiffs failed to plead "what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1103. For this reason alone, Plaintiff's claims fail. *See id.*

Perhaps realizing this problem, Plaintiffs attempt to plead around it, instead relying on their own subjective characterization of the quality of images produced by one of Defendants' cameras in an effort to plausibly allege that its resolution is less than advertised. Specifically, they assert that because they were "disappointed in the image quality" of the products they purchased, that must mean that the cameras had a "significantly lower … video resolution" than advertised. Compl. ¶¶ 1, 59, 64. To that end, Plaintiffs attach the following two images, which they claim were taken by a S300 eufyCam 3C camera (the "Test Eufy Camera" in the graphic below) and an unspecified "true 4K video camera." Compl. ¶ 47. According to Plaintiffs, the image on the left is "so significantly inferior" to the one on the right that it proves that the eufy camera is "not capable of providing … '4K' / 'UHD' resolution" as advertised. Compl. ¶ 46.

- 6 -

DEFENDANT FANTASIA TRADING LLC'S
MOTION TO DISMISS
CASE NO. 3:23-CV-03925-JD

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY




Test Eufy Camera at 10 ft     True 4K Camera at 10 ft

But Plaintiffs' own argument is refuted by one of the sources (Boxcast, *cited at* Compl. ¶¶ 17, 19, nn. 2, 4) that they themselves cite. As that source explains: the "belief [] that more pixels means a higher-quality picture for viewers"—or, conversely, that lower picture quality means fewer pixels—"isn't necessarily true." *4K Live Streaming—The Right Questions to Ask*, Boxcast, https://www.boxcast.com/blog/4k-live-streaming-the-right-questions-to-ask. In fact, "[o]ther factors [aside from resolution] are much more important in determining overall picture quality." *How Many Megapixels Do You REALLY Need?*, Photo Review, https://www.photoreview.com.au/tips/buying/how-many-megapixels-do-you-really-need. A simple example of this is image blurriness due to movement: A lower resolution camera that is sitting still is likely to produce a better image than a higher resolution camera that is moving. But that is hardly the only factor that can affect image quality, other than resolution; others—including camera focus, lighting conditions, depth of field, focal length, lens characteristics, as well as internet speed and where a video is paused to capture a still image—abound. *See id.* Said simply, one cannot simply assume that a "higher-quality picture for viewers" was necessarily the result of

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 7 -

Defendant Fantasia Trading LLC's
Motion To Dismiss
Case No. 3:23-cv-03925-JD

"more pixels," or that a lower-quality picture means fewer pixels. *4K Live Streaming—The Right Questions to Ask*, Boxcast, https://www.boxcast.com/blog/4k-live-streaming-the-right-questions-to-ask. But even though Plaintiffs' own source specifically cautions against it, their Complaint rests squarely on this fallacy.

In fact, Plaintiffs' own allegations indicate that, to the extent there are quality differences between the images in their Complaint, they are due to factors other than resolution. Said otherwise, Plaintiffs admit (though they try to hide it) that the images featured in their Complaint do not reflect a true apples-to-apples comparison. For one thing, the images themselves indicate that the two cameras have different depths of field; in other words, the cameras are set to focus on different distances. This can be seen in the leaves in the distance along the left edge of either image. Those leaves appear far sharper and with more individual detail in the eufy image than in the other one (in which they appear as a general blur). This indicates that the two cameras are not equivalently configured, but are instead set to have different levels of focus and detail at different distances. Additionally, and no less significant, as Plaintiffs separately confess, "each camera's video output [in the graphic above] was cropped to focus on the subject's face and book cover." Compl. ¶ 47. That is, Plaintiffs manipulated the video produced by each camera before arriving at the images featured in their Complaint.

To see why that matters, consider the four images below, each taken at the same resolution, but with different fields of view (due to lenses with different focal lengths, indicated in the upper left-hand corner of each).



