**GUTRIDE SAFIER LLP**

Seth A. Safier (State Bar No. 197427)
 seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
 todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Thanh Tran and Jyotindra Shakya, on behalf of themselves and those similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Fantasia Trading LLC; Anker Innovations Technology Co., Ltd.; Power Mobile Life, LLC<br><br>　　　　　　　Defendants. | Case No. 3:23-cv-03925<br><br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR, UNLAWFUL, AND DECEPTIVE TRADE PRACTICES; AND UNJUST ENRICHMENT<br><br><br>JURY TRIAL DEMANDED |

Plaintiffs Thanh Tran and Jyotindra Shakaya (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Fantasia Trading LLC, Anker Innovations Technology Co., Ltd., and Power Mobile Life, LLC (collectively, "Defendants" or "Anker"). Plaintiffs' allegations against Defendants are based upon information and belief and upon investigation of Plaintiffs' counsel, except for allegations specifically pertaining to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

**INTRODUCTION**

1. This case concerns Defendants' false and deceptive labeling, advertising, marketing, and sale of their Eufy brand security cameras (the "Eufy Cameras").[1] Although Defendants prominently represents in their marketing and packaging that the Eufy Cameras have "1080p" / "HD," "2K," or "4K" / "UHD" video resolution, the image quality the cameras offer is not commensurate with those representations. To the contrary, the Eufy Cameras offer an image quality commensurate with video resolutions that are significantly lower than "1080p" / "HD," "2K," or "4K" / "UHD" video resolution.

2. Video resolution is a critical factor that consumers consider in determining what security camera to purchase. Higher resolution cameras are desirable because they enable recorded subjects to be identified with greater accuracy and longer distances. A security camera with true 1080p / HD, 2K, and/or 4K / UHD video resolution is capable of producing a crisp image that can enable users to identify subject by their faces, hair, clothing, tattoos, and other indicia. As a result, security cameras with higher resolutions, such as 1080p / HD,

---

[1] A list of the Eufy Cameras at issue appears in Paragraph 22 below.

2K, and/or 4K / UHD command a higher price than cameras with lower resolutions.

3.    Anker Technology, a sophisticated and well-established company who markets various electronic devices under several brands, knows this to be the case, and deliberately advertises, markets and sells the Eufy Cameras in a way that deceives consumers into falsely believing that they have a higher resolution than that of which Eufy Cameras are capable.

4.    Defendants made the "1080p" / "HD," "2K," or "4K" / "UHD" resolution claims throughout the Class Period in all of their significant marketing: on the Eufy Cameras product pages (available at https://us.eufy.com/); on their Amazon.com product pages; on the pages and in the advertising material of other third-party retailers; in the Eufy Cameras product specifications; and on the packaging of the Eufy Cameras themselves.

5.    Defendants never disclosed to consumers that the Cameras fail to offer image quality commensurate with "1080p" / "HD," "2K," or "4K" / "UHD" video resolution.

**PARTIES**

6.    Plaintiff Thanh Tran is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Jose, California. Mr. Tran intends to remain in San Jose and makes his permanent home there.

7.    Plaintiff Jyotindra Shakya is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Fremont, California. Mr. Shakya intends to remain in Fremont, California and makes his permanent home there.

1    8.     Defendant Fantasia Trading, LLC ("Fantasia") is a limited liability

2    company existing under the laws of the State of Delaware, having its principal

3    place of business in Ontario, California.

4    9.     Defendant Anker Innovations Technology Co., Ltd. ("Anker") is a

5    company existing under the laws of the China, having its principal place of US

6    business in Bellevue, Washington. Power Mobile Life, LLC ("Power Mobile") is

7    a limited liability company existing under the laws of the State of Washington, it

8    too has its principal place of business in Bellevue, Washington at the same

9    location as Anker.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to

the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there

are 100 or more class members, and (ii) there is an aggregate amount in

controversy exceeding $5,000,000, exclusive of interest and costs.

11.     This Court has supplemental jurisdiction over any state law claims

pursuant to 28 U.S.C. Section 1367.

12.     The injuries, damages, and/or harm upon which this action is based

occurred or arose out of activities engaged in by Defendants within, affecting, and

emanating from the State of California. Defendants regularly conduct and/or

solicit business in, engage in other persistent courses of conduct in, and/or derive

substantial revenue from products provided to persons in the State of California.

Defendants have engaged, and continues to engage, in substantial and continuous

business practices in the State of California.

13.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including within this District.

14.     In accordance with California Civil Code Section 1780(d), Plaintiffs concurrently file herewith a declaration establishing that, at various times throughout the class period, s/he purchased one or more Eufy Cameras while located in California. (*See* Exhibit A.)

15.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

**A.     Image Resolution is Critical to Purchasers of Security Cameras.**

16.     In the security camera industry, image resolution is everything. The higher a camera's resolution, the more likely it is that suspects can be identified by faces, hair, clothing, tattoos, and other indicia—especially as the distance between the camera and the subject increases.

