**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JYOTINDRA SHAKYA and THAN TRAN, on behalf of themselves, the general public, and those similarly situated, | Case No. 3:23-cv-03925-JD |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT FANTASIA TRADING LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| v. | Hearing Date:    March 7, 2024 |
| FANTASIA TRADING LLC and POWER MOBILE LIFE, LLC, | Hearing Time:    10:00 a.m. |
| Defendants. | Hon. James Donato |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................2

    A.    Defendant Falsely and Deceptively Advertises Eufy Cameras as providing
        "1080p" / "HD," "2K," or "4K" / "UHD." ..........................................................2

    B.    Expert Testing Proves that the Eufy 4K Cameras Produce 2K Images, and
        that the Eufy 2K Cameras Produce 720p Images. ...............................................4

        1.    The Modulation Transfer Function test demonstrates the inferiority
            of the Eufy Cameras.....................................................................................4

        2.    Image comparisons demonstrate Defendant's claims are false. ...............5

    C.    Prior Testing Shows the Video Representations are False and Misleading..........6

    D.    Plaintiffs' Rightly Expected Cameras that Produced Images with the
        Advertised Resolution and Corresponding Clarity. .............................................7

III.  LEGAL STANDARD..........................................................................................8

IV.   ARGUMENT ......................................................................................................9

    A.    The FAC Plausibly Alleges that Reasonable Consumers are Deceived and
        Misled by Defendant's "1080p" / "HD," "2K," and "4K" / "UHD"
        Representations. ...................................................................................................9

    B.    Dr. Castleman's Testing Confirms that the Eufy Cameras Do Not Provide
        Image Quality Concomitant with "1080p" / "HD," "2K," and "4K" / "UHD.".13

    C.    Plaintiffs Have Standing To Challenge The Unpurchased Products. ..................15

    D.    The Court Should Grant Leave to Amend. .........................................................16

V.    CONCLUSION..................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Jamba Juice*,
    888 F. Supp. 2d 1000 (N.D. Cal. 2012) ................................................................15

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001)..............................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................8

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990)..............................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................8, 11

*Brickman v. Fitbit, Inc.*,
    No. 15-cv-02077-JD, 2016 U.S. Dist. LEXIS 150125 (N.D. Cal. July 15, 2016)................11

*Cooper v. Kimberly-Clark Corp.*,
    No. EDCV 23-1025 JGB (SPx), 2023 U.S. Dist. LEXIS 198121 (C.D. Cal. 2023) ..............8

*Durnford v. MusclePharm Corp.*,
    907 F.3d 595 (9th Cir. 2018)...........................................................................8, 11

*Estell v. McHugh*,
    No. 15-cv-04898-MEJ, 2017 U.S. Dist. LEXIS 48410 (N.D. Cal. Mar. 30, 2017)..............12

*Gunn v. FCA US, LLC*,
    No. 3:22-cv-02229-JD, 2023 U.S. Dist. LEXIS 147429 (N.D. Cal. Aug. 22, 2023)..............9

*Jones v. Johnson*,
    781 F.2d 769 (9th Cir. 1986)...........................................................................8, 11

*Koh v. S.C. Johnson & Son, Inc.*,
    No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 5, 2010) ....................15

*Maisel v. S.C. Johnson & Son, Inc.*,
    No. 21-cv-00413-TSH, 2021 U.S. Dist. LEXIS 86203 (N.D. Cal. May 5, 2021) ...............15

*McGinity v. P&G*,
    69 F.4th 1093 (9th Cir. 2023)...............................................................................8

*Milan v. Clif Bar & Co.*,
    No. 18-cv-02354-JD, 2019 U.S. Dist. LEXIS 141403 (N.D. Cal. Aug. 20, 2019)..............13

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012) ..................................................................15

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    No. 20-cv-09077-JSW, 2021 U.S. Dist. LEXIS 150394 (N.D. Cal. Aug. 6, 2021)..............16

*Moyo v. Gomez*,
    32 F.3d 1382 (9th Cir. 1994)...............................................................................11

*Nacarino v. Chobani, LLC*,
    No. 20-cv-07437-EMC, 2021 U.S. Dist. LEXIS 149153 (N.D. Cal. 2021) ........................14

*Salazar v. Target Corp.*,
    83 Cal. App. 5th 571 (2022)................................................................................9

*Shalikar v. Asahi Beer U.S.A.*,
    No. LA CV17-02713 JAK (JPRx), 2017 U.S. Dist. LEXIS 221388 (C.D. Cal. 2017.......8, 11

*Sponchiado v. Apple Inc.*,
   No. 18-cv-07533-HSG, 2019 U.S. Dist. LEXIS 199522 (N.D. Cal. Nov. 18, 2019) ..9, 10, 12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...........................................................................................8, 9, 13

*Wilson v. Frito-Lay N. Am.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ...............................................................................15

**Rules**

Fed. R. Civ. P. 12(b)(6)...................................................................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

When security depends on the sharpness of an image, a blurry camera's output morphs the adage 'a picture is worth a thousand words' into a cautionary tale of vulnerability. This is the crux of the lawsuit against Defendant Fantasia Trading LLC ("Defendant"). Defendant advertises and sells "1080p" / "HD," "2K," and "4K" / "UHD" security cameras that cannot produce images anywhere near their represented quality (the "Eufy Cameras"). Reasonable consumers believed when they purchased the Eufy Cameras, that they would be capable of both live and recorded video and image quality concomitant with what was represented. But expert testing shows that the "4K" cameras produce images with lower quality than 2K images while the "2K" cameras produce images that look the same or worse than 720p images.

