1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JYOTINDRA SHAKYA and THAN TRAN, on behalf of themselves, the general public, and those similarly situated, | Case No. 3:23-cv-03925-JD |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT POWER MOBILE LIFE, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| v. | |
| FANTASIA TRADING LLC and POWER MOBILE LIFE, LLC, | Hearing Date:       March 21, 2024<br>Hearing Time:       10:00 a.m. |
| Defendants. | Hon. James Donato |

**Table of Contents**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

    A.    Defendants Falsely and Deceptively Advertise Eufy Cameras as providing "1080p" / "HD," "2K," or "4K" / "UHD." ..................................... 2

    B.    Expert Testing Proves that the Eufy 4K Cameras Produce 2K Images, and that the Eufy 2K Cameras Produce 720p Images. ............................... 2

    C.    Prior Testing Confirms the Representations are False and Misleading. ........ 3

    D.    Plaintiffs' Rightly Expected Cameras that Produced Images with the Advertised Resolution and Corresponding Clarity. .................................. 4

III.  LEGAL STANDARD ......................................................................................... 5

IV.   ARGUMENT ...................................................................................................... 6

    A.    The Court Has Specific Jurisdiction over Defendant Power Mobile. ............ 6

    B.    The FAC Plausibly Alleges that Reasonable Consumers are Deceived and Misled by Defendant Power Mobile's "1080p" / "HD," "2K," and "4K" / "UHD" Representations. ................................................................... 12

    C.    Dr. Castleman's Testing Confirms that the Eufy Cameras Do Not Provide Image Quality Concomitant with "1080p" / "HD," "2K," and "4K" / "UHD." ........................................................................................ 17

    D.    Plaintiffs Have Standing To Challenge The Unpurchased Products. ........... 19

    E.    The Court Should Grant Leave to Amend. .................................................. 20

V.    CONCLUSION ................................................................................................. 21

1

## Table of Authorities

2

**Cases**

3

*Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015)............................10

4

*Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012)............................................20

5

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................................................6, 15

6

*Austin v. Budget Rental Car, Inc.*, No. 20-cv-06229-AGT, 2020 U.S. Dist. LEXIS 250403 (N.D.
    Cal. Sep. 17, 2020)............................................................................................................11

7

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990)............................................21

8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................5

9

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ................................................................5

10

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010).........................9

11

*Brickman v. Fitbit, Inc.*, No. 15-cv-02077-JD, 2016 U.S. Dist. LEXIS 150125 (N.D. Cal. July
    15, 2016)..........................................................................................................................15

12

*Cooper v. Kimberly-Clark Corp.*, No. EDCV 23-1025 JGB (SPx), 2023 U.S. Dist. LEXIS
    198121 (C.D. Cal. 2023).....................................................................................................5

13

*Estell v. McHugh*, No. 15-cv-04898-MEJ, 2017 U.S. Dist. LEXIS 48410 (N.D. Cal. Mar. 30,
    2017) ...............................................................................................................................17

14

*Gunn v. FCA US, LLC*, No. 3:22-cv-02229-JD, 2023 U.S. Dist. LEXIS 147429 (N.D. Cal. Aug.
    22, 2023)..........................................................................................................................13

15

*Heller v. NBCUniversal, Inc.*, 2016 U.S. Dist. LEXIS 195031 (C.D. Cal. Mar. 30, 2016) .......11

16

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) .....................................7

17

*Kellman v. WFM Private Label, L.P.*, No. 17-cv-06584-LB, 2019 U.S. Dist. LEXIS 55979
    (N.D. Cal. Mar. 29, 2019) ...................................................................................................6

18

*Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654 (N.D.
    Cal. Jan. 5, 2010) .............................................................................................................20

19

*LNS Enters. Ltd. Liab. Co. v. Cont'l Motors, Inc.*, 22 F.4th 852 (9th Cir. 2022).......................8

20

*Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413-TSH, 2021 U.S. Dist. LEXIS 86203
    (N.D. Cal. May 5, 2021) ...................................................................................................20

21

*Marix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011)..........................5

22

*McDonald v. Aps*, 385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......................................................5

23

*McGinity v. P&G*, 69 F.4th 1093 (9th Cir. 2023)...................................................................13

24

*Milan v. Clif Bar & Co.*, No. 18-cv-02354-JD, 2019 U.S. Dist. LEXIS 141403 (N.D. Cal. Aug.
    20, 2019) .........................................................................................................................17

25

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ............................20

26

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW,
    2021 U.S. Dist. LEXIS 150394 (N.D. Cal. Aug. 6, 2021)...................................................21

27

*Moyo v. Gomez*, 32 F.3d 1382 (9th Cir. 1994) .......................................................................15

28

*Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886 (N.D. Cal. Oct. 28, 2016) ...................10

*Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 U.S. Dist. LEXIS 149153 (N.D. Cal. 2021) ................................................................................................................................18

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ...........................................6

*Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212 (N.D. Cal. 2020)..............8

*Rosenwald v. Kimberly Clark Corp.*, No. 3:22-cv-04993-LB, 2023 U.S. Dist. LEXIS 141968 (N.D. Cal. Aug. 14, 2023)........................................................................................................7

*Salazar v. Target Corp.*, 83 Cal. App. 5th 571 (2022) ............................................................13

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).................................5

*Shalikar v. Asahi Beer U.S.A.*, No. LA CV17-02713 JAK (JPRx), 2017 U.S. Dist. LEXIS 221388 (C.D. Cal. 2017) ........................................................................................................5

*Sponchiado v. Apple Inc.*, No. 18-cv-07533-HSG, 2019 U.S. Dist. LEXIS 199522 (N.D. Cal. Nov. 18, 2019) ................................................................................................................14, 16

*Thomas v. Cricket Wireless LLC*, No. C 19-07270 WHA, 2020 U.S. Dist. LEXIS 56272 (N.D. Cal. Mar. 31, 2020) ..............................................................................................................9

*Tivoli LLC v. Targetti Sankey S.P.A.*, 2015 U.S. Dist. LEXIS 189660 (C.D. Cal. Feb. 3, 2015)10

