**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JYOTINDRA SHAKYA and THAN TRAN, on behalf of themselves, the general public, and those similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>FANTASIA TRADING LLC and POWER MOBILE LIFE, LLC,<br><br>　　　　　　　　　　Defendants. | Case No. 3:23-cv-03925-JD<br><br>PLAINTIFFS' CORRECTED OPPOSITION TO DEFENDANT POWER MOBILE LIFE, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT<br><br>Hearing Date:　　March 21, 2024<br>Hearing Time:　　10:00 a.m.<br><br>Hon. James Donato |
PLAINTIFFS' CORRECTED OPPOSITION TO DEFENDANT POWER MOBILE'S MOTION TO DISMISS
CASE NO. 3:23-CV-03925-JD

**Table of Contents**

I. INTRODUCTION ........................................................................................................... 1
II. BACKGROUND ............................................................................................................. 2
    A. Defendants Falsely and Deceptively Advertise Eufy Cameras as providing "1080p" / "HD," "2K," or "4K" / "UHD." ............................................................ 2
    B. Expert Testing Proves that the Eufy 4K Cameras Produce 2K Images, and that the Eufy 2K Cameras Produce 720p Images. ............................................................. 2
    C. Prior Testing Confirms the Representations are False and Misleading. ................ 3
III. LEGAL STANDARD ..................................................................................................... 4
IV. ARGUMENT .................................................................................................................. 4
    A. The Court Has Specific Jurisdiction over Defendant Power Mobile ..................... 4
    B. The FAC Plausibly Alleges that Reasonable Consumers are Deceived and Misled by Defendant Power Mobile's "1080p" / "HD," "2K," and "4K" / "UHD" Representations. ...................................................................................................... 9
    C. Dr. Castleman's Testing Confirms that the Eufy Cameras Do Not Provide Image Quality Concomitant with "1080p" / "HD," "2K," and "4K" / "UHD." ............. 12
    D. Plaintiffs Have Standing To Challenge The Unpurchased Products. .................. 14
    E. The Court Should Grant Leave to Amend. .......................................................... 15
V. CONCLUSION ............................................................................................................. 15

**Table of Authorities**

**Cases**

*Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................ 7

*Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012) ............................................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 4, 11

*Austin v. Budget Rental Car, Inc.*, No. 20-cv-06229-AGT, 2020 U.S. Dist. LEXIS 250403 (N.D. Cal. Sep. 17, 2020) ................................................................................................................ 8

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) .............................................. 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 4

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) .......................... 6

*Brickman v. Fitbit, Inc.*, No. 15-cv-02077-JD, 2016 U.S. Dist. LEXIS 150125 (N.D. Cal. July 15, 2016) ..................................................................................................................................... 11

*Cooper v. Kimberly-Clark Corp.*, No. EDCV 23-1025 JGB (SPx), 2023 U.S. Dist. LEXIS 198121 (C.D. Cal. 2023) ....................................................................................................... 4

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) ..................................... 5

*Kellman v. WFM Private Label, L.P.*, No. 17-cv-06584-LB, 2019 U.S. Dist. LEXIS 55979 (N.D. Cal. Mar. 29, 2019) ................................................................................................................ 5

*Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 5, 2010) ......................................................................................................................... 15

*McGinity v. P&G*, 69 F.4th 1093 (9th Cir. 2023) ..................................................................... 9

*Milan v. Clif Bar & Co.*, No. 18-cv-02354-JD, 2019 U.S. Dist. LEXIS 141403 (N.D. Cal. Aug. 20, 2019) ............................................................................................................................. 13

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ............................. 14

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 U.S. Dist. LEXIS 150394 (N.D. Cal. Aug. 6, 2021) .................................................... 15

*Moyo v. Gomez*, 32 F.3d 1382 (9th Cir. 1994) ....................................................................... 11

*Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886 (N.D. Cal. Oct. 28, 2016) ...................... 7

*Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 U.S. Dist. LEXIS 149153 (N.D. Cal. 2021) ................................................................................................................................... 13

*Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212 (N.D. Cal. 2020) ................ 6

*Salazar v. Target Corp.*, 83 Cal. App. 5th 571 (2022) ............................................................... 9

*Shalikar v. Asahi Beer U.S.A.*, No. LA CV17-02713 JAK (JPRx), 2017 U.S. Dist. LEXIS 221388 (C.D. Cal. 2017) ....................................................................................................... 4

*Sponchiado v. Apple Inc.*, No. 18-cv-07533-HSG, 2019 U.S. Dist. LEXIS 199522 (N.D. Cal. Nov. 18, 2019) ................................................................................................................ 10, 12

*Thomas v. Cricket Wireless LLC*, No. C 19-07270 WHA, 2020 U.S. Dist. LEXIS 56272 (N.D. Cal. Mar. 31, 2020) ................................................................................................................ 7

*Tivoli LLC v. Targetti Sankey S.P.A.*, 2015 U.S. Dist. LEXIS 189660 (C.D. Cal. Feb. 3, 2015) .. 7