*See Security Cameras – Understanding Field of View (FOV)*, LOREX,

1  https://help.lorextechnology.com/link/portal/57356/57366/Article/3743/security-cameras-
2  understanding-field-view-fov.  The *resolution* of each image is the same—but the fields of view
3  (essentially, the zooms) are different, with the furthest left image capturing a very wide field of
4  view (i.e., uses a lens that is zoomed out), and the one on the right capturing a very narrow one
5  (i.e., uses a lens that is zoomed in).

6        Taking the leftmost image and cropping it to the same scope as the rightmost one, produces
7  image like the one below:



15  While one could claim that the leftmost image *when doctored in this way* appears to be
16  "significantly inferior" to the rightmost image, that would obviously be highly misleading:  After
17  all, the apparent inferiority is only due to the user's subsequent manipulation (through cropping,
18  then stretching) of the image—not because of any difference in the resolutions of the cameras used
19  to acquire the images (or in the original images themselves).

20        What Plaintiffs have done here is no different:  They admit that they have "cropped" each
21  "camera's video output" to "focus on the subject's face and book cover," Compl. ¶ 47—and in so
22  doing, falsely insinuate that the difference in the resulting images must be solely due to a supposed
23  difference in camera resolutions, as opposed to Plaintiffs' own doctoring of the images (which,
24  again, come from only one of the three cameras that Plaintiffs claim to have purchased).

25        That is all to say, had Plaintiffs truly purchased camera products with resolutions lesser
26  than advertised, it would have been easy for Plaintiffs to allege as much directly.  Indeed, all they
27  would have had to do is provide the resolution of the video recorded by their devices (which would
28  have been obtained in a matter of seconds).  Instead, they resort solely to an elaborate,

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 9 -

DEFENDANT FANTASIA TRADING LLC'S
MOTION TO DISMISS
CASE NO. 3:23-CV-03925-JD

roundabout—and ultimately misleading—set of insinuations based on doctored photos. This is plainly not enough to survive Rule 8. And it certainly falls well short of Rule 9(b)'s requirement that the Complaint plead specific facts showing "why [the advertised resolution] is false." *Vess*, 317 F.3d at 1106. Plaintiff's complaint should be dismissed in its entirety.

### B. In All Events, Plaintiffs' Lawsuit Must Be Dismissed As To Products They Did Not Purchase.

Separate and apart from Plaintiffs' failure to plead facts showing that Defendants' products lack the advertised resolution, Plaintiffs' Complaint must be dismissed as to all products that Plaintiffs themselves did not purchase. As courts have explained: "A plaintiff who is falsely led to buy a product may claim injury resulting from *that* purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise)." *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021). Because a plaintiff "d[oes] not suffer any injury—economic or otherwise—related to" products that she has never purchased, she therefore "lacks standing to assert" claims based on such products. *Id.* Here, while Plaintiffs' Complaint claims that Defendants offer at least fourteen separate products whose cameras fail to deliver the advertised resolution, *see* Compl. ¶ 22, Plaintiffs themselves admit that they only purchased three: (1) the Video Doorbell Dual Camera with HomeBase; (2) the S330 Floodlight Cam 2 Pro; and (3) the S300 eufyCam. Compl. ¶¶ 57-58, 62-63. Accordingly, in all events, Plaintiffs' claims must be dismissed for lack of standing to the extent they seek to recover for any products that Plaintiffs themselves did not purchase.

### V. CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint in its entirety for failure to state a claim, and for lack of standing to the extent it seeks to assert claims based on products Plaintiffs themselves did not purchase.

Orrick, Herrington & Sutcliffe LLP
Attorneys At Law
Silicon Valley

- 10 -

DEFENDANT FANTASIA TRADING LLC'S
MOTION TO DISMISS
CASE NO. 3:23-cv-03925-JD

DATED: November 3, 2023

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Diana M. Rutowski*
DIANA M. RUTOWSKI

Attorneys for Defendant
FANTASIA TRADING LLC

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 11 -

Defendant Fantasia Trading LLC's
Motion To Dismiss
Case No. 3:23-cv-03925-JD