17.     Anker advertises that some of its Eufy Cameras offer ***at least*** "1080p" (also called "HD"). A "1080p" camera is one that is capable of recording an image with 2,073,600 ***distinct*** pixels. Specifically, "1080p" cameras record images at 1,920 distinct pixels horizontally by 1,080 distinct pixels vertically.[2]

18.     However, ***most*** of the Eufy Cameras Anker sells are advertised as being capable of "2K." A "2K" camera is one that is capable of recording an

---

[2] *See* https://www.boxcast.com/blog/what-does-4k-actually-mean, accessed 7/22/2023

image with 3,686,400 **distinct** pixels. Specifically, "2K" cameras should record images at 2,560 distinct pixels horizontally by 1,440 distinct pixels vertically.[3]

19.     Some of the most expensive, purportedly high resolution Eufy Cameras Anker sells are advertised as being capable of being "4K" (otherwise known as "Ultra HD," or "UHD"). "4K" video should offer better image quality than "2K" video, providing "far greater image detail than any other resolution."[4] A "4K" camera is one that is capable of recording an image with 8,294,400 **distinct** pixels. Specifically, "4K" cameras record images at 3,840 distinct pixels horizontally by 2,160 distinct pixels vertically.[5]

20.     **Distinct** pixel density is critical to the crispness of an image. For example, compare the following images:



[3] *See* https://www.cctvcameraworld.com/2k-vs-4k-security-cameras-systems/, accessed 7/22/2023

[4] *See* https://www.boxcast.com/blog/what-does-4k-actually-mean, accessed 7/22/2023

[5] *Id.*

Figure 1



Figure 2

21.     Both images are the same size: 1,920 pixels wide and 1,080 pixels

high. Further, both images contain the same number of pixels: 2,073,500.

However, the second image has only one-tenth the number of ***distinct*** pixels as

the first image.[6] The loss in pixel density severely degrades the image quality,

making it difficult or impossible to identify the subjects.

**B.     Anker Advertises the Eufy Cameras as Being Capable of "1080p" /
       "HD," "2K," or "4K" / "UHD" Video Resolution**

**1.     Overview of Eufy Cameras**

22.     Anker prominently markets the Eufy Cameras as being capable of,

variously, "1080p" / "HD," "2K," or "4K" / "UHD" video resolutions. The

---

[6] To achieve this, the first image was compressed to 192 x 108 pixels (i.e., 1/10th its original size), and then upscaled back to its original size of 1,920 x 1,080 pixels.

following representations concerning video resolution accompanied the listed

Eufy Cameras advertised on Defendants' website (https://us.eufy.com/)[7]:

| Eufy Camera Model | Advertised Video Resolution |
|---|---|
| 2 | 1080p |
| 2 Pro | 2K |
| 2C | 1080p |
| 2C Pro | 2K |
| S220 and S220 video doorbell | 2K |
| S230 | 2K |
| S330 video doorbell | 2K |
| Video doorbell 2K pro | 2K |
| S330 video smart lock | 2K |
| S100 wall light cam | 2K |
| S120 solar wall light cam | 2K |
| S300 | 4K |
| S330 | 4K |

The term "Eufy Cameras," as used herein, refers to the above-referenced cameras.

### 2. The "S300 eufyCam" (a "4K" Eufy Camera)

23. Defendants' representations concerning each Eufy Camera's video

quality features prominently in Defendants' advertising for each of the products.

For example, Anker prominently advertises the S300 eufyCam (eufyCam3C) as

being capable of providing "4K" video. The advertising for this Eufy Camera lists

"4K" as the first product attribute and also touts, as the first bullet point in the

product description, that the cameras have "4K Detail Day and Night"[8]:

---

[7] Verified on July 22, 2023. This list is not exhaustive and excludes differing model variants, kits, and product bundles Defendants advertise.

[8] *See* https://us.eufy.com/products/t8882121?variant=41871155921082, accessed 7/22/2023



24.     Additional statements found under the "Quick Intro" and "Unboxing & Reviews" section of the same page further advertise the S300 Eufy Camera as being capable of "4K" video, and some of the advertising material even describes 4K as "detail[ed]" video with more than "8 million pixels":





25.   The "Specs" and "Features" section of the same page provides the purported "4K" video of the S300 Eufy Camera as follows:

## Specs

Features

| Resolution | 4K (3840x2160)° |
| --- | --- |

26.   Anker makes similar representations wherever it advertises the Eufy Cameras. For example, the S300 product page on Amazon.com also represents this Eufy Camera is capable of "4K" video and of delivering "detail[ed]" video images consisting of "8 million pixels"[9]:

---

[9] *See* https://www.amazon.com/eufy-security-Expandable-Recognition-Spotlight/dp/B0B87RYGJ7?th=1, accessed 7/23/2023



27. Statements found beneath the S300 listing further represent this Eufy Camera as being capable of providing "4K Detail Day and Night" with a resolution of "2160p" (another term for "4K"[10]):

| | |
|---|---|
| Video Capture Resolution | 2160p |
| Special Feature | Night Vision, Motion Sensor |
| Memory Storage Capacity | 16 TB |

**About this item**

- See 4K Detail Day and Night: Spot tiny features on any potential trespasser (human or animal) with eufyCam 3C—even at night. The Starlight photosensitive system enhances low light conditions for clarity in color.
- Local Expandable Storage: With this local 4K security camera system, you're

28. Based on these representations, consumers reasonably believe that when they use a S300 EufyCam, and other purportedly "4K" Eufy Cameras similarly advertised, they will be able to view both live and recorded video with image quality concomitant with 4K resolution (i.e., 3,840 by 2,160 distinct pixels).