Defendant now moves to dismiss, claiming that (1) Plaintiffs fail to plead the pixel count; (2) Plaintiffs fail to properly test the Eufy Cameras; and (3) Plaintiffs lack standing to challenge claims regarding Eufy Cameras they did not purchase. Each argument fails.

Defendant argues that it is permitted to advertise its cameras as "1080p" / "HD," "2K," and "4K" / "UHD" simply because the cameras have a corresponding pixel count. But Defendant's advertising does not disclose to consumers that its representations refer solely to pixel count, and, as Defendant acknowledges, pixel count alone does not determine resolution. To the contrary, Defendant's advertising states that their so-called "4K" cameras have a "4K" resolution, and are capable of "4K Detail Day and Night" and "spot[ting] tiny features" due to the supposedly "detailed" resolution. The "2K" cameras claim to have a "Video Quality" of "2K" which allows consumers to "see 2K Ultra-HD details" and "crisp 2K high-definition video." Defendant further claims that its "1080p" cameras can record in "crystal clear 1080p HD." Thus, Defendant's representations relate to overall video and image quality, not just pixel count.

Defendant takes issue with the testing methodology that Dr. Castleman and Plaintiffs' counsel employed in comparing the Eufy Cameras with the Reference Cameras, but the Court must reject Defendant's attempt to have the Court resolve factual issues or weigh the evidence

at this stage. Plaintiffs have adequately explained the testing methodology and the Court

cannot discount the well-pled allegations.

Finally, Plaintiffs have standing to challenge the unpurchased products because those

Eufy Cameras are substantially similar to the Eufy Cameras Plaintiffs purchased. The majority

of courts in this district allow plaintiffs to challenge unpurchased products where they are

substantially similar to the products the plaintiffs purchased. Here, all of the Eufy Cameras are

substantially similar to one another, all make the same, or substantially the same, false and

misleading representations regarding video and image quality.

## II.    BACKGROUND

### A.    Defendant Falsely and Deceptively Advertises Eufy Cameras as providing "1080p" / "HD," "2K," or "4K" / "UHD."

Plaintiffs bring this complaint against Defendant for its false and deceptive advertising

and sale of security cameras which it represents provide "1080p" / "HD," "2K," or "4K" /

"UHD." ECF No. 30 (First Amended Complaint, "FAC") ¶ 1; *see id.* ¶ 22. Plaintiffs allege that

video resolution is a critical factor that consumers consider in determining what security

camera to purchase. *Id.* ¶ 2. Consumers desire higher resolution cameras because they allow

users to more accurately identify faces, hair, clothing, tattoos, and other indicia, at great

distances and with greater clarity. *Id.* ¶¶ 2, 16. As a result, Plaintiffs allege that Defendant is

able to charge a price premium based on the false and deceptive "1080p" / "HD," "2K," or

"4K" / "UHD" representations. *Id.* ¶¶ 2, 74, 79.

However, none of the cameras provide the promised video and image resolution. For

example, some of the Eufy Cameras claim to provide video of "at least '1080p' (also called

'HD')." *Id.* ¶ 17. The S200 EufyCam advertises that it provides streaming and recording

footage in "crystal clear 1080p HD." *Id.* ¶ 38. These representations appear on Defendant's

website and at third-party retailers. *Id.* ¶¶ 35, 42–43. "[C]onsumers reasonably believe that

when they use a S200 EufyCam, and other purportedly '1080p' Eufy Cameras similarly

advertised, they will be able to view both live and recorded video of a quality concomitant with

1080p—or 1,920 by 1,080—resolution." *Id.* ¶ 39.

Most Eufy Cameras are advertised as being capable of "2K." FAC ¶ 18; *see id.* ¶¶ 29–37. For example, Defendant's website claims that the "Video Doorbell Dual," a camera package which includes the "S330 Video Doorbell" and the "S230 SoloCam," is capable of capturing "every event that occurs around your home in ultra-clear 2K resolution." *Id.* ¶ 29. When purchased individually, the S330 Video Doorbell claims that consumers can "see 2K Ultra-HD details." *Id.* ¶ 30. The specifications also assert it is capable of "2K" video quality in one of the two "dual" cameras found on the device. *Id.* ¶ 31. "[C]onsumers reasonably believe that when they use Eufy Cameras such as the 'Video Doorbell Dual,' and other purportedly '2K' Eufy Cameras similarly advertised, they will be able to view both live and recorded video of a quality concomitant with 2K" resolution. *Id.* ¶ 37.