*Utterkar v. Ebix, Inc.*, No. 14-CV-02250-LHK, 2015 U.S. Dist. LEXIS 113361 (N.D. Cal. Aug. 25, 2015) ..............................................................................................................................9

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).............................................13, 17

*Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013)........................................19

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) 7

*Zithromia Ltd. v. Gazeus Negocios De Internet SA*, No. 3:17-cv-06475-JD, 2018 U.S. Dist. LEXIS 205704 (N.D. Cal. Dec. 5, 2018) ................................................................................6

**Statutes**

Cal. Code Civ. Proc. § 410.10 .................................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................................5

1

**I.     INTRODUCTION**

2

In a world where repeating the same action and expecting a different outcome is often

3

seen as the height of folly, Defendant Power Mobile Life, LLC ("Power Mobile") has

4

presented a nearly identical brief to that of Defendant Fantasia Trading LLC (collectively,

5

"Defendants"), which strikingly mirrors the core issue of their disputed security cameras'

6

performance—promising clarity and delivering a blur. This irony is not lost on Plaintiffs as

7

they once again address the significant gap between the advertised and actual quality of the

8

Eufy Cameras, a disparity that has led consumers to a state of disillusionment and

9

vulnerability.

10

Defendant Power Mobile contends that the Court must grant its motion to dismiss for

11

several reasons: (1) Plaintiffs fail to properly allege personal jurisdiction over it; (2) Plaintiffs

12

fail to plead the pixel count; (3) Plaintiffs fail to properly test the Eufy Cameras; and

13

(4) Plaintiffs lack standing to challenge claims regarding Eufy Cameras they did not purchase.

14

Each argument must be rejected.

15

Defendant Power Mobile argues that this Court does not have personal jurisdiction over

16

it because Plaintiffs did not specifically single out Defendant Power Mobile throughout their

17

complaint. However, collectively referring to Defendants is entirely appropriate when the

18

defendant is put on notice of the claims against them, as has been done in this case. If

19

Defendant Power Mobile wished to properly contest personal jurisdiction, it could have

20

submitted an affidavit rebutting Plaintiffs allegations that it advertises, markets, and sells the

21

Eufy branded security cameras. It failed to do so and the Court cannot speculate on factual

22

matters at this stage.

23

Defendant Power Mobile raises many of the same arguments raised by Defendant

24

Fantasia Trading LLC, which are equally unconvincing. First, Defendant Power Mobile's

25

video and image representations go far beyond mere pixel count and relates to overall image

26

and video quality.  Second, Dr. Castleman's expert testing and analysis of the Eufy Cameras

27

were conducted appropriately, and any debate over the testing methodology is inappropriate at

28

PLAINTIFFS' OPPOSITION TO DEFENDANT POWER MOBILE'S MOTION TO DISMISS –
CASE NO. 3:23-CV-03925-JD

1  this juncture. Finally, Plaintiffs have standing to challenge the unpurchased products because

2  those Eufy Cameras are substantially similar to the Eufy Cameras Plaintiffs purchased.

3  **II.    BACKGROUND**

4  **A.    Defendants Falsely and Deceptively Advertise Eufy Cameras as providing "1080p" / "HD," "2K," or "4K" / "UHD."**

5  

6  Plaintiffs bring this complaint "against Fantasia Trading LLC, Anker Innovations

7  Technology Co., Ltd., and Power Mobile Life, LLC (collectively, 'Defendants' or 'Anker')."

8  ECF 30 (First Amended Complaint, "FAC") at 1.[1] This case concerns Defendants' false and

9  deceptive advertising and sale of security cameras which they represent provide "1080p" /

10 "HD," "2K," or "4K" / "UHD." *Id.* ¶ 1; *see id.* ¶ 22. Video resolution is a critical factor that

11 consumers consider in determining what security camera to purchase. *Id.* ¶ 2. Consumers

12 desire higher resolution cameras because they allow users to more accurately identify faces,

13 hair, clothing, tattoos, and other indicia, at great distances and with greater clarity. *Id.* ¶¶ 2, 16.

14 Plaintiffs, thus, allege that Defendants are able to charge a price premium based on the false

15 and deceptive "1080p" / "HD," "2K," or "4K" / "UHD" representations. *Id.* ¶¶ 2, 74, 79.

16 Defendants advertise and sell security cameras with materially identical video and

17 image quality claims such as: "4K Detail Day and Night," "UHD," "Spot tiny features on any

18 potential trespasser," "4K" resolution, "Capture every event that occurs around your home in

19 ultra-clear 2K resolution," "2K Detail Day and Night," "see 2K Ultra-HD details," "crisp 2K

20 high-definition video," and "crystal clear 1080p HD." *See* FAC ¶¶ 23–39. However, expert

21 testing demonstrates that these claims failed to hold up under scrutiny.[2]

22 **B.    Expert Testing Proves that the Eufy 4K Cameras Produce 2K Images, and that the Eufy 2K Cameras Produce 720p Images.**

23 Dr. Castleman tested the S300 EufyCam (advertised as 4K) and the E340 Video

24 Doorbell camera (advertised as 2K) (the "Eufy Cameras"). *Id.* ¶ 46. He set the Eufy Cameras

25 to maximum resolution and compared them to True 4K and 2K cameras. *Id.* ¶¶ 46; *see id.* ¶¶

26 

27 [1] Plaintiffs voluntarily dismissed Defendant Anker Innovations Technology Co., Ltd. on January 30, 2024. ECF 44.

28 [2] To avoid repetition, Plaintiffs' discussion of the facts here is not as fulsome as in their opposition to Defendant Fantasia Trading LLC's motion to dismiss. ECF 47 at 2–8.

52–53. Dr. Castleman "focused on resolution, and excluded or minimized other image quality parameters, such as image noise, color, and lens distortion." *Id.* ¶ 47.