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .................................................... 9

*Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013) .......................................... 14

*Zithromia Ltd. v. Gazeus Negocios De Internet SA*, No. 3:17-cv-06475-JD, 2018 U.S. Dist. LEXIS 205704 (N.D. Cal. Dec. 5, 2018) ............................................................................. 4, 5

**Statutes**

Cal. Code Civ. Proc. § 410.10 ........................................................................................................ 6

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 5

## I. INTRODUCTION

Defendant Power Mobile Life, LLC ("Power Mobile") presents a nearly identical brief to that of Defendant Fantasia Trading LLC (collectively, "Defendants"), which strikingly mirrors the core issue of their disputed security cameras' performance—promising clarity and delivering a blur. This irony is not lost on Plaintiffs as they once again address the significant gap between the advertised and actual quality of the Eufy Cameras, a disparity that has led consumers to a state of disillusionment and vulnerability.

Defendant Power Mobile contends that the Court must grant its motion to dismiss for several reasons: (1) Plaintiffs fail to properly allege personal jurisdiction over it; (2) Plaintiffs fail to plead the pixel count; (3) Plaintiffs fail to properly test the Eufy Cameras; and (4) Plaintiffs lack standing to challenge claims regarding Eufy Cameras they did not purchase. Each argument must be rejected.

Defendant Power Mobile argues, for example, that this Court does not have personal jurisdiction over it because Plaintiffs did not specifically single out Defendant Power Mobile throughout their complaint. However, collectively referring to Defendants is entirely appropriate when the defendant is put on notice of the claims against them, as has been done in this case. If Defendant Power Mobile wished to properly contest personal jurisdiction, it could have submitted an affidavit rebutting Plaintiffs' allegations that it advertises, markets, and sells the Eufy branded security cameras. It failed to do so.

Defendant Power Mobile then raises the same arguments asserted by Defendant Fantasia Trading LLC, which are equally unconvincing. First, Defendant Power Mobile's video and image representations go far beyond mere pixel count and relates to overall image and video quality. Second, Dr. Castleman's expert testing and analysis of the Eufy Cameras were conducted appropriately, and any debate over the testing methodology is inappropriate at this juncture. Finally, Plaintiffs have standing to challenge the unpurchased products because those Eufy Cameras are substantially similar to the Eufy Cameras that Plaintiffs purchased.

## II. BACKGROUND

### A. Defendants Falsely and Deceptively Advertise Eufy Cameras as Providing "1080p" / "HD," "2K," or "4K" / "UHD."

Plaintiffs bring this complaint "against Fantasia Trading LLC, Anker Innovations Technology Co., Ltd., and Power Mobile Life, LLC (collectively, 'Defendants' or 'Anker')." ECF 30 (First Amended Complaint, "FAC") at 1.[1] This case concerns Defendants' false and deceptive advertising and sale of security cameras which they represent provide "1080p" / "HD," "2K," or "4K" / "UHD." *Id.* ¶ 1; *see id.* ¶ 22. Video resolution is a critical factor that consumers consider in determining what security camera to purchase. *Id.* ¶ 2. Consumers desire higher resolution cameras because they allow users to more accurately identify faces, hair, clothing, tattoos, and other indicia, at great distances and with greater clarity. *Id.* ¶¶ 2, 16. Plaintiffs, thus, allege that Defendants are able to charge a price premium based on the false and deceptive "1080p" / "HD," "2K," or "4K" / "UHD" representations. *Id.* ¶¶ 2, 74, 79.

Defendants advertise and sell security cameras with materially identical video and image quality claims such as: "4K Detail Day and Night," "UHD," "Spot tiny features on any potential trespasser," "4K" resolution, "Capture every event that occurs around your home in ultra-clear 2K resolution," "2K Detail Day and Night," "see 2K Ultra-HD details," "crisp 2K high-definition video," and "crystal clear 1080p HD." *See* FAC ¶¶ 23–39. However, expert testing demonstrates that these claims failed to hold up under scrutiny.[2]

### B. Expert Testing Proves that the Eufy 4K Cameras Produce 2K Images, and that the Eufy 2K Cameras Produce 720p Images.

Dr. Castleman tested the S300 EufyCam (advertised as 4K) and the E340 Video Doorbell camera (advertised as 2K) (the "Eufy Cameras"). *Id.* ¶ 46. He set the Eufy Cameras to maximum resolution and compared them to True 4K and 2K cameras. *Id.* ¶¶ 46; *see id.* ¶¶ 52–53. Dr. Castleman "focused on resolution, and excluded or minimized other image quality parameters, such as image noise, color, and lens distortion." *Id.* ¶ 47.

---

[1] Plaintiffs voluntarily dismissed, without prejudice, Defendant Anker Innovations Technology Co., Ltd. on January 30, 2024. ECF 44.

[2] To avoid repetition, Plaintiffs' discussion of the facts here is not as fulsome as in their opposition to Defendant Fantasia Trading LLC's motion to dismiss. ECF 47 at 2–8.