---

[10] *See* https://en.wikipedia.org/wiki/4K_resolution under "2160p resolution," accessed 7/23/2023

### 3. The "Video Doorbell Dual" (a "2K" Eufy Camera)

29. Anker advertises each of its Eufy Cameras similarly, prominently featuring representations concerning their purported video quality. For example, the "Video Doorbell Dual," a kit configuration consisting of the "S330 Video Doorbell" and "S230 SoloCam," purports to be capable of capturing "every event that occurs around your home in ultra-clear 2K resolution"[11]:



30. Individually, the S330 Video Doorbell is presented as a "2K" camera that allows purchasers to "see 2K Ultra-HD details"[12]:

---

[11] *See* https://us.eufy.com/products/bundle-e8213181-1-t81241w1-2?_pos=9&_sid=f35aa128c&_ss=r, accessed 7/23/2023

[12] *See* https://us.eufy.com/products/t8213181?_pos=4&_sid=29a6b81cf&_ss=r, accessed 7/23/2023



31.    The specifications also assert this Eufy Camera is capable of "2K" video in one of the two "dual" cameras found on the device:

## Specs

Features

| Dual Camera | Front Camera 160°, Package Camera 97° |
| --- | --- |
| Video Quality | Front Camera 2K (2560 ×1920), Package Camera 1080p (1600 × 1200) |

32.    The Amazon listing makes similar representations as to the camera's "2K" and "Ultra-HD" video[13]:

---

[13] *See* https://a.co/d/fM5EFWF, accessed 7/23/2023



33.     Likewise, the S230 Eufy Camera, as presented separately, also touts its purported "2K" video in multiple places on the Eufy website including, based on the image accompanying this listing, on the product itself[14]:



34.     The S230 SoloCam is further advertised on the Eufy website, like other Eufy Cameras, as offering "crisp 2K high-definition video"[15]:

---

[14] *See* https://us.eufy.com/products/t81241w1?_pos=1&_sid=6ca9dc3e8&_ss=r, accessed 7/23/2023

[15] *Id.*



**Capture Every Detail**

Clarity is key when it comes to keeping watch over your home.
See exactly what's happening around your home in crisp 2K high-definition video.

35.     A "Product Comparison" found on the same page purports to compare the S230 SoloCam with other Eufy Cameras, none of which offer video below "1080p":



| | SoloCam S40 | SoloCam L20 | SoloCam E40 | SoloCam E20 |
|---|---|---|---|---|
| MSRP | $199.99 | $149.99 | $129.99 | $99.99 |
| Resolution | 2K | 1080p | 2K | 1080p |

36.     The Amazon listing makes similar representations as to the Eufy Camera's "2K" video that purports to allow prospective purchasers or consumers to "see every detail"[16]:



37.     Based on these representations, consumers reasonably believe that when they use Eufy Cameras such as the "Video Doorbell Dual," and other purportedly "2K" Eufy Cameras similarly advertised, they will be able to view both live and recorded video of a quality concomitant with 2K (i.e., 2,560 by 1,440 pixels).

### 4.     The "S200 eufyCam" (a "1080p" Eufy Camera)

38.     Anker does not represent any of its Eufy Cameras as being capable of delivering a maximum video resolution of less than 1080p. The S200 eufyCam, for example, is advertised as streaming and recording footage in "crystal clear

---

[16] *See* https://a.co/d/7zvz6wP, accessed 7/23/2023

1080p HD," which is further contrasted with the purportedly inferior resolution of unspecified "others"[17]:



39.    Based on these representations, consumers reasonably believe that when they use a S200 EufyCam, and other purportedly "1080p" Eufy Cameras similarly advertised, they will be able to view both live and recorded video of a quality concomitant with 1080p—or 1,920 by 1,080—resolution.

### 5.    Other Eufy Cameras

40.    Defendants have advertised, marketed, and sold a variety of other Eufy-brand cameras, which they falsely claim as being capable of providing, variously, "1080p" / "HD," "2K," or "4K" / "UHD" video resolutions. (*See supra*, ¶ 22) Anker has also sold these cameras in a variety of different sets, packages, kits, or variants, such as packages that include multiple cameras, solar panel charging units, digital video storage devices, or other products. The

---

[17] *See* https://us.eufy.com/products/bundle-e8213181-1-t81241w1-2?_pos=9&_sid=f35aa128c&_ss=r, last accessed 7/23/2023

"1080p" / "HD," "2K," and "4K" / "UHD" representations with respect to these other Eufy Cameras are identical to the representations Anker makes with respect to the Eufy Cameras specifically described above.

41. Based on Defendants' representations with respect to each and every Eufy Camera, consumers reasonably believe that when they use a Eufy Camera, they will be able to view both live and recorded video of a quality concomitant with that which Defendants have advertised and represented: "1080p" / "HD," "2K," or "4K" / "UHD."

**C. Third-Party Retailers**

42. Although, on information and belief, Defendant Fantasia is the primary retailer of Eufy Cameras—advertising, marketing, and selling the cameras through the Eufy website—the cameras are also sold on other websites, and through brick-and-mortar stores like Home Depot. Defendants provide these third-party retailers with specifications and advertising materials representing that the Eufy Cameras are "1080p" / "HD," "2K," or "4K" / "UHD." *See, e.g.*, https://www.homedepot.com/p/eufy-Security-SoloCam-S40-Wireless-Home-Security-Outdoor-Surveillance-Spotlight-Camera-2K-HD-T81241W1/318410424 (stating that the Eufy Camera provides "2K HD" video resolution).

43. Because of these inaccurate specifications and advertising material, every retailer who sells Eufy Cameras represents that they are "1080p" / "HD," "2K," or "4K" / "UHD." Accordingly, any consumer who purchases a Eufy Camera reasonably believes, based on Defendants' representations, that they will be able to view both live and recorded video in "1080p" / "HD," "2K," or "4K" / "UHD" resolution.