The highest—and most expensive—resolution advertised by Defendant is "4K" (otherwise known as "Ultra HD" or "UHD"). *Id.* ¶ 19. For example, on Defendant's website, the S300 eufyCam "lists '4K' as the first product attribute and also touts . . . that the cameras have '4K Detail Day and Night.'" *Id.* ¶ 23. It also claims to offer "detail[ed]" video and "4K" resolution. *Id.* ¶¶ 24–25. The Amazon product page further claims that the S300 is "capable of providing '4K Detail Day and Night' with a resolution of '2160p' (another term for '4K')" and that it can "[s]pot tiny features on any potential trespasser . . . even at night." *Id.* ¶ 27. When consumers review Defendant's "4K" and "UHD" representations they reasonably believe the Eufy Cameras "will be able to view both live and recorded video with image quality concomitant with 4K resolution." *Id.* ¶ 28.

Defendant's "1080p" / "HD," "2K," or "4K" / "UHD" video representations are identical across third-party retailers. *Id.* ¶¶ 42–43. "[O]n information and belief, Defendant Fantasia is the primary retailer of Eufy Cameras—advertising, marketing, and selling the cameras through the Eufy website—the cameras are also sold on other websites, and through brick-and-mortar stores like Home Depot." *Id.* ¶ 42. Defendant provides "these third-party retailers with specifications and advertising materials representing that the Eufy Cameras are '1080p' / 'HD,' '2K,' or '4K' / 'UHD.'" *Id.* Because of Defendant's inaccurate specifications and advertising material, every retailer who sells Eufy Cameras makes the same false and

deceptive representations. *Id.* ¶ 43. Accordingly, any consumer who purchases a Eufy Camera will be exposed to the same false and deceptive representations. *Id.*

### B. Expert Testing Proves that the Eufy 4K Cameras Produce 2K Images, and that the Eufy 2K Cameras Produce 720p Images.

Plaintiffs include "quantitative expert analysis and comparison[s] of the Eufy Cameras' image quality to images captured by actual 1080p/HD, 2K, and 4K/UHD" cameras. FAC ¶ 44. Dr. Castleman is well-qualified and "[a]ll of his work in academia and in the business sector has involved electronics, optics, and computer programming." *Id.* ¶ 45. Dr. Castleman tested the "E340 Video Doorbell camera (advertised as '2K'), and the S300 EufyCam 3C (advertised as '4K')." *Id.* ¶ 46. He configured the "Eufy Cameras to achieve their maximum image quality" and compared them to three reference cameras: (i) the Nikon B600 (capable of 4K); (ii) the iPhone 6 (capable of 4K); and (iii) the Axis P3905-R Mk II network camera (capable of 1080p) (referred to as the "Reference Cameras"). *Id.*; *see id.* ¶¶ 52–53. Dr. Castleman "adjusted the resolutions of the [R]eference [C]ameras' video images according to which Eufy Cameras he compared them against, to ensure an apples-to-apples comparison." *Id.* ¶ 46.

Dr. Castleman evaluated the resolution of the Eufy cameras using various methods. *Id.* ¶ 47. He "focused on resolution, and excluded or minimized other image quality parameters, such as image noise, color, and lens distortion." *Id.*

### 1. The Modulation Transfer Function test demonstrates the inferiority of the Eufy Cameras.

Dr. Castleman tested the Eufy Cameras and Reference Cameras by generating "the Modulation Transfer Function ("MTF") for each camera." FAC ¶ 48. "The MTF is a plot of the contrast of objects versus size, and is commonly used to illustrate the resolution of an imaging system." *Id.* ¶ 48. As objects in a video become smaller, "their contrast is reduced until they eventually disappear." *Id.* Cameras with higher resolutions can reproduce smaller objects with much better contrast, compared to cameras with lower resolution. *Id.*

To generate the MTFs for the Eufy Cameras and Reference Cameras, Dr. Castleman took test videos from each of the cameras. *Id.* ¶ 52. He calculated the MTF from a sharply defined edge in an image from each test video. *Id.* ¶ 42. The test video included a "page of text,

placed at ten feet from the cameras." *Id.* Sample frames from test video are depicted in Plaintiffs' FAC. *Id.* ¶ 52. Simple side-by-side comparisons demonstrate that "the resolution of the Eufy Cameras is clearly inferior to that of the Reference Cameras." *Id.* ¶¶ 52–53. The Reference Cameras show text which is readable and crisp, whereas the Eufy Cameras are largely unreadable. *Id.*

The MTF "quantitatively confirms" the inferiority of the Eufy Cameras. FAC ¶ 54. Dr. Castleman generated the MTFs of the Nikon B600 and iPhone 6 which are representative of the Reference Cameras. *Id.* Figure 3 shows the edge responses and the MTFs of the Reference Cameras, both produced similar values for 10 – 90% rise, slight overshoot, and almost no undershoot. *Id.* ¶ 55. "Overshoot" occurs when the transition at an edge in the image is reproduced with a higher amplitude than in the original scene. *Id.* ¶ 56. "Undershoot" occurs when the transition at an edge is reproduced with a lower amplitude than the original. *Id.* The testing confirms that the Reference Cameras perform "favorably to the MTF of the ideal edge [shown] in Figure 1." *Id.*; *see id.* ¶ 49 (image representing "[a]n ideal edge, its profile, and its MTF"). The edge responses of the three Eufy Cameras, however, show "extreme amounts of overshoot and undershoot" and "MTFs [] well above 2.0, indicating extreme amounts of edge enhancement." *Id.* ¶ 57. A side-by-side comparison of the MTFs show that the Reference Cameras "have superior MTFs with little overshoot and almost no undershoot." *Id.* ¶ 59. The Eufy Cameras' MTFs show large amounts of boost at medium frequencies, due undoubtedly to extreme edge enhancement processing in the camera's circuitry. *Id.* This produces large amounts of overshoot and undershoot for the Eufy Cameras, which adds artifacts to the images in regions of varying brightness. *Id.* "The MTFs confirm what is already apparent in the images of Figure 2: the resolution of the Eufy [C]ameras is markedly inferior to those of the [R]eference [C]ameras in a fair comparison." *Id.*