Dr. Castleman generated "the Modulation Transfer Function ('MTF') for each camera" which "is commonly used to illustrate the resolution of an imaging system." FAC ¶ 48. The MTFs confirmed that the True 4K and 2K cameras perform "favorably to the MTF of the ideal edge [shown] in Figure 1." *Id.* ¶ 48; *see id.* ¶ 49 (image representing "[a]n ideal edge, its profile, and its MTF"). While the edge responses of the Eufy Cameras show "extreme amounts of overshoot and undershoot" and "MTFs [] well above 2.0, indicating extreme amounts of edge enhancement." *Id.* ¶ 57. A side-by-side comparison of the MTFs show that the True 4K and 2K cameras "have superior MTFs with little overshoot and almost no undershoot." *Id.* ¶ 59. The MTFs confirmed what is apparent from side-by-side comparisons of the images in Figure 2: "the resolution of the Eufy [C]ameras is markedly inferior to those of the [True 4K and 2K cameras]." *Id.*

Dr. Castleman further tested the Eufy Cameras "by preparing another set of reference images for comparison." *Id.* ¶ 60. Dr. Castleman calculated the resolution by determining the "ratio of type size in the [Eufy Cameras'] image to the type size in the [True 4K and 2K cameras] image, multiplied by 4,000 (4K resolution)." *Id.* Dr. Castleman's testing determined "*that the true resolution of the EufyCam 3C—advertised as being 4K camera—is 0.44 x 4,032 = 1,774, or slightly less than 2K resolution.*" *Id.* (emphasis in original). Dr. Castleman also determined that the Eufy Video Doorbell E340—advertised as being 2K camera—has a resolution of "***720p or less.***" *Id.* ¶ 65 (emphasis added).

### C.    Prior Testing Confirms the Representations are False and Misleading.

Dr. Castleman's conclusions confirm prior testing by Plaintiffs' counsel. FAC ¶ 66. Plaintiffs' counsel tested the S300 eufyCam camera (advertised as "4K") and a True 4K Camera by taking images at ten feet and twenty feet. *Id.* At ten feet, a side-by-side comparison of the images demonstrates that the S300 camera "has an image quality that is noticeably inferior to that of the True 4K camera." *Id.* ¶ 67. The level of detail in the jacket stitching,

houseplant leaf, jacket logo, and book cover" are noticeably poorer in the S300 image, while in the True 4K camera image "the stitching in the jacket is much more distinct; the veins and definition in the houseplant leaf can be seen; the jacket logo appears distinctly rather than as a blue; and much more detail emerges in the book cover." *Id.* At twenty feet, the differences are even more stark as the subject in the image produced by the S300 camera "has lost nearly all facial features" while the True 4K camera is clear enough to identify the subject. *Id.* ¶¶ 68–69. The book is also no longer legible on the image produced by the S300 camera. *Id.* The True 4K camera preserves other important details, including the stitching in the subject's jacket, the shape of the jacket logo, and the title of the book can be more easily discerned in the 4K image. *Id.* Plaintiffs' counsel's prior testing demonstrates that the S300 camera's "4K" representations are false.

**D.    Plaintiffs' Rightly Expected Cameras that Produced Images with the Advertised Resolution and Corresponding Clarity.**

Plaintiffs each purchased a Eufy Camera because they were "specifically looking for security cameras that ha[ve] the highest resolution possible." FAC ¶¶ 70, 75. Plaintiffs were seeking high resolution cameras because they "understood that subjects can be more easily identified in video recorded at higher resolutions." *Id.*

Plaintiff Tran purchased the Eufy security Video Doorbell Dual Camera. *Id.* ¶ 71. Prior to purchasing the camera, Plaintiff Tran read and relied on the entire Amazon listing, "including the various representations that the telephoto camera was '2K.'" *Id.* Based on the "2K" representations, Plaintiff Tran purchased the Video Doorbell Dual Camera. *Id.* ¶ 72. After installing the camera, Plaintiff Tran was disappointed in the poor image quality which he believed would have been "2K" as represented in the Amazon product page. *Id.* ¶ 73.

Plaintiff Shakya purchased the S300 eufyCam 3C. *Id.* ¶ 76. He read and relied on the S300 listing on the Eufy website including "various representations that the camera was '4K.'" *Id.* Based on the "4K" representations, Plaintiff Shakya purchased the S300 eufyCam 3C. *Id.* ¶ 77. After installing the camera, Plaintiff Shakya was disappointed in the poor image quality which he believed would have been "4K" as represented on the Eufy website. *Id.* ¶ 78.

Plaintiffs paid a price premium for the Eufy Cameras. *Id.* ¶¶ 2, 74, 79, 116, 128, 135. Had Plaintiffs known before their initial purchase that the Eufy Cameras were not capable of providing video quality concomitant with the advertised "2K" and "4K" claims, they would not have purchased the cameras or, at a minimum, they would have paid less. *Id.* ¶¶ 74, 79.

## III.    LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction, "plaintiffs bear 'the burden of establishing that jurisdiction is proper.'" *McDonald v. Aps*, 385 F. Supp. 3d 1022, 1030–31 (N.D. Cal. 2019) (Donato, J.) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)). "Where, as here, the Court has not required evidentiary hearing, it is enough for the plaintiff to make a prima facie showing of personal jurisdiction." *Id.* A defendant may rebut "the truth of allegations in a pleading" with an affidavit. *Id.* (quoting *Marix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)). However, "[u]ncontroverted allegations in the complaint must be taken as true.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Whether an advertisement is deceptive will often be a question of fact not appropriate for decision on a motion to dismiss." *Cooper v. Kimberly-Clark Corp.*, No. EDCV 23-1025 JGB (SPx), 2023 U.S. Dist. LEXIS 198121, at *8 (C.D. Cal. 2023). "This rule arises from the well-established principle that any weighing of evidence is inappropriate on a 12(b)(6) motion." *Shalikar v. Asahi Beer U.S.A.*, No. LA CV17-02713 JAK (JPRx), 2017 U.S. Dist. LEXIS 221388, at *18 (C.D. Cal. 2017) (citing *Jones v. Johnson*, 781 F.2d 769, 722 n.1 (9th Cir. 1986). Indeed, "plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage . . . nor are they required to plead the 'probability' of their entitlement to relief." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018). Instead, a claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV.    ARGUMENT