1          Dr. Castleman generated "the Modulation Transfer Function ('MTF') for each camera"
2   which "is commonly used to illustrate the resolution of an imaging system." FAC ¶ 48. A side-
3   by-side comparison of the MTFs show that the True 4K and 2K cameras "have superior MTFs
4   with little overshoot and almost no undershoot." *Id.* ¶ 59. The MTFs confirmed what is apparent
5   from side-by-side comparisons of the images in Figure 2: "the resolution of the Eufy [C]ameras
6   is markedly inferior to those of the [True 4K and 2K cameras]." *Id.*
7          Dr. Castleman further tested the Eufy Cameras "by preparing another set of reference
8   images for comparison." *Id.* ¶ 60. Dr. Castleman calculated the resolution by determining the
9   "ratio of type size in the [Eufy Cameras'] image to the type size in the [True 4K and 2K
10  cameras] image, multiplied by 4,000 (4K resolution)." *Id.* Dr. Castleman's testing determined
11  "***that the true resolution of the EufyCam 3C—advertised as being 4K camera—is 0.44 x 4,032***
12  ***= 1,774, or slightly less than 2K resolution.***" *Id.* (emphasis in original). Dr. Castleman also
13  determined that the Eufy Video Doorbell E340—advertised as being 2K camera—has a
14  resolution of "**720p or less.**" *Id.* ¶ 65 (emphasis added).
15         **C.     Prior Testing Confirms the Representations are False and Misleading.**
16         Dr. Castleman's conclusions confirm prior testing by Plaintiffs' counsel. FAC ¶ 66.
17  Plaintiffs' counsel tested the S300 eufyCam camera (advertised as "4K") and a True 4K Camera
18  by taking images at ten feet and twenty feet. *Id.* At ten feet, a side-by-side comparison of the
19  images demonstrates that the S300 camera "has an image quality that is noticeably inferior to
20  that of the True 4K camera." *Id.* ¶ 67. The level of detail in the jacket stitching, houseplant leaf,
21  jacket logo, and book cover" are noticeably poorer in the S300 image, while in the True 4K
22  camera image "the stitching in the jacket is much more distinct; the veins and definition in the
23  houseplant leaf can be seen; the jacket logo appears distinctly rather than as a blue; and much
24  more detail emerges in the book cover." *Id.* At twenty feet, the differences are even more stark
25  as the subject in the image produced by the S300 camera "has lost nearly all facial features"
26  while the True 4K camera is clear enough to identify the subject. *Id.* ¶¶ 68–69. The book is also
27  no longer legible on the image produced by the S300 camera. *Id.* The True 4K camera preserves
28

other important details, including the stitching in the subject's jacket, the shape of the jacket logo, and the title of the book can be more easily discerned in the 4K image. *Id.* Plaintiffs' counsel's prior testing demonstrates that the S300 camera's "4K" representations are false.

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Whether an advertisement is deceptive will often be a question of fact not appropriate for decision on a motion to dismiss." *Cooper v. Kimberly-Clark Corp.*, No. EDCV 23-1025 JGB (SPx), 2023 U.S. Dist. LEXIS 198121, at *8 (C.D. Cal. 2023). "This rule arises from the well-established principle that any weighing of evidence is inappropriate on a 12(b)(6) motion." *Shalikar v. Asahi Beer U.S.A.*, No. LA CV17-02713 JAK (JPRx), 2017 U.S. Dist. LEXIS 221388, at *18 (C.D. Cal. 2017). Indeed, "plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage . . . nor are they required to plead the 'probability' of their entitlement to relief." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018). Instead, a claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV.   ARGUMENT

### A.   The Court Has Specific Jurisdiction over Defendant Power Mobile.

Where, as here, no federal statute authorizes personal jurisdiction, the Court applies the law of the state in which it sits. *Zithromia Ltd. v. Gazeus Negocios De Internet SA*, No. 3:17-cv-06475-JD, 2018 U.S. Dist. LEXIS 205704, at *4 (N.D. Cal. Dec. 5, 2018) (Donato, J.). To be subject to specific personal jurisdiction in California:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some

      act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

      (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

      (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* "Courts have held that product false-labeling and breach-of-warranty claims sound primarily in tort and thus apply a purposeful-direction analysis." *Kellman v. WFM Private Label, L.P.*, No. 17-cv-06584-LB, 2019 U.S. Dist. LEXIS 55979, at *13 (N.D. Cal. Mar. 29, 2019). To establish purposeful-direction, the defendant allegedly must have (1) committed an intentional act, (2) aimed at the forum, (3) causing harm that the defendant knows is likely to be suffered in the forum. *Zithromia*, 2018 U.S. Dist. LEXIS 205704, at *4.