**D.**   **Defendants' "1080p," "HD," "2K," "4K," and "UHD" Representations Are False and Misleading, As Evidenced By Quantitative Expert Analysis and Comparison of the Eufy Cameras' Image Quality to Images Captured by Actual 1080p/HD, 2K, and 4K/UHD Cameras.**

44.   Despite Defendants' advertising, the Eufy Cameras are not capable of providing the advertised video quality. Defendants' "1080p," "HD," "2K," "4K," and "UHD" representations are false and misleading, as evidenced by quantitative expert analysis and comparison of the Eufy Cameras' image quality to images captured by actual 1080p/HD, 2K, and 4K/UHD.

**1.**   **Quantitative Testing by Plaintiffs' Expert Shows that Defendants' Representations Are False and Misleading**

45.   To test the Eufy Cameras' capabilities, Plaintiffs retained an expert in video image processing, Dr. Kenneth R. Castleman. Dr. Castleman was an Adjunct Professor of Biomedical Engineering at the University of Texas at Austin from 2000 until 2010. He also held executive and senior technical positions at several high-technology companies from 1970 until 2007. He was a Senior Scientist at NASA's Jet Propulsion Laboratory from 1970 until 1985, working in the Image Processing Laboratory of JPL. He also worked as a research fellow at the University of California Los Angeles from 1981 until 1985, and was a lecturer at the California Institute of Technology from 1975 until 1977, where he taught courses in digital image processing. All of his work in academia and in the business sector has involved electronics, optics, and computer programming.

46.   Dr. Castleman obtained and tested Eufy cameras as part of his work in this matter, including the E340 Video Doorbell camera (advertised as "2K"), and the S300 EufyCam 3C (advertised as "4K"). After configuring the Eufy Cameras to achieve their maximum image quality, Dr. Castleman compared their video image quality to that of three reference cameras: (i) the Nikon B600, which is

capable of 3456 x 4608 resolution; (ii) the iPhone 6s Plus, which is capable of 3024 x 4032 resolution; and (iii) the Axis P3905-R Mk II network camera, which is capable of 1920 x 1080 resolution. Dr. Castleman adjusted the resolutions of the reference cameras' video images according to which Eufy cameras he compared them against, to ensure an apples-to-apples comparison.

47.     Dr. Castleman's evaluated the resolution of the Eufy cameras using various methods. His testing focused on resolution, and excluded or minimized other image quality parameters, such as image noise, color, and lens distortion.

48.     One of the methods Dr. Castleman used to test the resolution of the Eufy Cameras was to generate the Modulation Transfer Function ("MTF") for each camera. As objects in a video scene become smaller, their contrast is reduced until they eventually disappear. Cameras with higher resolutions should be able to reproduce smaller objects with good contrast, compared to cameras with lower resolutions. The MTF is a plot of the contrast of objects versus size, and is commonly used to illustrate the resolution of an imaging system. Typically, the objects are alternating black and white vertical bars of different width and spacing. The size of the bars is specified by their frequency in line pairs (i.e., one black bar and one adjacent white bar) per unit of length.

49.     For camera analysis, the MTF is plotted from zero to 0.5 line pairs per pixel. The MTF can be calculated from the image of a test target containing bar patterns of various sizes, but it can also be computed from the image of an edge. The following figure shows an edge, its profile, and its corresponding MTF:



**Figure 1. An ideal edge, its profile, and its MTF**

50.     In Figure 1, the image of the black/white transition edge is shown at the top. The graph in the lower-left corner of the Figure shows the profile of the edge as a plot of the brightness across the edge. The MTF graph appears at the lower-right corner of the Figure.

51.     In Figure 1, the edge rises from 10% to 90% of the way from black to white in the space of 0.88 pixels. The MTF always starts at 1.0 at zero frequency. This MTF falls off from 100% at zero to about 65% at the maximum resolvable frequency of 0.5 cycles per pixel. This is the best possible MTF for an edge in a digital image it exhibits no degradation from a lens, image processing, or anything else. The closer a camera can come to this MTF, the better its optical resolution.

52.     To generate the MTFs for the reference cameras and Eufy cameras, Dr. Castleman took test video from each of the cameras. The test video included a page of text, placed at ten feet from the cameras. Sample frames from the test video, after adjusting appropriately for differential image size, are depicted below:



**Images taken at ten feet under dual 45 degree side lighting.**

**Figure 2. Eufy cameras versus test cameras, 10 feet**

53.    The images in Figure 2 show that, even to the naked eye, the resolution of the Eufy cameras is clearly inferior to that of the reference cameras. In the images captured by the reference cameras, the text is crisp, and at least the first few lines are readable. In contrast, in the images captured by the Eufy cameras, most or all of even the largest text is unreadable.

54.    Comparing the MTFs and edge responses of the reference cameras to those of the Eufy cameras quantitatively confirms that the resolution of the Eufy cameras is inferior. Figure 3 shows MTFs for the iPhone 6 Max and Nikon B600 reference cameras, which are generally representative of the MTFs for the reference cameras considered:



**Figure 3. Representative MTFs for the reference cameras**

55.     Figure 3 shows the edge responses and MTFs of the two reference cameras. The two reference cameras produce similar values for 10 – 90% rise, overshoot, and undershoot. The MTFs of the two reference cameras are similar, with both having slight overshoot and almost no undershoot.