### 2.    Image comparisons demonstrate Defendant's claims are false.

Dr. Castleman performed further testing on the Eufy Cameras "by preparing another set of reference images for comparison." FAC ¶ 60. Each camera took pictures of the same text target which contained "printed text in sizes ranging from 0.20' to 1.44' in height." *Id.* ¶ 61.

The images "were made by cropping out a 24' x 36' test target from test camera images taken at 10 feet with dual 45-degree side lighting, and scaling the reference image to the same pixel density (i.e., number of pixels vertically) as the corresponding Eufy camera image." *Id.* ¶ 60. Then the "type size of the smallest readable line was selected from both images." *Id.* Dr. Castleman then calculated the Eufy Cameras' resolution by determining the "ratio of type size in the [Eufy Cameras'] image to the type size in the [Reference Camera] image, multiplied by 4,000 (4K resolution)." *Id.*

Dr. Castleman first tested the S300 eufyCam and the iPhone 12. *Id.* ¶ 62. A side-by-side comparison of the images are depicted in the FAC. *Id.* The S300 eufyCam image is "622 x 413 pixels, with a pixel density of 17.28 ppi." *Id.* Figure 6 demonstrates that "the readability of the image obtained by the iPhone 12 . . . goes down to approximately 0.32'." *Id.* ¶¶ 62–63. For the S300 eufyCam "readability goes down to only about 0.72'." *Id.* ¶ 63. This ratio is 44%, demonstrating "***that the true resolution of the EufyCam 3C—advertised as being 4K camera—is 0.44 x 4,032 = 1,774, or slightly less than 2K resolution.***" *Id.* (emphasis in original).

Dr. Castleman then tested the Eufy Video Doorbell E340 and iPhone 12. *Id.* ¶ 64. A side-by-side comparison of the images are depicted in the FAC. *Id.* The iPhone 12 image shows that "the 0.48 line is readable." *Id.* While in the Eufy Video Doorbell camera image, "even the 0.72' line is unreadable." *Id.* "At this low pixel density, artifacts introduced by the extreme edge enhancement processing distort the text badly" in the Eufy Video Doorbell image. *Id.* Dr. Castleman concluded that the Eufy Video Doorbell E340 had a resolution of "***720p or less***." *Id.* ¶ 65 (emphasis added).

## C.    Prior Testing Shows the Video Representations are False and Misleading.

Dr. Castleman's conclusions confirm prior testing by Plaintiffs' counsel. FAC ¶ 66. Plaintiffs' counsel tested the S300 eufyCam camera (advertised as "4K") and a True 4K Camera. *Id.* The S300 camera was set to optimal settings and a "video of a subject [was taken] at distances of ten feet and twenty feet." *Id.* The video subject was an individual holding a hardcover book with text in various font sizes. *Id.* A side-by-side comparison of the S300

camera and True 4K Camera is depicted in the FAC. *Id.*

At ten feet, a side-by-side comparison of the camera images shows that the S300 camera "has an image quality that is noticeably inferior to that of the True 4K camera." *Id.* ¶ 67. The "level of detail in the jacket stitching, houseplant leaf, jacket logo, and book cover" are noticeably poorer in the S300 image. *Id.* In contrast, the True 4K camera "is far sharper—the subject can be easily identified; the stitching in the jacket is much more distinct; the veins and definition in the houseplant leaf can be seen; the jacket logo appears distinctly rather than as a blue; and much more detail emerges in the book cover." *Id.*

At twenty feet, the differences are even more stark. *Id.* ¶ 68. The subject in the image produced by the S300 camera "has lost nearly all facial features" while the True 4K camera is clear enough to identify the subject. *Id.* ¶ 69. The book is also no longer legible on the image produced by the S300 camera. *Id.* The True 4K camera preserves other important details, including the stitching in the subject's jacket and the shape of the jacket logo. *Id.* Finally, the title of the book can be more readily discerned in the True 4K image. *Id.* Plaintiffs' counsel's prior testing demonstrates that the S300 camera's "4K" representations are false.

### D.   Plaintiffs' Rightly Expected Cameras that Produced Images with the Advertised Resolution and Corresponding Clarity.