### A.    The Court Has Specific Jurisdiction over Defendant Power Mobile.

Where, as here, no federal statute authorizes personal jurisdiction, the Court applies the law of the state in which it sits. *Zithromia Ltd. v. Gazeus Negocios De Internet SA*, No. 3:17-cv-06475-JD, 2018 U.S. Dist. LEXIS 205704, at *4 (N.D. Cal. Dec. 5, 2018) (Donato, J.) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). California's long-arm statute, Cal. Code Civ. Proc. § 410.10, is coextensive with the limits of the Constitution's due process clause, so the Court need only ensure that that clause permits its jurisdiction. *Id.*

To be subject to specific personal jurisdiction:

(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* "Courts have held that product false-labeling and breach-of-warranty claims sound primarily in tort and thus apply a purposeful-direction analysis." *Kellman v. WFM Private Label, L.P.*, No. 17-cv-06584-LB, 2019 U.S. Dist. LEXIS 55979, at *13 (N.D. Cal. Mar. 29, 2019). To establish purposeful-direction under the first prong, "'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Zithromia*, 2018 U.S. Dist. LEXIS 205704, at *4 (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme et*

*L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). After a plaintiff establishes the first two prongs under the specific personal jurisdiction test, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable. *Rosenwald v. Kimberly Clark Corp.*, No. 3:22-cv-04993-LB, 2023 U.S. Dist. LEXIS 141968, at *16 (N.D. Cal. Aug. 14, 2023).

In this case, Defendant Power Mobile committed an intentional act by, among other things, "prominently represent[ing] in [its] marketing and packaging that the Eufy Cameras have '1080p' / 'HD,' '2K,' or '4K' / 'UHD' video resolution, [but] the image quality the cameras offer is not commensurate with those representations." FAC ¶ 1; *see id.* ¶¶ 4–5, 12, 22–43, 90, 92–95, 100–105, 107, 109, 111, 113–119, 121–130, 132, 134–136; *see Kellman*, 2019 U.S. Dist. LEXIS 55979, at *16 ("[Defendant] also presumptively made the decision to label them and market them as 'hypoallergenic' despite that label allegedly being false and misleading. These are intentional acts.").

Defendant Power Mobile expressly aimed its activities to California because, among other things, it "deliberately advertises, markets and sells the Eufy Cameras in a way that deceives consumers into falsely believing that they have a higher resolution than that of which Eufy Cameras are capable." FAC ¶¶ 2–3. Defendant Power Mobile made the false representations in "all of the[] significant marketing: on the Eufy Cameras product pages (available at https://us.eufy.com/); on their Amazon.com product pages; on the pages and in the advertising material of other third-party retailers; in the Eufy Cameras product specifications; and on the packaging of the Eufy Cameras themselves." *Id.* ¶¶ 2, 4. Defendant Power Mobile's intentional distribution of the Eufy Cameras through its website to California consumers, like Plaintiff Shakya, demonstrates that it expressly aimed its activities at the forum. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1093 (9th Cir. 2023) ("We now hold that if a

defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum."); *see* FAC ¶ 12 ("Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendants have engaged, and continues to engage, in substantial and continuous business practices in the State of California."); *see id.* ¶¶ 76–77 (describing Plaintiff Shakya's purchase on the Eufy website). Moreover, Defendant Power Mobile's advertising and sale of the Eufy Cameras through third-party retailers in California is enough to confer specific jurisdiction. *Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1214 (N.D. Cal. 2020) ("counsel for the defendant asserted that the Court lacks specific jurisdiction to adjudicate [plaintiff's] own claims, even though [plaintiff] bought the flea medicine from a California Petco and used it on her dog in California. That is clearly wrong."); *see LNS Enters. Ltd. Liab. Co. v. Cont'l Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022) ("additional examples of 'something more' . . . include[s] 'designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.'").

Defendant Power Mobile invariably knew that consumers in California would be harmed by its false and deceptive representations because it was aware California consumers would purchase security cameras which purport to be high quality. FAC ¶¶ 2, 4; *Kellman*, 2019 U.S. Dist. LEXIS 55979, at *18 ("[defendant] knew that harm (if any) from Whole Foods's private-label products, which are sold in California, is likely to be suffered in the forum state."). And finally, Plaintiffs' claims "arises out of" and "relates" to Defendant Power

Mobile's advertising and sale of the Eufy Cameras. *Id.* at *18–19 ("To determine whether a plaintiff's claim arises out of the defendant's forum-related activities, courts use a 'but for' causation analysis. . . . [defendant's] forum-related activities — namely, its presumptive decision to offer for sale the products at issue in this case and to label and market them as 'hypoallergenic,' knowing that they would be sold at Whole Foods stores to customers in California like [plaintiff] — are the but-for cause of [plaintiff's] claims."). As such, it is reasonable for the Court to assume specific jurisdiction over Defendant Power Mobile.

As an initial matter, Defendant Power Mobile asks this Court to speculate on jurisdictional issues when it was in the best position to refute Plaintiffs' allegations that it is responsible for the "false and deceptive labeling, advertising, and sale of [its] Eufy brand security cameras" with an affidavit or declaration. FAC ¶ 1. Or it could have refuted that "Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California." *Id.* ¶ 12. It did not do so and absent any evidence, the Court must accept Plaintiffs' uncontroverted allegations as true. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) ("uncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor."); *see Thomas v. Cricket Wireless LLC*, No. C 19-07270 WHA, 2020 U.S. Dist. LEXIS 56272, at *18 (N.D. Cal. Mar. 31, 2020) ("Cricket's declarations do not contradict [the personal jurisdiction] allegation, nor does Cricket elsewhere deny its veracity. Instead, Cricket chose only to object to its form. As discussed, if evidence existed to the contrary, Cricket remained in the best position to disclose it. It chose not to. At this stage, this order will accept the allegation as true (subject to proof at trial)."); *Utterkar v. Ebix, Inc.*, No. 14-CV-02250-LHK, 2015 U.S. Dist. LEXIS 113361, at *13–14 (N.D. Cal. Aug. 25, 2015) (accepting

allegations of personal jurisdiction as true because defendant failed to submit any contradictory affidavit).