      In this case, Defendant Power Mobile committed an intentional act by, among other things, "prominently represent[ing] in [its] marketing and packaging that the Eufy Cameras have '1080p' / 'HD,' '2K,' or '4K' / 'UHD' video resolution, [but] the image quality the cameras offer is not commensurate with those representations." FAC ¶ 1; *see id.* ¶¶ 4–5, 12, 22–43, 90, 92–95, 100–105, 107, 109, 111, 113–119, 121–130, 132, 134–136; *see Kellman*, 2019 U.S. Dist. LEXIS 55979, at *16 ("[Defendant] also presumptively made the decision to label them and market [the products]. These are intentional acts.").

      Defendant Power Mobile expressly aimed its activities at California because it intentionally distributes the Eufy Cameras through its website to California consumers like Plaintiff Shakya. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1093 (9th Cir. 2023) ("We now hold that if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum."); *see* FAC ¶¶ 76–77 (describing Plaintiff Shakya's purchase on the Eufy website). Moreover, Defendant Power Mobile's advertising and sale of the Eufy Cameras through third-party retailers in California is enough to confer specific jurisdiction. *Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1214 (N.D.

1  Cal. 2020) ("counsel for the defendant asserted that the Court lacks specific jurisdiction to
2  adjudicate [plaintiff's] own claims, even though [plaintiff] bought the flea medicine from a
3  California Petco and used it on her dog in California. That is clearly wrong."); *see* FAC ¶¶ 4,
4  42–43.

5        Defendant Power Mobile invariably knew that consumers in California would be
6  harmed by its false and deceptive representations because it was aware California consumers
7  would purchase security cameras which purport to be high quality. FAC ¶¶ 2, 4; *Kellman*, 2019
8  U.S. Dist. LEXIS 55979, at *18. And finally, Plaintiffs' claims "arises out of" and "relates" to
9  Defendant Power Mobile's advertising and sale of the Eufy Cameras. *Id.* at *18–19 ("To
10 determine whether a plaintiff's claim arises out of the defendant's forum-related activities,
11 courts use a 'but for' causation analysis. . . . [defendant's] forum-related activities — namely,
12 its presumptive decision to offer for sale the products at issue in this case and to label and
13 market them as 'hypoallergenic,' knowing that they would be sold at Whole Foods stores to
14 customers in California like [plaintiff] — are the but-for cause of [plaintiff's] claims."). As
15 such, it is reasonable for the Court to assume specific jurisdiction over Defendant Power
16 Mobile.

17       Defendant Power Mobile asks this Court to speculate on jurisdictional issues when it is
18 in the best position to refute Plaintiffs' allegations that it is responsible for the "false and
19 deceptive labeling, advertising, and sale of [its] Eufy brand security cameras" with an affidavit
20 or declaration. FAC ¶ 1; *McDonald v. Aps*, 385 F. Supp. 3d 1022, 1030–31 (N.D. Cal. 2019)
21 (Donato, J.) (A defendant may rebut "the truth of allegations in a pleading" with an affidavit.).
22 Or it could have refuted that "Defendants regularly conduct and/or solicit business in, engage in
23 other persistent courses of conduct in, and/or derive substantial revenue from products provided
24 to persons in the State of California." FAC ¶ 12. It did not do so and absent any evidence, the
25 Court must accept Plaintiffs' uncontroverted allegations as true. *Brayton Purcell LLP v.*
26 *Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010); *see Thomas v. Cricket Wireless*
27 *LLC*, No. C 19-07270 WHA, 2020 U.S. Dist. LEXIS 56272, at *18 (N.D. Cal. Mar. 31, 2020)
28

1  ("Cricket's declarations do not contradict [the personal jurisdiction] allegation, nor does Cricket elsewhere deny its veracity. Instead, Cricket chose only to object to its form. As discussed, if evidence existed to the contrary, Cricket remained in the best position to disclose it. It chose not to. At this stage, this order will accept the allegation as true (subject to proof at trial).").

Defendant Power Mobile essentially argues that "the FAC does not identify any relevant act undertaken by Powe [sic] Mobile individually at all—much less one purposefully directed at California that gave rise to Plaintiffs' claims." ECF 49 at 7. But the FAC does just that. Plaintiffs identify that they bring this action on behalf of themselves and all other similarly situated against "Fantasia Trading LLC . . . and Power Mobile Life, LLC (collectively, 'Defendants' or 'Anker')." FAC at p. 1. Plaintiffs have a litany of allegations against both Defendant Fantasia Trading and Defendant Power Mobile. *See id.* ¶¶ 1, 4–5, 12, 22–43, 90, 92–95, 100–105, 107, 109, 111, 113–119, 121–130, 132, 134–136. Notably, Plaintiffs allege, and Defendant Power Mobile does not dispute, that Defendants are both responsible and liable for the false and deceptive labeling, advertising, marketing, and sale of their Eufy brand security cameras and that "Defendants regularly conduct and/or solicit business in . . . the State of California." *Id.* ¶¶ 1, 12.