56.     "Overshoot" occurs when the transition at an edge in the image is reproduced with a higher amplitude than in the original scene. It appears as a bright line or halo on the lighter side of the edge and a dark line on the darker side. Overshoot happens because the imaging system boosts the contrast more than necessary, often due to the signal processing algorithms used to enhance sharpness or due to the inherent characteristics of the imaging sensor and lens. This can lead to an artificial appearance or exaggerated edges in the image. "Undershoot" is the opposite effect. It happens when the transition at an edge is reproduced with a lower amplitude than the original. Undershoot may manifest as a dimming or softening of the edge, where the contrast is lower than it should be. This often occurs due to limitations in the imaging system's ability to resolve fine details, or due to signal processing algorithms that inadvertently reduce contrast

in an attempt to suppress noise or other artifacts. They each compare favorably to the MTF of the ideal edge in Figure 1.

57.     Figure 4 shows the edge responses and MTFs of the three Eufy cameras. The MTFs have sharp edges, as reflected by the small 10-90% rise distances, but extreme amounts of overshoot and undershoot. Further, the MTFs go well above 2.0, indicating extreme amounts of edge enhancement.



**Figure 4. MTFs for Eufy Cameras**

58. A side-by-side comparison of all four cameras' MTFs and edge responses is revealing:



**Figure 5. Edge responses and MTFs**

59.     Figure 5 shows that the two reference cameras have superior MTFs with little overshoot and almost no undershoot. The Eufy cameras' MTFs, however, show large amounts of boost at medium frequencies, due undoubtedly to extreme edge enhancement processing in the camera circuitry. This produces

large amounts of overshoot and undershoot, which adds artifacts to the images in regions of varying brightness. The MTFs confirm what is already apparent in the images of Figure 2: the resolution of the Eufy cameras is markedly inferior to those of the reference cameras in a fair comparison.

60. Dr. Castleman performed further testing on the cameras, by preparing another set of reference images for comparison. These images were made by cropping out a 24" x 36" test target from test camera images taken at 10 feet with dual 45-degree side lighting, and scaling the reference image to the same pixel density (i.e., number of pixels vertically) as the corresponding Eufy camera image. Then the type size of the smallest readable line was selected in both images. The ratio of type size in the test image to the type size in the reference camera image, multiplied by 4,000 (4K resolution) was used to estimate the resolution of the test camera.

61. The test target contains printed text in sizes ranging from 0.20" to 1.44" in height. The upper section of the text chart is a 200% enlargement of the lower section, and the actual text height is twice the indicated value.

62. The text target image from the S300 EufyCam 3C camera is shown below. It is 622 x 413 pixels, with a pixel density of 17.28 ppi:

**Figure 6. Comparison of the S300 EufyCam 3C to a scaled image from the iPhone 12.**

63.     In Figure 6, the readability of the image obtained by the iPhone 12 reference camera (i.e., the image on the right) goes down to approximately 0.32", or somewhere between 0.28" and 0.36". For S300 EufyCam 3C (i.e., the image on the left), readability goes down to only about 0.72". The ratio is 44%. ***This shows that the true resolution of the EufyCam 3C—advertised as being 4K camera—is 0.44 x 4,032 = 1,774, or slightly less than 2K resolution.***



**Figure 7. Comparison of the Eufy Video Doorbell E340's Telephoto Camera to the iPhone 12.**

64.    Figure 7 shows a comparison of video images from the Eufy Video Doorbell E340's telephoto camera against video captured by the iPhone 12 reference camera. In the video captured by the iPhone, the 0.48" line is readable. In the Eufy Video Doorbell E340 telephoto camera image, even the 0.72" line is unreadable.[18] At this low pixel density, artifacts introduced by the extreme edge enhancement processing distort the text badly.

---

[18] To ensure an accurate comparison between the images captured by the two cameras in Figure 7, the image obtained by the Eufy Video Doorbell E340's telephoto camera was scaled down appropriately.

65.    Dr. Castleman concluded that—contrary to Defendants' advertising—the tested Eufy cameras actually have the following optical resolutions:

| Eufy Camera | Advertised Resolution | Estimated Actual Resolution |
|---|---|---|
| S300 EufyCam 3C | 4K/UHD | Slightly less than 2K resolution (approximately 1,774) |
| Video Doorbell E340 (telephoto camera) | 2K | 720p or less |

### 2. Qualitative Testing by Plaintiffs' Counsel Further Shows that Defendants' Representations are False and Misleading.

66.    Dr. Castleman's conclusions confirmed prior testing that Plaintiffs' counsel had conducted. To test the Eufy Cameras' capabilities, Plaintiffs' counsel took video of a subject at distances of ten feet and twenty feet. The S300 eufyCam 3C camera (the "Test Eufy Camera") was chosen for the test because it is currently offered for sale and purports to be one of the high resolution "4K" Eufy Cameras. The Test Eufy Camera was set to optimal settings and connected to a fast Wi-Fi connection. The video subject was an individual holding a hardcover book with text in various font sizes. One video clip was taken using the Test Eufy Camera, and the other clip was taken using a true 4K video camera. After the video was taken, a still image from each camera's video output was cropped to focus on the subject's face and book cover:





| Test Eufy Camera at 10 ft | True 4K Camera at 10 ft |

67.     As the images above show, the image taken by the Test Eufy Camera at only ten feet has an image quality that is noticeably inferior to that of the True 4K camera. For example, the level of detail in the jacket stitching, houseplant leaf, jacket logo, and book cover is markedly lower in the Test Eufy Camera. In contrast, the image taken by the true 4K camera is far sharper—the subject can be easily identified; the stitching in the jacket is much more distinct; the veins and definition in the houseplant leaf can be seen; the jacket logo appears distinctly rather than as a blur; and much more detail emerges in the book cover.[19]

68.     At 20 feet, the differences are even more stark:

---

[19] The images in this brief are best viewed in PDF format on a computer screen. Printing this brief may cause loss in image quality, depending on the printer used.