Plaintiffs each purchased a Eufy Camera because they were "specifically looking for security cameras that ha[ve] the highest resolution possible." *Id.* ¶¶ 70, 75. Plaintiffs were seeking high resolution cameras because they "understood that subjects can be more easily identified in video recorded at higher resolutions." *Id.*

Plaintiff Tran purchased the Eufy security Video Doorbell Dual Camera. *Id.* ¶ 71. Prior to purchasing the camera, Plaintiff Tran read and relied on the entire Amazon listing, "including the various representations that the telephoto camera was '2K.'" *Id.* Based on the "2K" representations, Plaintiff Tran purchased the Video Doorbell Dual Camera. *Id.* ¶ 72. After installing the camera, Plaintiff Tran was disappointed in the poor image quality which he believed would have been "2K" as represented in the Amazon product page. *Id.* ¶ 73.

Plaintiff Shakya purchased the S300 eufyCam 3C. *Id.* ¶ 76. He read and relied on the S300 listing on the Eufy website including "various representations that the camera was '4K.'"

*Id.* Based on the "4K" representations, Plaintiff Shakya purchased the S300 eufyCam 3C. *Id.* ¶ 77. After installing the camera, Plaintiff Shakya was disappointed in the poor image quality which he believed would have been "4K" as represented on the Eufy website. *Id.* ¶ 78.

Plaintiffs paid a price premium for the Eufy Cameras. *Id.* ¶¶ 2, 74, 79, 116, 128, 135. Had Plaintiffs known before their initial purchase that the Eufy Cameras were not capable of providing video quality concomitant with the advertised "2K" and "4K" claims, they would not have purchased the cameras or, at a minimum, they would have paid less for it. *Id.* ¶¶ 74, 79.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Whether an advertisement is deceptive will often be a question of fact not appropriate for decision on a motion to dismiss." *Cooper v. Kimberly-Clark Corp.*, No. EDCV 23-1025 JGB (SPx), 2023 U.S. Dist. LEXIS 198121, at *8 (C.D. Cal. 2023). "This rule arises from the well-established principle that any weighing of evidence is inappropriate on a 12(b)(6) motion." *Shalikar v. Asahi Beer U.S.A.*, No. LA CV17-02713 JAK (JPRx), 2017 U.S. Dist. LEXIS 221388, at *18 (C.D. Cal. 2017) (citing *Jones v. Johnson*, 781 F.2d 769, 722 n.1 (9th Cir. 1986)). Indeed, "plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage . . . nor are they required to plead the 'probability' of their entitlement to relief." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018). Instead, a claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV.    ARGUMENT

### A.    The FAC Plausibly Alleges that Reasonable Consumers are Deceived and Misled by Defendant's "1080p" / "HD," "2K," and "4K" / "UHD" Representations.

Plaintiffs' fraud-based, California consumer protection claims "are governed by the 'reasonable consumer' standard," under which Plaintiffs must adequately allege "that a significant portion" of consumers acting reasonably under the circumstances "are likely to be deceived" or confused by the claim at issue." *McGinity v. P&G*, 69 F.4th 1093, 1097 (9th Cir. 2023); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (standard prohibits "any capacity, likelihood or tendency to deceive or confuse the public"); *Gunn v. FCA US, LLC*, No. 3:22-cv-02229-JD, 2023 U.S. Dist. LEXIS 147429, at *12 (N.D. Cal. Aug. 22, 2023) (Donato, J.) ("The fraudulent prong of plaintiffs' UCL claim is governed by the reasonable consumer test.") (internal quotations omitted)). California law has long specified that whether "a practice is deceptive" under the reasonable consumer standard is "a question of fact not appropriate for decision on" a motion to dismiss. *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 579 (2022); *accord Williams*, 552 F.3d at 938 (following "California courts" on this issue). "This is because what matters is how consumers actually behave—how they perceive advertising and how they make decisions. These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." *Salazar*, 83 Cal. App. 5th at 579 (quotes omitted). "Thus, whether a reasonable consumer is likely to be deceived as a matter of law may be decided only in rare situations", *id.*, when it is "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939.

Here, Plaintiffs allege that "[a]lthough Defendant[] prominently represents in [its] marketing and packaging that the Eufy Cameras have '1080p' / 'HD,' '2K,' or '4K' / 'UHD' video resolution, the image quality the cameras offer is not commensurate with those representations." FAC ¶ 1. Indeed, expert testing shows that Defendant's "4K" cameras provide images even lower quality than "2K" images. *Id.* ¶ 63; *see id.* ¶¶ 60–63. Likewise, expert testing shows that the "2K" security cameras produce images that look the same or

worse than 720p images. *Id.* ¶ 64; *see id.* ¶¶ 60–62, 64. Defendant's representations are uniform across all its Eufy-branded cameras and based on those representations, consumers reasonably believe that the Eufy Cameras will be able to provide both live and recorded video and image of a quality concomitant with that which Defendant has advertised and represented: "1080p" / "HD," "2K," and "4K" / "UHD." *Id.* ¶¶ 40–41.