Defendant Power Mobile argues that "the FAC does not identify any relevant act undertaken by Powe [sic] Mobile individually at all—much less one purposefully directed at California that gave rise to Plaintiffs' claims." ECF 49 at 7. But the FAC does just that. Plaintiffs identify that they bring this action on behalf of themselves and all other similarly situated against "Fantasia Trading LLC . . . and Power Mobile Life, LLC (collectively, 'Defendants' or 'Anker')." FAC at p. 1. Plaintiffs have a litany of allegations against both Defendant Fantasia Trading and Defendant Power Mobile. *See id.* ¶¶ 1, 4–5, 12, 22–43, 90, 92–95, 100–105, 107, 109, 111, 113–119, 121–130, 132, 134–136. Notably, Plaintiffs allege, and Defendant Power Mobile does not dispute, that Defendants are both responsible and liable for the false and deceptive labeling, advertising, marketing, and sale of their Eufy brand security cameras and that "Defendants regularly conduct and/or solicit business in . . . the State of California." *Id.* ¶¶ 1, 12.

Defendant Power Mobile claims this "is plainly insufficient. Rule 8 requires a plaintiff to 'identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." ECF 49 at 8 (quoting *Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015)). Defendant Power Mobile misstates the law. "Group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v. Targetti Sankey S.P.A.*, 2015 U.S. Dist. LEXIS 189660, at *9 (C.D. Cal. Feb. 3, 2015). Indeed, when defendants are related entities who acted in concert "it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant." *Id.* at *11; *see also Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886, *9 (N.D. Cal. Oct. 28, 2016) ("because the Defendants all

share a parent-subsidiary relationship with The Gap Inc. as the parent company and because all the Defendants are represented by the same counsel, frustration of notice of the claims to each defendant is unlikely."); *Celgard, LLC v. Shenzhen Senior Tech. Material Co. Ltd. (US) Rsch. Inst.*, No. 19-cv-05784-JST, 2021 U.S. Dist. LEXIS 263232, at *19 (N.D. Cal. Feb. 8, 2021) (finding no violation of Rule 8 because "all allegations against the Farasis Defendants can reasonably be understood to be against each Farasis defendant."). Here, the FAC alleges that both Defendant Power Mobile and Defendant Fantasia Trading LLC are responsible for the "false and deceptive labeling, advertising, marketing, and sale" of the Eufy branded security cameras. FAC ¶ 1. Defendant Power Mobile fails to dispute these allegations.

Defendant Power Mobile's cherry-picked quotes from *Blue Source* cannot save it. 125 F. Supp. 3d at 964. The *Blue Source* court explained that "a plaintiff's allegations must 'provide sufficient notice to all the Defendants as to the nature of the claims being asserted against them,' including 'what conduct is at issue.'" *Id.* The court went on to accept the plaintiff's allegations that the defendants' market, advertise, and sell the products at issue despite plaintiff referring to defendants generally because plaintiff "defines the term 'Defendants' to be 'inclusive' of [all defendants]." *Id.* at 965. The court held that all defendants were properly on notice under Rule 8. *Id.* The same is true here. Plaintiffs have defined "Defendants" in their FAC to be inclusive of Defendant Power Mobile and alleges that it is responsible for the "false and deceptive labeling, advertising, marketing, and sale of the[] Eufy brand security cameras." FAC ¶ 1; *see id.* ¶¶ 4–5, 12, 22–43, 90, 92–95, 100–105, 107, 109, 111, 113–119, 121–130, 132, 134–136. That is enough.

Defendant Power Mobile's reliance on *Austin v. Budget Rental Car, Inc.*, No. 20-cv-06229-AGT, 2020 U.S. Dist. LEXIS 250403 (N.D. Cal. Sep. 17, 2020) is also misplaced. In *Austin*, the court was considering a second screening of an in forma pauperis complaint against

Bank of America, Capital One, Mastercard, and Visa. *Id.* at *3. The plaintiff alleged that the financial companies overbilled him, agreed to cancel his credit card but did not do so, and violated his privacy rights. *Id.* Plaintiff, thus, alleged that each financial company breached contracts with him, acted negligently, and conspired to commit fraud, to wrongly convert his property, and to engage in tortious interference with existing and prospective contracts. *Id.* The court rejected plaintiff's outlandish complaint because it was ninety-eight pages long with no explanation on "what each defendant did, and why what it did gives rise to an actionable legal claim." *Id.* at *4. But here, Plaintiffs allege that Defendant Power Mobile is responsible for the "false and deceptive labeling, advertising, marketing, and sale of the[] Eufy brand security cameras." FAC ¶ 1; *see id.* ¶¶ 4–5, 12, 22–43, 90, 92–95, 100–105, 107, 109, 111, 113–119, 121–130, 132, 134–136. Defendant Power Mobile does not dispute and cannot overcome Plaintiffs allegations with bare speculation.[3]

### B. The FAC Plausibly Alleges that Reasonable Consumers are Deceived and Misled by Defendant Power Mobile's "1080p" / "HD," "2K," and "4K" / "UHD" Representations.

Plaintiffs' fraud-based, California consumer protection claims "are governed by the 'reasonable consumer' standard," under which Plaintiffs must adequately allege "that a significant portion" of consumers acting reasonably under the circumstances "are likely to be deceived" or confused by the claim at issue." *McGinity v. P&G*, 69 F.4th 1093, 1097 (9th Cir. 2023); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (standard prohibits "any capacity, likelihood or tendency to deceive or confuse the public"); *Gunn v. FCA US, LLC*, No. 3:22-cv-02229-JD, 2023 U.S. Dist. LEXIS 147429, at *12 (N.D. Cal. Aug. 22, 2023) (Donato, J.) ("The fraudulent prong of plaintiffs' UCL claim is governed by the reasonable consumer test.") (internal quotations omitted)). California law has long specified that whether "a practice is deceptive" under the reasonable consumer standard is "a question of

---

[3] Plaintiffs request that the Court grant limited jurisdictional discovery should it determine that "a more satisfactory showing of the facts is necessary." *Zithromia*, 2018 U.S. Dist. LEXIS 205704, at *7–8.

fact not appropriate for decision on" a motion to dismiss. *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 579 (2022); *accord Williams*, 552 F.3d at 938 (following "California courts" on this issue). "This is because what matters is how consumers actually behave—how they perceive advertising and how they make decisions. These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." *Salazar*, 83 Cal. App. 5th at 579 (quotes omitted). "Thus, whether a reasonable consumer is likely to be deceived as a matter of law may be decided only in rare situations", *id.*, when it is "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939.