Defendant Power Mobile claims this "is plainly insufficient. Rule 8 requires a plaintiff to 'identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." ECF 49 at 8 (quoting *Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015)). But Power Mobile misstates the law. "Group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v. Targetti Sankey S.P.A.*, 2015 U.S. Dist. LEXIS 189660, at *9 (C.D. Cal. Feb. 3, 2015). Indeed, when defendants are related entities who acted in concert "it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant." *Id.* at *11; *see also Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886, *9 (N.D. Cal. Oct. 28, 2016) ("because the Defendants all share a parent-subsidiary relationship with The Gap Inc. as the parent company and because all the Defendants are

1  represented by the same counsel, frustration of notice of the claims to each defendant is
2  unlikely."). Here, the FAC alleges that both Defendant Power Mobile and Defendant Fantasia
3  Trading LLC are responsible for the "false and deceptive labeling, advertising, marketing, and
4  sale" of the Eufy branded security cameras. FAC ¶ 1. Defendant Power Mobile fails to dispute
5  these allegations.
6      Power Mobile's cherry-picked quotes from *Blue Source* cannot save it. 125 F. Supp. 3d
7  at 964. The *Blue Source* court explained that "a plaintiff's allegations must 'provide sufficient
8  notice to all the Defendants as to the nature of the claims being asserted against them,'
9  including 'what conduct is at issue.'" *Id.* The court went on to accept the plaintiff's allegations
10 that the defendants' market, advertise, and sell the products at issue despite plaintiff referring to
11 defendants generally because plaintiff "defines the term 'Defendants' to be 'inclusive' of [all
12 defendants]." *Id.* at 965. The court held that all defendants were properly on notice under Rule
13 8. *Id.* The same is true here. Plaintiffs have defined "Defendants" in their FAC to be inclusive of
14 Defendant Power Mobile and alleges that it is responsible for the "false and deceptive labeling,
15 advertising, marketing, and sale of the[] Eufy brand security cameras." FAC ¶ 1; *see id.* ¶¶ 4–5,
16 12, 22–43, 90, 92–95, 100–105, 107, 109, 111, 113–119, 121–130, 132, 134–136. That is
17 enough.
18     Power Mobile's reliance on *Austin v. Budget Rental Car, Inc.*, No. 20-cv-06229-AGT,
19 2020 U.S. Dist. LEXIS 250403 (N.D. Cal. Sep. 17, 2020) is also misplaced. In *Austin*, the court
20 was considering a second screening of an in forma pauperis complaint against Bank of America,
21 Capital One, Mastercard, and Visa. *Id.* at *3. The plaintiff alleged that the financial companies
22 overbilled him, agreed to cancel his credit card but did not do so, and violated his privacy rights.
23 *Id.* Plaintiff, thus, alleged that each financial company breached contracts with him, acted
24 negligently, and conspired to commit fraud, to wrongly convert his property, and to engage in
25 tortious interference with existing and prospective contracts. *Id.* The court rejected plaintiff's
26 outlandish complaint because it was ninety-eight pages long with no explanation on "what each
27 defendant did, and why what it did gives rise to an actionable legal claim." *Id.* at *4. But here,
28

Plaintiffs allege that Power Mobile is responsible for the "false and deceptive labeling, advertising, marketing, and sale of the[] Eufy brand security cameras." FAC ¶ 1; *see id.* ¶¶ 4–5, 12, 22–43, 90, 92–95, 100–105, 107, 109, 111, 113–119, 121–130, 132, 134–136. Defendant Power Mobile does not dispute and cannot overcome Plaintiffs' allegations with bare speculation.[3]

### B. The FAC Plausibly Alleges that Reasonable Consumers are Deceived and Misled by Defendant Power Mobile's "1080p" / "HD," "2K," and "4K" / "UHD" Representations.

Plaintiffs' fraud-based, California consumer protection claims "are governed by the 'reasonable consumer' standard," under which Plaintiffs must adequately allege "that a significant portion" of consumers acting reasonably under the circumstances "are likely to be deceived" or confused by the claim at issue." *McGinity v. P&G*, 69 F.4th 1093, 1097 (9th Cir. 2023); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (standard prohibits "any capacity, likelihood or tendency to deceive or confuse the public"). California law has long specified that whether "a practice is deceptive" under the reasonable consumer standard is "a question of fact not appropriate for decision on" a motion to dismiss. *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 579 (2022); *accord Williams*, 552 F.3d at 938 (following "California courts" on this issue).

Here, Plaintiffs allege that "[a]lthough Defendants prominently represents in their marketing and packaging that the Eufy Cameras have '1080p' / 'HD,' '2K,' or '4K' / 'UHD' video resolution, the image quality the cameras offer is not commensurate with those representations." FAC ¶ 1. Indeed, expert testing shows that Defendants "4K" cameras provide images with even lower quality than "2K" images. *Id.* ¶ 63; *see id.* ¶¶ 60–63. Likewise, expert testing shows that the "2K" security cameras produce images that look the same or worse than 720p images. *Id.* ¶ 64; *see id.* ¶¶ 60–62, 64. Defendants' representations are uniform across all its Eufy-branded cameras and based on those representations, consumers reasonably believe that

---

[3] Plaintiffs request that the Court grant limited jurisdictional discovery should it determine that "a more satisfactory showing of the facts is necessary." *Zithromia*, 2018 U.S. Dist. LEXIS 205704, at *7–8.

the Eufy Cameras will be able to provide both live and recorded video and image of a quality concomitant with that which Defendants have advertised and represented: "1080p" / "HD," "2K," and "4K" / "UHD." *Id.* ¶¶ 40–41.