 

Test Eufy Camera at 20 ft    True 4K Camera at 20 ft



69.     At twenty feet, the image produced by the Test Eufy Camera has lost

nearly all facial features. In comparison, the true 4K image is clear enough that

one may still be able to identify the subject. Additionally, the true 4K image

preserves other details, including the stitching in the subject's jacket, and the

shape of the jacket logo. In fact, in the image captured by the Test Eufy Camera,

the jacket's stitching has all but disappeared, whereas the stitching can readily be

seen in the image captured by the true 4K camera. Finally, the title of the book

can much more readily be discerned in the true 4K image, whereas it is

completely illegible in the image captured by the Test Eufy Camera.

**F. Plaintiffs' Experiences**

### 2. Thanh Tran

70.     In July 2022, while residing in San Jose, California, Plaintiff Thanh

Tran was shopping for security cameras. He was specifically looking for security

cameras that had the highest resolution possible while still being within his

budget. Seeking high-resolution cameras was important to him because he understood that subjects can be more easily identified in video recorded at higher resolutions.

71.     During his shopping process, he visited Amazon and located the Eufy security Video Doorbell Dual Camera with HomeBase. He read the entire Amazon listings for this product, including the various representations that the telephoto camera was "2K" (*see supra*, Section B). He also saw that the camera was within his budget.

72.     Based on the representations he saw on Amazon, Mr. Tran purchased the camera, at the listed price.

73.     After he installed and used the camera, Mr. Tran was disappointed in the image quality it produced. He had believed, based on the "2K" representations he had read on Amazon, that the image quality would have been substantially clearer than the image quality he got from the camera.

74.     Had Mr. Tran known before his initial purchase that the Eufy Cameras were not capable of providing video quality concomitant with the advertised or represented video quality—in this case 2K resolution—he would not have purchased the camera or, at a minimum, he would have paid less for it.

### 3.     Jyotindra Shakya

75.     In November 2022, while residing in Fremont, California, Plaintiff Jyotindra Shakya was shopping for security cameras. He was specifically looking for security cameras that had the highest resolution possible while still being within his budget. Seeking high-resolution cameras was important to him because he understood that subjects can be more easily identified in video recorded at higher resolutions.

76. During his shopping process, he visited the Eufy website at https://us.eufy.com,[20] and located the S300 eufyCam (eufyCam 3C)—the same camera used in the comparison test described above. He read the entire listing on the Eufy website—including the various representations that the camera was "4K" (*see supra*, Section B). He also saw that the camera was within his budget.

77. Based on the representations he saw on the Eufy website, Mr. Shkaya purchased the S300 eufyCam (eufyCam 3C), for $363.80.

78. After he installed and used the camera, Mr. Shakya was disappointed in the image quality it produced. He had believed, based on the "4K" representation he had read on the Eufy website, that the image quality would have been substantially clearer than the image quality he got from the camera.

79. Had Mr. Shakya known before his initial purchase that the Eufy Cameras were not capable of providing video quality concomitant with the advertised or represented video quality—in this case 4K resolution—he would not have purchased the camera or, at a minimum, he would have paid less for it.

## CLASS ALLEGATIONS

80. In addition to their individual claims, Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed class and subclass of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

81. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

---

[20] The June 13, 2023 Terms of Service on the Eufy website contain an arbitration provision purporting to require arbitration in Shenzhen, China. Anker added that provision to the website long after Mr. Shakya made his purchase. No Plaintiff has ever agreed to any arbitration provision with respect to their purchase or use of the Eufy cameras.

The "Class": All natural persons who purchased Eufy Cameras in the United States within the four years preceding the filing of this Complaint (the "Class Period").

The "California Subclass": All Class Members who purchased Eufy Cameras in California.

82. This action has been brought and may properly be maintained as a class action against Anker because there is a well-defined community of interest in the litigation and the proposed classes are easily ascertainable.

83. Numerosity: Plaintiffs do not know the exact size of the Class, but they estimate that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

84. Common Questions Predominate: This action involves common questions of law and fact to the Class because each class member's claim derives from the deceptive, unlawful, misleading, unfair, and/or false statements and omissions that led them to believe that the Eufy Cameras were, variously, capable of providing "1080p" / "HD," "2K," and/or "4K" / "UHD" video resolution, when they were not. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

a. whether the Eufy Cameras are capable of providing video quality concomitant with "1080p" / "HD," "2K," and/or "4K" / "UHD" resolution, as advertised;

b. whether the Eufy Cameras can record video of a quality that is concomitant with "1080p" / "HD," "2K," and/or "4K" / "UHD" resolution, as advertised;

c. whether users can view "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video from the Eufy Cameras on users' devices, as advertised;

d. whether Anker unfairly, unlawfully, and/or deceptively misrepresented that the Eufy Cameras are capable of providing "1080p" / "HD," "2K," and/or "4K" / "UHD" quality resolution; that they can record "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; and that users can view "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video from the Eufy Cameras on users' devices;