*Sponchiado v. Apple Inc.*, is remarkably similar. No. 18-cv-07533-HSG, 2019 U.S. Dist. LEXIS 199522, at *15–16 (N.D. Cal. Nov. 18, 2019). There, the court denied Apple's motion to dismiss allegations that certain apple devices misrepresented the number of "true pixels" (i.e. distinct pixels) in an image. Apple argued—as does Defendant here—that the pixel count in its advertising included "subpixels" (i.e. indistinct pixels) and was therefore accurate. *Id.* The court rejected Apple's argument, reasoning that:

> Plaintiffs do not allege that Defendant misrepresented the number of subpixels. Rather, Plaintiffs' theory is that Defendant misrepresented the number of pixels because the disclosed count is not representative of "true pixels." The FAC alleges that the pixel count includes pixels which "share fractions of subpixels with adjacent pixels," meaning that they cannot be "true pixels." Because the pixel count is not an accurate count of the number of true pixels, Plaintiffs allege that Defendant's representation deceives reasonable consumers into believing that the screens "provide the same clarity as would RGB screens of the advertised resolution."

*Id.* (citations omitted). Because Apple "[did] not explain why Plaintiffs' understanding of the pixel count [was] unreasonable as a matter of law," the court denied Apple's motion to dismiss as to the pixel claims. *Id.* at *16. The same result should follow here. Defendant has failed to explain why, *as a matter of law*, it is unreasonable to understand Defendant's "1080p" / "HD," "2K," and "4K" / "UHD" representations to mean that the Eufy Cameras are capable of providing "image quality . . . commensurate with those representations." FAC ¶ 1 (emphasis added); *see id.* ¶¶ 5, 19, 28, 44, 46–47, 67, 73, 78.

At the heart of Defendant's motion is that Plaintiffs "do not allege that Defendant['s] products recorded videos with fewer pixels than advertised. . . . confirm[ed] . . . [by] the camera sensor, data sheets, and/or metadata of the resulting videos." ECF 43 at 1; *id.* at 6–7 ("Plaintiffs did not . . . rely on the clear and simple metadata . . . [and Dr. Castleman should] have performed a basic analysis of the camera [] to determine its capability—[he] could have

opened the camera, looked at the sensor chip, pulled up the publicly available data sheet about it, and confirmed the pixel resolution of which that sensor is capable."). Defendant seems to believe it is permitted to advertise the Eufy Cameras as "1080p" / "HD," "2K," and "4K" / "UHD," simply because the cameras have a corresponding pixel count. But Defendant's advertising does not disclose that the representations refer to mere pixel count. In fact, quite the opposite is true. Defendant touts that the so-called "4K" cameras' have "4K" resolution and that they are capable of "4K Detail Day and Night" and they can "[s]pot tiny features on any potential trespasser." FAC ¶ 23–28. Defendant further claims that its "2K" cameras have "ultra-clear 2K resolution" and allows purchasers to "see 2K Ultra-HD details." *Id.* ¶¶ 29–30; *see id.* ¶¶ 31–37. But, as expert testing shows, the cameras do not live up to these claims.

Moreover, Plaintiffs are not required to plead specific evidence. *Durnford*, 907 F.3d at 603 n.8. Plaintiffs are required only to plead "factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brickman v. Fitbit, Inc.*, No. 15-cv-02077-JD, 2016 U.S. Dist. LEXIS 150125, at *4 (N.D. Cal. July 15, 2016) (Donato, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And the Court "accepts all the material allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiffs." *Id.* (citing *Moyo v. Gomez*, 32 F.3d 1382 (9th Cir. 1994)). As described above, Plaintiffs allegations and testing allows the Court to reasonably infer that Defendant's "1080p" / "HD," "2K," and "4K" / "UHD" representations are false. Even so, it is well-established that "any weighing of evidence is inappropriate on a 12(b)(6) motion." *Shalikar*, 2017 U.S. Dist. LEXIS 221388, at *18 (citing *Jones v. Johnson*, 781 F.2d 769, 722 n.1 (9th Cir. 1986)). Defendant invites this Court to discard Plaintiffs' well-pled allegations, including Dr. Castleman's testing, and to speculate on factual matters, but the Court cannot do so. *Twombly*, 550 U.S. at 555.

Defendant argues that Plaintiffs do not make "any plausible factual allegations . . . about what they believe the actual video resolution (pixel count) of either of those products to be." ECF 43 at 7. But as the FAC makes clear, and Defendant acknowledges, the total number of pixels in an image does not itself determine the image quality. FAC ¶¶ 20–21; *see* ECF 43 at

9–10 ("the 'belief [] that more pixels means a higher-quality picture for viewers'—or, conversely, that lower picture quality means fewer pixels—'isn't necessarily true.' . . . "[o]ther factors [aside from resolution] are much more important in determining overall picture quality."). Moreover, Plaintiffs allege that Defendant prominently represents that the Eufy Cameras are capable of "1080p" / "HD," "2K," and "4K" / "UHD," but that "the image quality the cameras offer is not commensurate with those representations." FAC ¶ 1; *see id.* ¶¶ 5, 19, 28, 44, 46–47, 67, 73, 78. Further, Defendant cannot overcome the fact that Plaintiffs were disappointed with the images that the cameras produced because Plaintiffs believed "that the image quality would have been substantially clearer than the image quality [they] got from the camera." *Id.* ¶¶ 73, 78. That is enough. *Sponchiado*, 2019 U.S. Dist. LEXIS 199522, at *17 ("Whether Plaintiffs' theory of the pixel count is correct (i.e., whether the count resolution includes 'false pixels') is an issue properly addressed at the summary judgment stage.").