Here, Plaintiffs allege that "[a]lthough Defendants prominently represents in their marketing and packaging that the Eufy Cameras have '1080p' / 'HD,' '2K,' or '4K' / 'UHD' video resolution, the image quality the cameras offer is not commensurate with those representations." FAC ¶ 1. Indeed, expert testing shows that Defendants "4K" cameras provide images with even lower quality than "2K" images. *Id.* ¶ 63; *see id.* ¶¶ 60–63. Likewise, expert testing shows that the "2K" security cameras produce images that look the same or worse than 720p images. *Id.* ¶ 64; *see id.* ¶¶ 60–62, 64. Defendants representations are uniform across all its Eufy-branded cameras and based on those representations, consumers reasonably believe that the Eufy Cameras will be able to provide both live and recorded video and image of a quality concomitant with that which Defendants have advertised and represented: "1080p" / "HD," "2K," and "4K" / "UHD." *Id.* ¶¶ 40–41.

*Sponchiado v. Apple Inc.*, is remarkably similar. No. 18-cv-07533-HSG, 2019 U.S. Dist. LEXIS 199522, at *15–16 (N.D. Cal. Nov. 18, 2019). There, the court denied Apple's motion to dismiss allegations that certain apple devices misrepresented the number of "true pixels" (i.e. distinct pixels) in an image. Apple argued—as does Defendant Power Mobile here—that the pixel count in its advertising included "subpixels" (i.e. indistinct pixels) and was therefore accurate. *Id*. The court rejected Apple's argument, reasoning that:

> Plaintiffs do not allege that Defendant misrepresented the number of subpixels. Rather, Plaintiffs' theory is that Defendant misrepresented the number of pixels

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> because the disclosed count is not representative of "true pixels." The FAC
> alleges that the pixel count includes pixels which "share fractions of subpixels
> with adjacent pixels," meaning that they cannot be "true pixels." Because the
> pixel count is not an accurate count of the number of true pixels, Plaintiffs allege
> that Defendant's representation deceives reasonable consumers into believing that
> the screens "provide the same clarity as would RGB screens of the advertised
> resolution."

*Id*. (citations omitted). Because Apple "[did] not explain why Plaintiffs' understanding of the pixel count [was] unreasonable as a matter of law," the court denied Apple's motion to dismiss as to the pixel claims. *Id.* at *16. The same result should follow here. Defendant Power Mobile has failed to explain why, *as a matter of law*, it is unreasonable to understand Defendant's "1080p" / "HD," "2K," and "4K" / "UHD" representations to mean that the Eufy Cameras are capable of providing "image quality . . . commensurate with those representations." FAC ¶ 1 (emphasis added); *see id.* ¶¶ 5, 19, 28, 44, 46–47, 67, 73, 78.

Defendant Power Mobile's motion largely mirrors that of Defendant Fantasia Trading LLC by arguing that "Plaintiffs plead no facts alleging that Defendants' cameras were incapable of producing video with the advertised pixel counts." ECF 49 at 9; *id.* at 4 ("the FAC does not include any allegations about the actual video resolutions that the cameras are capable of recording. There is no inspection of the sensor, citation to a datasheet, or metadata provided."). Defendant Power Mobile seems to believe it is permitted to advertise the Eufy Cameras as "1080p" / "HD," "2K," and "4K" / "UHD," simply because the cameras have a corresponding pixel count. But Defendant Power Mobile's advertising does not disclose that the representations refer to mere pixel count. In fact, quite the opposite is true. Defendant Power Mobile touts that the so-called "4K" cameras' have "4K" resolution and that they are capable of "4K Detail Day and Night" and they can "[s]pot tiny features on any potential trespasser." FAC ¶ 23–28. Defendant Power Mobile further claims that its "2K" cameras have "ultra-clear 2K resolution" and allows purchasers to "see 2K Ultra-HD details." *Id.* ¶¶ 29–30; *see id.* ¶¶ 31–37. But, as expert testing shows, the cameras do not live up to these claims.

Furthermore, Plaintiffs are not required to plead specific evidence. *Durnford*, 907 F.3d at 603 n.8. Plaintiffs are required only to plead "factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brickman v.*

1 *Fitbit, Inc.*, No. 15-cv-02077-JD, 2016 U.S. Dist. LEXIS 150125, at *4 (N.D. Cal. July 15,

2 2016) (Donato, J.) (quoting *Ashcroft*, 556 U.S. at 678). And the Court "accepts all the material

3 allegations in the complaint as true and draws all reasonable inferences in favor of the

4 plaintiffs." *Id.* (citing *Moyo v. Gomez*, 32 F.3d 1382 (9th Cir. 1994)). As described above,

5 Plaintiffs allegations and testing allows the Court to reasonably infer that Defendant Power

6 Mobile's "1080p" / "HD," "2K," and "4K" / "UHD" representations are false. Even so, it is

7 well-established that "any weighing of evidence is inappropriate on a 12(b)(6) motion."