*Sponchiado v. Apple Inc.* is remarkably similar. No. 18-cv-07533-HSG, 2019 U.S. Dist. LEXIS 199522, at *15–16 (N.D. Cal. Nov. 18, 2019). There, the court denied Apple's motion to dismiss allegations that certain apple devices misrepresented the number of "true pixels" (i.e. distinct pixels) in an image. Apple argued—as does Power Mobile here—that the pixel count in its advertising included "subpixels" (i.e. indistinct pixels) and was therefore accurate. *Id.* The court rejected Apple's argument, reasoning that:

> Plaintiffs do not allege that Defendant misrepresented the number of subpixels. Rather, Plaintiffs' theory is that Defendant misrepresented the number of pixels because the disclosed count is not representative of "true pixels." The FAC alleges that the pixel count includes pixels which "share fractions of subpixels with adjacent pixels," meaning that they cannot be "true pixels." Because the pixel count is not an accurate count of the number of true pixels, Plaintiffs allege that Defendant's representation deceives reasonable consumers into believing that the screens "provide the same clarity as would RGB screens of the advertised resolution."

*Id.* (citations omitted). Because Apple "[did] not explain why Plaintiffs' understanding of the pixel count [was] unreasonable as a matter of law," the court denied Apple's motion to dismiss as to the pixel claims. *Id.* at *16. The same result should follow here. Power Mobile has failed to explain why, *as a matter of law*, it is unreasonable to understand Defendant's "1080p" / "HD," "2K," and "4K" / "UHD" representations to mean that the Eufy Cameras are capable of providing "image quality . . . commensurate with those representations." FAC ¶ 1 (emphasis added); *see id.* ¶¶ 5, 19, 28, 44, 46–47, 67, 73, 78.

Power Mobile's motion largely mirrors that of Fantasia Trading LLC by arguing that "Plaintiffs plead no facts alleging that Defendants' cameras were incapable of producing video with the advertised pixel counts." ECF 49 at 9; *id.* at 4 ("There is no inspection of the sensor, citation to a datasheet, or metadata provided."). Power Mobile seems to believe it is permitted to advertise the Eufy Cameras as "1080p" / "HD," "2K," and "4K" / "UHD," simply because the cameras have a corresponding pixel count. But Power Mobile's advertising does not disclose

1  that the representations refer to mere pixel count. In fact, quite the opposite is true. Power
2  Mobile touts that the so-called "4K" cameras' have "4K" resolution and that they are capable of
3  "4K Detail Day and Night" and they can "[s]pot tiny features on any potential trespasser." FAC
4  ¶ 23–28. Power Mobile further claims that its "2K" cameras have "ultra-clear 2K resolution"
5  and allows purchasers to "see 2K Ultra-HD details." *Id.* ¶¶ 29–30; *see id.* ¶¶ 31–37. But, as
6  expert testing shows, the cameras do not live up to these claims.

7        Even so, Plaintiffs are not required to plead specific evidence. *Durnford*, 907 F.3d at 603
8  n.8. Plaintiffs need only plead "factual content that allows a court to draw the reasonable
9  inference that the defendant is liable for the misconduct alleged." *Brickman v. Fitbit, Inc.*, No.
10 15-cv-02077-JD, 2016 U.S. Dist. LEXIS 150125, at *4 (N.D. Cal. July 15, 2016) (Donato, J.)
11 (quoting *Ashcroft*, 556 U.S. at 678). And the Court "accepts all the material allegations in the
12 complaint as true and draws all reasonable inferences in favor of the plaintiffs." *Id.* (citing *Moyo*
13 *v. Gomez*, 32 F.3d 1382 (9th Cir. 1994)). As described above, Plaintiffs' allegations and testing
14 allows the Court to reasonably infer that Power Mobile's "1080p" / "HD," "2K," and "4K" /
15 "UHD" representations are false. Power Mobile invites this Court to discard Plaintiffs' well-
16 pled allegations, including Dr. Castleman's testing, and to speculate on factual matters, but the
17 Court cannot do so. *Twombly*, 550 U.S. at 555; *Shalikar*, 2017 U.S. Dist. LEXIS 221388, at *18
18 ("any weighing of evidence is inappropriate on a 12(b)(6) motion." (citing *Jones v. Johnson*,
19 781 F.2d 769, 722 n.1 (9th Cir. 1986))).