e. whether the use of the terms "1080p" / "HD," "2K," and/or "4K" / "UHD" in Defendants' marketing violated Federal and/or California state law;

f. whether the advertising of the Eufy Cameras as being capable of "1080p" / "HD," "2K," and/or "4K" / "UHD" quality resolution caused them to command a premium in the market as compared with similar products that do not make such a claim;

g. whether Defendants' advertising and marketing regarding the Eufy Cameras sold to the class members was likely to deceive the class members and/or was unfair;

h. whether a "1080p" / "HD," "2K," and/or "4K" / "UHD" claim on product advertising is material to a reasonable consumer;

i.   whether Anker engaged in the alleged conduct knowingly, recklessly, or negligently;

j.   the amount of profits and revenues earned by Anker as a result of the conduct;

k.   whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and,

l.   whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

85.   Typicality: Plaintiffs' claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same unlawful course of conduct in which Anker engaged. Plaintiffs and those similarly situated purchased the Eufy Cameras in reliance on Defendants' misrepresentations and omissions that Eufy Cameras are, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" cameras, capable of providing "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video. Thus, they and the class members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law. The injuries and damages of each class member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

86.   Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all Class members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no

interests in conflict with, or antagonistic to, the interests of Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class. By prevailing on their claims, Plaintiffs will establish Defendants' liability to all Class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

87.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Anker and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

88.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### First Cause of Action
**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, et seq.)**
**(On Behalf of Plaintiffs and the California Subclass)**

89. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

90. Defendants' actions, representations, and conduct have violated, and continue to violate, the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

91. Plaintiffs and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

92. The Eufy Cameras that Plaintiffs (and other similarly situated class members) purchased from Anker constitute "goods" within the meaning of California Civil Code § 1761(a).

93. Defendants' acts and practices, set forth in this Class Action Complaint, led customers to falsely believe that the Eufy Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" video resolution; that the Eufy Cameras could record video in, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" video resolution; and that users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Anker has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA.

94.     In violation of California Civil Code § 1770(a)(5), Defendants' acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code § 1770(a)(7), Defendants' acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code § 1770(a)(8), Anker has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code § 1770(a)(9), Anker has advertised goods or services with intent not to sell them as advertised. Finally, regarding California Civil Code § 1770(a)(8), Anker falsely or deceptively marketed and advertised that the Eufy Cameras are capable of, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" video resolution, when they are not.

95.     Plaintiffs request that this Court enjoin Anker from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Anker is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.

96.     CIVIL CODE § 1782 NOTICE. Plaintiffs notice and demand that, within thirty (30) days from that date of the filing of this Complaint, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and or deceptive practices complained of herein.

97.     Should the violations herein alleged not be corrected or rectified as required by Civil Code § 1782 within 30 days with respect to all Class Members, Plaintiffs will seek to amend this Class Action Complaint to seek, on behalf of

each Class Member, actual damages of at least $1,000, punitive damages, an award of $5,000 for each Class Member who is a disabled person or senior citizen, and restitution of any ill-gotten gains due to Defendants' acts and practices.

98.     Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**Second Cause of Action**
**False Advertising, Business and Professions Code § 17500, *et seq*. ("FAL")**
**(On Behalf of Plaintiffs and the California Subclass)**

99.     Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

100.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Anker made untrue, false, deceptive, and/or misleading statements in connection with the advertising and marketing of the Eufy Cameras.

101.     Anker made representations and statements (by omission and commission) that led reasonable customers to believe (i) that the Eufy Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video resolution; (ii) that the Eufy Cameras could record, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; (iii) that users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices.

102.     Plaintiffs and those similarly situated relied to their detriment on Defendants' false, misleading, and deceptive advertising and marketing practices, including, without limitation, each of the misrepresentations and omissions set forth in paragraphs 21–43 above. Had Plaintiffs and those similarly situated been

adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing the Eufy Cameras, or paying less for them.

103. Defendants' acts and omissions are likely to deceive the general public.

104. Anker engaged in these false, misleading, and deceptive advertising and marketing practices to increase their profits. Accordingly, Anker has engaged in false advertising, as defined and prohibited by section 17500, *et seq*. of the California Business and Professions Code.

105. These practices, which Anker used, and continues to use, to its significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

106. As a direct and proximate result of such actions, Plaintiffs and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

107. Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from them, the general public, or those similarly situated by means of the false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon.

108. Plaintiffs seek on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading, and deceptive advertising.

109. Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Anker from Plaintiffs, the general public, or those similarly situated by means of the false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory, and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent Class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Anker acted in good faith.

110.   Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

111.   Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Anker from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Anker, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Anker will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Anker to which it is not entitled. Plaintiffs, those similarly situated, and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### Third Cause of Action
**Common Law Fraud, Deceit, and/or Misrepresentation**
**(On Behalf of Plaintiffs and the Class)**

112.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

113.   Continuously throughout the last four years Anker fraudulently and deceptively represented to Plaintiffs and those similarly situated that (i) the Eufy Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video resolution; (ii) that the Eufy Cameras could record, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; (iii) that

users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices. Further, continuously over the last four years, Anker failed to inform Plaintiffs that the video quality provided by the Eufy Cameras is less than, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD."