Defendant asserts that "one would have expected Plaintiffs to allege that the video recorded by Defendant['s] cameras, in fact, contained *X* pixels, which is less than the *Y* pixels that were advertised." ECF 43 at 6. Indeed, Plaintiffs did just that. Plaintiff Shakya purchased the S300 eufyCam (with "4K" representations) and Plaintiff Tran purchased the Video Doorbell Dual Camera (with "2K" representations). FAC ¶¶ 71–73, 76–78. Dr. Castleman's testing determined that the S300 eufyCam's actual resolution is approximately 1,774, which is less than the "4K" advertised. *Id.* ¶¶ 62–63, 65. Dr. Castleman also determined that the actual resolution on the Video Doorbell was below 720p, which is less than the "2K" advertised. *Id.* ¶¶ 64–65. Plaintiffs' counsel's prior testing and Dr. Castleman's MTF testing confirms that the Eufy Cameras are inferior to true 4K and 2K cameras. *See id.* ¶¶ 54–59. Plaintiffs allege that all Eufy Cameras make similar representations that are similarly false and deceptive. *Id.* ¶¶ 40–41. As such, Plaintiffs have adequately alleged, with expert evidence, that Defendant's "1080p" / "HD," "2K," and "4K" / "UHD" representations are false or deceptive.

Defendant's reliance on *Estell v. McHugh*, No. 15-cv-04898-MEJ, 2017 U.S. Dist. LEXIS 48410, at *1 (N.D. Cal. Mar. 30, 2017) is misplaced. ECF 43 at 7. In *Estell*, the plaintiff sued the government alleging discrimination based on her disability and a failure to

accommodate. *Estell*, 2017 U.S. Dist. LEXIS 48410, at *1. The court previously dismissed the failure to accommodate claim because the plaintiff failed to allege when she made the accommodation request, to whom she made it, and why the request was necessary. *Id.* at *26. The court dismissed the failure to accommodate claim again, this time with prejudice. The court held that plaintiff failed to meet her pleading burden because she failed to address the deficiencies the court noted in the two prior orders dismissing the claim. *Id.* The court rejected plaintiff's argument that she could not "estimate dates" or "state everything with precision" without discovery because these allegations form the basis of her claims. *Id.* at *30. But here, Plaintiffs have gone above and beyond what is required. Plaintiffs have alleged what the representations are, why consumers value them, and extreme detail on why they are false. *See* FAC ¶¶ 16–69.

### B. Dr. Castleman's Testing Confirms that the Eufy Cameras Do Not Provide Image Quality Concomitant with "1080p" / "HD," "2K," and "4K" / "UHD."

Defendant spends much of its brief attacking Dr. Castleman's testing and analysis, asking the Court to either weigh the credibility of the tests or completely disregard them. The Court may not do so, [a]t this stage of the proceedings, the Court takes the[] allegations as true." *Milan v. Clif Bar & Co.*, No. 18-cv-02354-JD, 2019 U.S. Dist. LEXIS 141403, at *7 (N.D. Cal. Aug. 20, 2019) (Donato, J.) (citing *Williams*, 552 F.3d at 940). Dr. Castleman's testing confirmed that the Eufy Cameras' image quality are clearly inferior to those of true "4K" and "2K" cameras. FAC ¶¶ 46–65. Multiple side-by-side image comparisons of the Eufy Cameras and Reference Cameras show that the Reference Cameras' images are much clearer despite the Eufy Cameras and Reference Cameras being set to the same resolution. *Id.* ¶¶ 46, 52–53, 62–64, 66, 68. The MTF quantitatively confirmed the inferior image quality of the Eufy Cameras. *Id.* ¶¶ 54–59. Most importantly, Dr. Castleman's testing confirmed that the true resolution of the S300 eufyCam, advertised as being a 4K camera is "less than 2K resolution" and the true resolution of the Video Doorbell is less than 720p. *Id.* ¶¶ 63–65.

Defendant argues that Dr. Castleman "has merely opined that he believes Defendant['s] cameras to take images of poor quality in certain respects, which can have myriad causes from

lenses to compression algorithms to color composition—not that any of the advertising statements at issue here was false." ECF 43 at 8; *see id.* at 9–10 (speculating, outside the bounds of the complaint, that the Eufy Cameras photos are blurry because the camera was moving, or there were issues with camera lens or signal processing).[1] However, in conducting his tests, Dr. Castleman "excluded or minimized other image quality parameters, such as image noise, color, and lens distortion." FAC ¶ 47. Defendant's speculation about the methodology cannot overcome Plaintiffs' allegations. *See Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 U.S. Dist. LEXIS 149153, at *24 n.3 (N.D. Cal. 2021) ("Chobani argues that the survey's ostensibly flawed methodology (e.g., its leading questions, poor presentation of answer choices, and lack of control group) should lead the Court to discount it. . . . However, evaluating the quality of a plaintiff's evidence is inappropriate at this stage of the litigation.").