8 *Shalikar*, 2017 U.S. Dist. LEXIS 221388, at *18 (citing *Jones v. Johnson*, 781 F.2d 769, 722

9 n.1 (9th Cir. 1986)). Defendant Power Mobile invites this Court to discard Plaintiffs' well-pled

10 allegations, including Dr. Castleman's testing, and to speculate on factual matters, but the

11 Court cannot do so. *Twombly*, 550 U.S. at 555.

12     Defendant Power Mobile asserts that "one would have expected Plaintiffs to allege that

13 the video recorded by Defendants' cameras, in fact, contained *X* pixels, which is less than the *Y*

14 pixels that were advertised." ECF 49 at 9. Indeed, Plaintiffs did just that. Plaintiff Shakya

15 purchased the S300 eufyCam (with "4K" representations) and Plaintiff Tran purchased the

16 Video Doorbell Dual Camera (with "2K" representations). FAC ¶¶ 71–73, 76–78. Dr.

17 Castleman's testing determined that the S300 eufyCam's actual resolution is approximately

18 1,774, which is less than the "4K" advertised. *Id.* ¶¶ 62–63, 65. Dr. Castleman also determined

19 that the actual resolution on the Video Doorbell was below 720p, which is less than the "2K"

20 advertised. *Id.* ¶¶ 64–65. Plaintiffs' counsel's prior testing and Dr. Castleman's MTF testing

21 confirms that the Eufy Cameras are inferior to true 4K and 2K cameras. *See id.* ¶¶ 54–59.

22 Plaintiffs allege that all Eufy Cameras make similar representations that are similarly false and

23 deceptive. *Id.* ¶¶ 40–41. As such, Plaintiffs have adequately alleged, with expert evidence, that

24 Defendant Power Mobile's "1080p" / "HD," "2K," and "4K" / "UHD" representations are

25 false and deceptive.

26     Defendant Power Mobile argues that "Plaintiffs do not make allegations about what

27 they believe the actual video resolution (pixel count) of either of those products to be." ECF 49

28

at 9. But as the FAC makes clear, and Defendant Power Mobile acknowledges, the total

number of pixels in an image does not itself determine the image quality. FAC ¶¶ 20–21; *see*

ECF 49 at 12 ("the 'belief [] that more pixels means a higher-quality picture for viewers'—or,

conversely, that lower picture quality means fewer pixels—'isn't necessarily true.' . . . "[o]ther

factors [aside from resolution] are much more important in determining overall picture

quality."). Moreover, Plaintiffs allege that Defendant Power Mobile prominently represents

that the Eufy Cameras are capable of "1080p" / "HD," "2K," and "4K" / "UHD," but that "the

image quality the cameras offer is not commensurate with those representations." FAC ¶ 1; *see

id.* ¶¶ 5, 19, 28, 44, 46–47, 67, 73, 78. Further, Defendant Power Mobile cannot overcome the

fact that Plaintiffs were disappointed with the images that the cameras produced because

Plaintiffs believed "that the image quality would have been substantially clearer than the image

quality [they] got from the camera." *Id.* ¶¶ 73, 78. That is enough. *Sponchiado*, 2019 U.S. Dist.

LEXIS 199522, at *17 ("Whether Plaintiffs' theory of the pixel count is correct (i.e., whether

the count resolution includes 'false pixels') is an issue properly addressed at the summary

judgment stage.").

Defendant's reliance on *Estell v. McHugh*, No. 15-cv-04898-MEJ, 2017 U.S. Dist.

LEXIS 48410, at *1 (N.D. Cal. Mar. 30, 2017) is misplaced. ECF 49 at 10. In *Estell*, the

plaintiff sued the government alleging discrimination based on her disability and a failure to

accommodate. *Estell*, 2017 U.S. Dist. LEXIS 48410, at *1. The court previously dismissed the

failure to accommodate claim because the plaintiff failed to allege when she made the

accommodation request, to whom she made it, and why the request was necessary. *Id.* at *26.

The court dismissed the failure to accommodate claim again, this time with prejudice. The

court held that plaintiff failed to meet her pleading burden because she failed to address the

deficiencies the court noted in the two prior orders dismissing the claim. *Id.* The court rejected

plaintiff's argument that she could not "estimate dates" or "state everything with precision"

without discovery because these facts form the basis of her claims. *Id.* at *30. But here,

Plaintiffs have gone above and beyond what is required. Plaintiffs have alleged what the

representations are, why consumers value them, and extreme detail on why they are false. *See* FAC ¶¶ 16–69.

### C.    Dr. Castleman's Testing Confirms that the Eufy Cameras Do Not Provide Image Quality Concomitant with "1080p" / "HD," "2K," and "4K" / "UHD."

Defendant Power Mobile attacks Dr. Castleman's testing and analysis, asking the Court to either weigh the credibility of the tests or completely disregard them. ECF 49 at 10. The Court may not do so, [a]t this stage of the proceedings, the Court takes the[] allegations as true." *Milan v. Clif Bar & Co.*, No. 18-cv-02354-JD, 2019 U.S. Dist. LEXIS 141403, at *7 (N.D. Cal. Aug. 20, 2019) (Donato, J.) (citing *Williams*, 552 F.3d at 940). Dr. Castleman's testing confirmed that the Eufy Cameras' image quality are clearly inferior to those of true "4K" and "2K" cameras. FAC ¶¶ 46–65. Multiple side-by-side image comparisons of the Eufy Cameras and True 4K and 2K cameras show that the True 4K and 2K cameras' images are much clearer despite the Eufy Cameras and True 4K and 2K cameras being set to the same resolution. *Id.* ¶¶ 46, 52–53, 62–64, 66, 68. The MTF quantitatively confirmed the inferior image quality of the Eufy Cameras. *Id.* ¶¶ 54–59.  Most importantly, Dr. Castleman's testing confirmed that the true resolution of the S300 eufyCam, advertised as being a 4K camera is "less than 2K resolution" and the true resolution of the Video Doorbell is less than 720p. *Id.* ¶¶ 63–65.

Defendant Power Mobile argues that Dr. Castleman's testing and analysis "is nothing more than an opinion that the overall video quality of two of Defendants' home security cameras is worse than the overall video quality of some other cameras (e.g., the iPhone 12), in particular for reading text at a distance—for reasons that have nothing to do with video resolution of pixel count." ECF 49 at 10; *see id.* at 11–12 (speculating, outside the bounds of the complaint, that the Eufy Cameras photos are blurry because the camera was moving, or there were issues with camera lens or signal processing). However, in conducting his tests, Dr. Castleman "excluded or minimized other image quality parameters, such as image noise, color, and lens distortion." FAC ¶ 47. Defendant's speculation about the methodology cannot overcome Plaintiffs' allegations. *See Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021

U.S. Dist. LEXIS 149153, at *24 n.3 (N.D. Cal. 2021) ("Chobani argues that the survey's ostensibly flawed methodology (e.g., its leading questions, poor presentation of answer choices, and lack of control group) should lead the Court to discount it. . . . However, evaluating the quality of a plaintiff's evidence is inappropriate at this stage of the litigation.").