20       Power Mobile asserts that "one would have expected Plaintiffs to allege that the video
21 recorded by Defendants' cameras, in fact, contained $X$ pixels, which is less than the $Y$ pixels that
22 were advertised." ECF 49 at 9. Indeed, Plaintiffs did just that. Plaintiff Shakya purchased the
23 S300 eufyCam (with "4K" representations) and Plaintiff Tran purchased the Video Doorbell
24 Dual Camera (with "2K" representations). FAC ¶¶ 71–73, 76–78. Dr. Castleman's testing
25 determined that the S300 eufyCam's actual resolution is approximately 1,774, which is less than
26 the "4K" advertised. *Id.* ¶¶ 62–63, 65. Dr. Castleman also determined that the actual resolution
27 on the Video Doorbell was below 720p, which is less than the "2K" advertised. *Id.* ¶¶ 64–65.

28

Plaintiffs' counsel's prior testing and Dr. Castleman's MTF testing confirms that the Eufy Cameras are inferior to true 4K and 2K cameras. *See id.* ¶¶ 54–59. Plaintiffs allege that all Eufy Cameras make similar representations that are similarly false and deceptive. *Id.* ¶¶ 40–41. As such, Plaintiffs have adequately alleged, with expert evidence, that Defendant Power Mobile's "1080p" / "HD," "2K," and "4K" / "UHD" representations are false and deceptive.

Power Mobile argues that "Plaintiffs do not make allegations about what they believe the actual video resolution (pixel count) of either of those products to be." ECF 49 at 9. But as the FAC makes clear, and Power Mobile acknowledges, the total number of pixels in an image does not itself determine the image quality. FAC ¶¶ 20–21; *see* ECF 49 at 12. Moreover, Plaintiffs allege that Power Mobile prominently represents that the Eufy Cameras are capable of "1080p" / "HD," "2K," and "4K" / "UHD," but that "the image quality the cameras offer is not commensurate with those representations." FAC ¶ 1; *see id.* ¶¶ 5, 19, 28, 44, 46–47, 67, 73, 78. Further, Power Mobile cannot overcome the fact that Plaintiffs were disappointed with the images that the cameras produced because Plaintiffs believed "that the image quality would have been substantially clearer than the image quality [they] got from the camera." *Id.* ¶¶ 73, 78. That is enough. *Sponchiado*, 2019 U.S. Dist. LEXIS 199522, at *17 ("Whether Plaintiffs' theory of the pixel count is correct . . . is an issue properly addressed at the summary judgment stage.").[4]

### C.    Dr. Castleman's Testing Confirms that the Eufy Cameras Do Not Provide Image Quality Concomitant with "1080p" / "HD," "2K," and "4K" / "UHD."

Next, Power Mobile attacks Dr. Castleman's testing and analysis, asking the Court to either weigh the credibility of the tests or completely disregard them. ECF 49 at 10. The Court may not do so, [a]t this stage of the proceedings, the Court takes the[] allegations as true."

---

[4] Defendant's reliance on *Estell v. McHugh*, No. 15-cv-04898-MEJ, 2017 U.S. Dist. LEXIS 48410, at *1 (N.D. Cal. Mar. 30, 2017) is misplaced. ECF 49 at 10. In *Estell*, the court dismissed a failure to accommodate claim for a second time because the plaintiff failed to include facts that form the basis of her claim such as when she made the accommodation request, to whom she made it, and why the request was necessary. *Id.* at *26. But here, Plaintiffs have gone above and beyond what is required. Plaintiffs have alleged what the representations are, why consumers value them, and extreme detail on why they are false. *See* FAC ¶¶ 16–69.

1   *Milan v. Clif Bar & Co.*, No. 18-cv-02354-JD, 2019 U.S. Dist. LEXIS 141403, at *7 (N.D. Cal.
2   Aug. 20, 2019) (Donato, J.). Dr. Castleman's testing confirmed that the Eufy Cameras' image
3   quality are clearly inferior to those of true "4K" and "2K" cameras. FAC ¶¶ 46–65. Multiple
4   side-by-side image comparisons of the Eufy Cameras and True 4K and 2K cameras show that
5   the True 4K and 2K cameras' images are much clearer despite the Eufy Cameras and True 4K
6   and 2K cameras being set to the same resolution. *Id.* ¶¶ 46, 52–53, 62–64, 66, 68. The MTF
7   quantitatively confirmed the inferior image quality of the Eufy Cameras. *Id.* ¶¶ 54–59. Most
8   importantly, Dr. Castleman's testing confirmed that the true resolution of the S300 eufyCam,
9   advertised as being a 4K camera is "less than 2K resolution" and the true resolution of the
10  Video Doorbell is less than 720p. *Id.* ¶¶ 63–65.[5]

11  Power Mobile argues that Dr. Castleman's testing and analysis "is nothing more than an
12  opinion that the overall video quality of two of Defendants' home security cameras is worse
13  than the overall video quality of some other cameras (e.g., the iPhone 12), in particular for
14  reading text at a distance—for reasons that have nothing to do with video resolution of pixel
15  count." ECF 49 at 10; *see id.* at 11–12 (speculating, outside the bounds of the complaint, that
16  the Eufy Cameras photos are blurry because the camera was moving, or there were issues with
17  camera lens or signal processing). However, in conducting his tests, Dr. Castleman "excluded or
18  minimized other image quality parameters, such as image noise, color, and lens distortion."
19  FAC ¶ 47. Defendant's speculation about the methodology cannot overcome Plaintiffs'
20  allegations. *See Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 U.S. Dist. LEXIS
21  149153, at *24 n.3 (N.D. Cal. 2021) ("Chobani argues that the survey's ostensibly flawed
22  methodology . . . should lead the Court to discount it. . . . However, evaluating the quality of a
23  plaintiff's evidence is inappropriate at this stage of the litigation.").