114.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Anker, not reasonably known to Plaintiffs, and material at the time they were made. Anker knew the true capabilities of the Eufy Cameras, and they knew that the Eufy Cameras were not capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video resolution; that consumers could not record, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video using the Eufy Cameras; and that consumers could not view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices. Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Eufy Cameras. In misleading Plaintiffs and not so informing them, Anker breached its duty to them. Anker also gained financially from, and as a result of, its breach.

115.    Plaintiffs and those similarly situated relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had they and those similarly situated been adequately informed and not intentionally deceived by Anker, they would have acted differently by, without limitation: (i) declining to purchase the Eufy Cameras, or (ii) paying less for the Eufy Cameras.

116.    By and through such fraud, deceit, misrepresentations and/or omissions, Anker intended to induce Plaintiffs and those similarly situated to alter

their position to their detriment. Specifically, Anker fraudulently and deceptively induced them and those similarly situated to, without limitation, purchase the Eufy Cameras, including the price premium they paid for the false representations described herein.

117. Plaintiffs and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Anker.

118. As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Eufy Cameras.

119. Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Anker knew that its conduct would cause loss and harm to Plaintiffs and those similarly situated.

**Fourth Cause of Action**
**Unlawful, unfair, and fraudulent trade practices violation of the Business and Professions Code § 17200, *et seq*.**
**(On Behalf of Plaintiffs and the California Subclass)**

120. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

121. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Anker has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

122. In particular, Anker has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; and (ii) the FAL as described herein.

123.   In particular, Anker has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting in their marketing that the Eufy Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video resolution; (ii) misrepresenting in their marketing that the Eufy Cameras could record, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; (iii) misrepresenting in their marketing that users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices; and (iv) failing to inform Plaintiffs, and those similarly situated, that the representations stated in (i), (ii), and (iii) above are false.

124.   Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Anker, they would have acted differently by, without limitation: (i) declining to purchase Eufy Cameras, or (ii) paying less for Eufy Cameras.

125.   Defendants' acts and omissions are likely to deceive the general public.

126.   Anker engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Anker has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq*. of the California Business and Professions Code.

127.   These practices, which Anker used to its significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

128.   As a direct and proximate result of such actions, Plaintiffs and the other class members have suffered and continue to suffer injury in fact and have lost

money and/or property in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class members lost the amount they paid for the Eufy Cameras, and/or the price premium they paid for the Eufy Cameras based on Defendants' false representations.

129.   As a direct and proximate result of such actions, Anker has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

130.   Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including the restitution for the premium and/or full price that they or others paid to Anker as a result of Defendants' conduct. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of

UCL claim for entire class). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Anker acted in good faith.

131.    Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

132.    Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Anker from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Anker, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Anker will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Anker to which they were not entitled. Plaintiffs and those similarly situated have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**Fifth Cause of Action**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

133.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

134. Plaintiffs and members of the Class conferred a benefit on the Anker by purchasing the Eufy Cameras.

135. Anker has been unjustly enriched in retaining the revenues from Plaintiffs' and Class members' purchases of the Eufy Cameras, which retention is unjust and inequitable, because Anker (i) misrepresented in their marketing that the Eufy Cameras are capable of providing, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video resolution; (ii) misrepresented in their marketing that the Eufy Cameras could record, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video; (iii) misrepresented in their marketing that users could view, variously, "1080p" / "HD," "2K," and/or "4K" / "UHD" quality video recorded by the Eufy Cameras on users' devices; and (iv) failed to inform Plaintiffs, and those similarly situated, that the representations stated in (i), (ii), and (iii) above are false. This harmed Plaintiffs and Class members because they paid a price premium as a result.

136. Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Anker must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendants as follows:

A. Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B. An award of compensatory damages, including statutory damages, where available at law, to Plaintiffs and the Class Members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including both pre- and post-judgment interest thereon;

C. An order for full restitution;

D. An order requiring Defendants to disgorge revenues and profits wrongfully obtained;

E. An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

F. For reasonable attorneys' fees and the costs of suit incurred; and

G. For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: December 22, 2023              **GUTRIDE SAFIER LLP**

_/s/Todd Kennedy/s/_
Seth A. Safier, Esq.
Todd Kennedy, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

# Exhibit A

DocuSign Envelope ID: AD1991FE-BC3C-42C5-9A43-BEF3561A9505

1

2      I, Thanh Tran, declare:

3      1.      I am a Plaintiff in this action. If called upon to testify, I could and would

4  competently testify to the matters contained herein based upon my personal knowledge.

5      2.      I submit this Declaration pursuant to California Code of Civil Procedure section

6  2215.5 and California Civil Code section 1780(d).

7      3.      I reside in San Jose, California. I purchased Eufy security cameras products from

8  Amazon.com while I was in California.

9      I declare under penalty of perjury under the laws of California that the foregoing is true

10  and correct.

11      Executed this 10th day of February 2023, in San Jose, California.

12

13

14

   Thanh Tran

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

1

2       I, Jyotindra Shakya, declare:

3       1.     I am a Plaintiff in this action. If called upon to testify, I could and would

4 competently testify to the matters contained herein based upon my personal knowledge.

5       2.     I submit this Declaration pursuant to California Code of Civil Procedure section

6 2215.5 and California Civil Code section 1780(d).

7       3.     I reside in Freemont, California. I purchased Eufy security cameras products from

8 their website at https://us.eufy.com while I was in California.

9       I declare under penalty of perjury under the laws of California that the foregoing is true

10 and correct.

11       Executed this 7th day of February 2023, in Freemont, California.

12

13

14 

15       Jyotindra Shakya

16

17

18

19

20

21

22

23

24

25

26

27

28