Defendant again argues that there is a "key disconnect between the subject of Plaintiffs' factual allegations (the cameras' 'optical resolution') and the subject of the challenged advertising statements (the cameras' 'video resolution')." ECF 43 at 9. However, as explained above (and Defendant acknowledges), several factors affect resolution. Dr. Castleman's testing is able to capture each of those factors and he ensured to "exclude[] or minimize[] other image quality parameters." FAC ¶ 47. Moreover, Plaintiffs allege that Defendant makes various representations relating to overall video and image quality and Dr. Castleman tested the veracity of those claims. *See* FAC ¶¶ 23–39 ("4K Detail Day and Night," "Spot tiny features on any potential trespasser," "4K" resolution, "Capture every event that occurs around your home in ultra-clear 2K resolution," "2K Detail Day and Night," "see 2K Ultra-HD details," "crisp 2K high-definition video," and "crystal clear 1080p HD."). Unsurprisingly, they did not withstand scrutiny.

---

[1] Defendant also argues that on "Plaintiffs' own theory, any supposed inferiority in the eufy cameras' optical resolution is due to image processing algorithms—and not due to pixel count/video resolution." ECF 43 at 10. Even if the inferiority were truly caused by Defendant's processing algorithms, Defendant's "1080p" / "HD," "2K," and "4K" / "UHD" claims are still false because the Eufy Cameras are unable to provide "image quality" commensurate with those representations. FAC ¶¶ 1, 5, 19, 28, 44, 46–47, 67, 73, 78.

Finally, Defendant argues that the Court should disregard Plaintiffs' counsel's testing because it "runs afoul of the source that [Plaintiffs] rely on, which admonishes that one cannot simply assume that a 'high-quality picture for viewers' was necessarily the result of 'more pixels,' or that a lower quality picture means fewer pixels." ECF 43 at 11. However, the article explains that video quality is influenced by various factors beyond just pixel count, such as the efficiency of the video's compression and the specific context in which the video is viewed. This nuanced understanding suggests that assessing visual quality is a complex process that cannot be reduced to a simple correlation between pixel quantity and image quality. Therefore, disregarding Plaintiffs' testing on the basis of an oversimplified assumption undermines the multifaceted nature of video quality assessment, which should consider a broader range of technical and perceptual factors, and ignores the pleading standard on this motion.

### C.    Plaintiffs Have Standing To Challenge The Unpurchased Products.

A plaintiff has standing to pursue class claims relating to products the plaintiff did not purchase if the complaint alleges facts to show that the purchased and non-purchased products share "substantial" similarities. *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1141–42 (N.D. Cal. 2013). "[C]ourts in the Ninth Circuit caution against too rigid an application of the standing requirements, warning '[courts] must examine the questions realistically: [they] must reject the temptation to parse too finely, and consider instead the context of the inquiry.'" *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413-TSH, 2021 U.S. Dist. LEXIS 86203, at *15–16 (N.D. Cal. May 5, 2021) (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001)).

"The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Courts have previously found that diverse products bearing similar labels may be considered "substantially similar." *Maisel*, 2021 U.S. Dist. LEXIS 86203, at *12 (collecting cases); *see also Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654, at

*7 (N.D. Cal. Jan. 5, 2010) (allowing plaintiff to sue for purchased product (Shout) and unpurchased product (Windex) because the challenged representation on the labels was the same on both products, and recognizing that "there is no bright line rule that different product lines cannot be covered by a single class.") If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).

Contrary to Defendant's assertions, Plaintiffs include a non-exhaustive list of the Eufy Cameras which contain the challenged representations. FAC ¶ 22. The FAC gives representative examples of the "1080p" / "HD," "2K," and "4K" / "UHD" representations. *Id.* ¶¶ 23–39. Plaintiffs allege that Defendant has "advertised, marketed, and sold a variety of other Eufy-brand cameras" which falsely claim they are "capable of providing, variously, '1080p' / 'HD,' '2K,' and '4K' / 'UHD' video resolution." *Id.* ¶ 40. Thus, "[b]ased on Defendants representations with respect to each and every Eufy Camera, consumers reasonably believe that when they use a Eufy Camera, they will be able to view both live and recorded video of a quality concomitant with that which Defendants have advertised and represented: '1080p' / 'HD,' '2K,' or '4K' / 'UHD.'" *Id.* ¶ 42.

Accordingly, Plaintiffs have sufficiently alleged that the unpurchased products are substantially similar to the purchased products. At most, "[t]he differences between the Products raised by Defendant[] may impact class certification or summary judgment, but they are not enough to defeat substantial similarity for the purposes of standing." *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 U.S. Dist. LEXIS 150394, at *8 (N.D. Cal. Aug. 6, 2021).

### D.    The Court Should Grant Leave to Amend.

Plaintiffs respectfully request that the Court grant leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

**V.   CONCLUSION**

   For the foregoing reasons, Plaintiffs respectfully request that this Court deny

Defendant's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend.

///

///

///

///

   Dated: February 9, 2024

                                        **GUTRIDE SAFIER LLP**

                                        *s/ Seth A. Safier*
                                        Seth A. Safier (State Bar No. 197427)
                                          seth@gutridesafier.com
                                        Todd Kennedy (State Bar No. 250267)
                                          todd@gutridesafier.com
                                        100 Pine Street, Suite 1250
                                        San Francisco, CA 94111
                                        Telephone: (415) 639-9090
                                        Facsimile:  (415) 449-6469

                                        *Attorneys for Plaintiffs*