Defendant Power Mobile again argues that there is a "key disconnect between the subject of Plaintiffs' factual allegations (the cameras' 'optical resolution') and the subject of the challenged advertising statements (the cameras' 'video resolution')." ECF 49 at 11; *see id.* at 11–12 (arguing "Plaintiffs attempt to blur this distinction by occasionally describing 'optical resolution' in terms of '[e]stimated' pixel counts."). However, as explained above (and Defendant Power Mobile acknowledges), several factors affect resolution. Dr. Castleman's testing is able to capture each of those factors and he ensured to "exclude[] or minimize[] other image quality parameters." FAC ¶ 47. Moreover, Plaintiffs allege that Defendant Power Mobile makes various representations relating to overall video and image quality and Dr. Castleman tested the veracity of those claims. *See* FAC ¶¶ 23–39 ("4K Detail Day and Night," "Spot tiny features on any potential trespasser," "4K" resolution, "Capture every event that occurs around your home in ultra-clear 2K resolution," "2K Detail Day and Night," "see 2K Ultra-HD details," "crisp 2K high-definition video," and "crystal clear 1080p HD."). Unsurprisingly, they did not withstand scrutiny.

Defendant Power Mobile also argues that on "Plaintiffs' own theory, any supposed inferiority in the eufy cameras' optical resolution is due to image processing algorithms—and not due to pixel count/video resolution." ECF 49 at 13. Even if the inferiority were truly caused by Defendant Power Mobile processing algorithms, its "1080p" / "HD," "2K," and "4K" / "UHD" claims are still false because the Eufy Cameras are unable to provide "image quality" commensurate with those representations. FAC ¶¶ 1, 5, 19, 28, 44, 46–47, 67, 73, 78.

Defendant Power Mobile argues that the Court should disregard Plaintiffs' counsel's testing because it "runs afoul of the source that [Plaintiffs] rely on, which admonishes that one cannot simply assume that a 'high-quality picture for viewers' was necessarily the result of

'more pixels,' or that a lower quality picture means fewer pixels." ECF 49 at 14. However, the article explains that video quality is influenced by various factors beyond just pixel count, such as the efficiency of the video's compression and the specific context in which the video is viewed. This nuanced understanding suggests that assessing visual quality is a complex process that cannot be reduced to a simple correlation between pixel quantity and image quality. Therefore, disregarding Plaintiffs' testing on the basis of an oversimplified assumption undermines the multifaceted nature of video and image quality assessment, which should consider a broader range of technical and perceptual factors, and ignores the pleading standard on this motion.

**D.      Plaintiffs Have Standing To Challenge The Unpurchased Products.**

A plaintiff has standing to pursue class claims relating to products the plaintiff did not purchase if the complaint alleges facts to show that the purchased and non-purchased products share "substantial" similarities. *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1141–42 (N.D. Cal. 2013). "[C]ourts in the Ninth Circuit caution against too rigid an application of the standing requirements, warning '[courts] must examine the questions realistically: [they] must reject the temptation to parse too finely, and consider instead the context of the inquiry.'" *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413-TSH, 2021 U.S. Dist. LEXIS 86203, at *15–16 (N.D. Cal. May 5, 2021) (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001)).

"The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Courts have previously found that diverse products bearing similar labels may be considered "substantially similar." *Maisel*, 2021 U.S. Dist. LEXIS 86203, at *12 (collecting cases); *see also Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654, at *7 (N.D. Cal. Jan. 5, 2010) (allowing plaintiff to sue for purchased product (Shout) and

unpurchased product (Windex) because the challenged representation on the labels was the same on both products, and recognizing that "there is no bright line rule that different product lines cannot be covered by a single class.") If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).

Contrary to Defendant Power Mobile's assertions, Plaintiffs include a non-exhaustive list of the Eufy Cameras which contain the challenged representations. FAC ¶ 22. The FAC gives representative examples of the "1080p" / "HD," "2K," and "4K" / "UHD" representations. *Id.* ¶¶ 23–39. Plaintiffs allege that Defendant has "advertised, marketed, and sold a variety of other Eufy-brand cameras" which falsely claim they are "capable of providing, variously, '1080p' / 'HD,' '2K,' and '4K' / 'UHD' video resolution." *Id.* ¶ 40. Thus, "[b]ased on Defendants representations with respect to each and every Eufy Camera, consumers reasonably believe that when they use a Eufy Camera, they will be able to view both live and recorded video of a quality concomitant with that which Defendants have advertised and represented: '1080p' / 'HD,' '2K,' or '4K' / 'UHD.'" *Id.* ¶ 42.

Accordingly, Plaintiffs have sufficiently alleged that the unpurchased products are substantially similar to the purchased products. At most, "[t]he differences between the Products raised by Defendant[] may impact class certification or summary judgment, but they are not enough to defeat substantial similarity for the purposes of standing." *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 U.S. Dist. LEXIS 150394, at *8 (N.D. Cal. Aug. 6, 2021).

### E.    The Court Should Grant Leave to Amend.

Plaintiffs respectfully request that the Court grant leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

1    **V.    CONCLUSION**

2         For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant

3    Power Mobile's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend.

4    ///

5    ///

6    ///

7    ///

8         Dated: February 23, 2024

9                                                    **GUTRIDE SAFIER LLP**

10                                                    */s/ Seth A. Safier /*
                                                     Seth A. Safier (State Bar No. 197427)

11                                                      seth@gutridesafier.com
                                                     Todd Kennedy (State Bar No. 250267)

12                                                      todd@gutridesafier.com
                                                     100 Pine Street, Suite 1250

13                                                    San Francisco, CA 94111
                                                     Telephone: (415) 639-9090

14                                                    Facsimile:  (415) 449-6469

15                                                    *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28