24  Power Mobile again argues that there is a "key disconnect between the subject of

---

[5] Power Mobile also argues that the Court should disregard Plaintiffs' counsel's testing because it "runs afoul of the source that [Plaintiffs] rely on, which admonishes that one cannot simply assume that a 'high-quality picture for viewers' was necessarily the result of 'more pixels,' or that a lower quality picture means fewer pixels." ECF 49 at 14. However, the article also explains that video quality is influenced by various factors beyond just pixel count.

Plaintiffs' factual allegations (the cameras' 'optical resolution') and the subject of the challenged advertising statements (the cameras' 'video resolution')." ECF 49 at 11; *see id.* at 11–12. However, as explained above (and Defendant Power Mobile acknowledges), several factors affect resolution. Dr. Castleman's testing is able to capture each of those factors and he ensured to "exclude[] or minimize[] other image quality parameters." FAC ¶ 47. Moreover, Plaintiffs allege that Power Mobile makes various representations relating to overall video and image quality and Dr. Castleman tested the veracity of those claims. *See* FAC ¶¶ 23–39 ("4K Detail Day and Night," "Spot tiny features on any potential trespasser," "4K" resolution, "Capture every event that occurs around your home in ultra-clear 2K resolution," "2K Detail Day and Night," "see 2K Ultra-HD details," "crisp 2K high-definition video," and "crystal clear 1080p HD."). Unsurprisingly, they did not withstand scrutiny.[6]

### D. Plaintiffs Have Standing To Challenge The Unpurchased Products.

A plaintiff has standing to pursue class claims relating to products the plaintiff did not purchase if the complaint alleges facts to show that the purchased and non-purchased products share "substantial" similarities. *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1141–42 (N.D. Cal. 2013); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Courts have previously found that diverse products bearing similar labels may be considered "substantially similar." *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413-TSH, 2021 U.S. Dist. LEXIS 86203, at *12 (N.D. Cal. May 5, 2021) (collecting cases); *see also Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654, at *7 (N.D. Cal. Jan. 5, 2010). If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012); *Moore v. GlaxoSmithKline Consumer*

---

[6] Power Mobile also argues that on "Plaintiffs' own theory, any supposed inferiority in the eufy cameras' optical resolution is due to image processing algorithms—and not due to pixel count/video resolution." ECF 49 at 13. Even if the inferiority were truly caused by Power Mobile processing algorithms, its "1080p" / "HD," "2K," and "4K" / "UHD" claims are still false because the Eufy Cameras are unable to provide "image quality" commensurate with those representations. FAC ¶¶ 1, 5, 19, 28, 44, 46–47, 67, 73, 78.

*Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 U.S. Dist. LEXIS 150394, at *8 (N.D. Cal. Aug. 6, 2021).

Contrary to Power Mobile's assertions, Plaintiffs include a non-exhaustive list of the Eufy Cameras which contain the identical challenged representations. FAC ¶ 22. The FAC gives representative examples of the "1080p" / "HD," "2K," and "4K" / "UHD" representations. *Id.* ¶¶ 23–39. Plaintiffs allege that Defendant has "advertised, marketed, and sold a variety of other Eufy-brand cameras" which falsely claim they are "capable of providing, variously, '1080p' / 'HD,' '2K,' and '4K' / 'UHD' video resolution." *Id.* ¶ 40. Thus, "[b]ased on Defendants' representations with respect to each and every Eufy Camera, consumers reasonably believe that when they use a Eufy Camera, they will be able to view both live and recorded video of a quality concomitant with that which Defendants have advertised and represented: '1080p' / 'HD,' '2K,' or '4K' / 'UHD.'" *Id.* ¶ 42.[7]

### E. The Court Should Grant Leave to Amend.

Plaintiffs respectfully request that the Court grant leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant Power Mobile's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend.

///
///
///
///

---

[7] Plaintiffs exceeded the Court's fifteen-page limit for oppositions by one page in their opposition to Defendant Fantasia Trading LLC's motion to dismiss. Plaintiffs' counsel apologizes for this oversight. Plaintiffs make the same arguments regarding Plaintiffs' standing in both oppositions.

1  Dated: February 26, 2024

**GUTRIDE SAFIER LLP**

  */s/ Seth A. Safier /*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*