| | |
|---|---|
| 1 | DIANA M. RUTOWSKI (STATE BAR NO. 238878) |
|   | drutowski@orrick.com |
| 2 | JACOB M. HEATH (STATE BAR NO. 238959) |
|   | jheath@orrick.com |
| 3 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|   | 1000 Marsh Road |
| 4 | Menlo Park, CA  94025-1015 |
|   | Telephone:   +1 650 614-7400 |
| 5 | Facsimile:   +1 650 614-7401 |
| 6 | REBECCA HARLOW (STATE BAR NO. 281931) |
|   | rharlow@orrick.com |
| 7 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|   | The Orrick Building |
| 8 | 405 Howard Street |
|   | San Francisco, CA  94105-2669 |
| 9 | Telephone:   +1 415 773 5700 |
|   | Facsimile:   +1 415 773 5759 |
| 10 | |
| 11 | THOMAS FU (STATE BAR NO. 325209) |
|    | tfu@orrick.com |
|    | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 12 | 355 South Grand Ave., Suite 2700 |
|    | Los Angeles, CA  90071-1596 |
| 13 | Telephone:   +1 213 629-2020 |
|    | Facsimile:   +1 213 612-2499 |

*Attorneys for Defendants*
*Fantasia Trading LLC and Power Mobile Life, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANH TRAN and JYOTINDRA SHAKYA, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FANTASIA TRADING LLC; POWER MOBILE LIFE, LLC,<br><br>Defendants. | Case No. 3:23-cv-03925-JD<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OVER POWER MOBILE LIFE, LLC AND FAILURE TO STATE A CLAIM**<br><br>Date:     June 20, 2024<br>Time:    10:00 a.m.<br><br>Judge:     Hon. James Donato<br>Location: Courtroom 11, 19th Floor |

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 3:23-CV-03925-JD

# NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 20, 2024, at 10:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable James Donato, located at 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, California 94102, Defendants Fantasia Trading LLC and Power Mobile Life, LLC, will and hereby do move to dismiss Plaintiffs' Second Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) as to Power Mobile Life and 12(b)(6). This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

Power Mobile Life, LLC seeks an Order pursuant to Federal Rule of Civil Procedure 12(b)(2) dismissing the Second Amended Class Action Complaint for lack of personal jurisdiction. Both Defendants seek an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Second Amended Class Action Complaint for failure to state a claim upon which relief can be granted.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 3:23-CV-03925

**TABLE OF CONTENTS**

Page

I. STATEMENT OF ISSUES TO BE DECIDED ............................................................................ 2
II. SUMMARY OF RELEVANT FACTS ...................................................................................... 2
III. LEGAL STANDARD .................................................................................................................. 4
IV. LEGAL ARGUMENT .................................................................................................................. 6
    A. The SAC Does Not Correct The FAC's Jurisdictional Defects ..................................... 6
    B. The SAC Does Not Correct The FAC's Defects On The Merits .................................. 8
        1. Plaintiffs still fail to plead facts showing that their devices were anything other than as advertised ........................................................................................ 8
        2. The SAC's new consumer-survey allegations are irrelevant ........................... 9
    C. Plaintiffs Should Not Be Given Yet Another Chance To Amend ............................... 11
V. CONCLUSION ........................................................................................................................... 11

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- i -

Defendants' Motion To Dismiss
Plaintiffs' SAC
Case No. 3:23-cv-03925

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................................ 5, 7

*In re Boon Glob. Ltd.*,
 923 F.3d 643 (9th Cir. 2019) .................................................................................................... 5, 7

*Briskin v. Shopify Inc.*,
 2022 WL 1427324 (N.D. Cal. 2022) ............................................................................................ 5

*Caces-Tiamson v. Equifax*,
 2020 WL 1322889 (N.D. Cal. 2020) ......................................................................................... 1, 6

*Calder v. Jones*,
 465 U.S. 783 (1984) ................................................................................................................. 5, 7

*Cervantes v. Countrywide Home Loans, Inc.*,
 656 F.3d 1034 (9th Cir. 2011) .................................................................................................... 11

*Doe v. City of San Mateo*,
 2008 WL 4774931 (N.D. Cal. 2008) ............................................................................................ 5

*Eclipse Grp. LLP v. Target Corp.*,
 2016 WL 8395077 (S.D. Cal. 2016) ............................................................................................. 4

*Estell v. McHugh*,
 2017 WL 1175589 (N.D. Cal. 2017) ............................................................................................ 5

*Gonzalez v. Planned Parenthood of L.A.*,
 759 F.3d 1112 (9th Cir. 2014) ...................................................................................................... 5

*Kennedy Funding, Inc. v. Chapman*,
 2010 WL 2528729 (N.D. Cal. 2010) ................................................................................. 2, 3, 5, 8

*Leite v. Crane Co.*,
 749 F.3d 1117 (9th Cir. 2014) ...................................................................................................... 5

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
 647 F.3d 1218 (9th Cir. 2011) ...................................................................................................... 7

*In re Outlaw Lab., LLP*,
 463 F. Supp. 3d 1068 (S.D. Cal. 2020) ........................................................................................ 5

*Park v. Cole Haan, LLC*,
 2018 WL 3438693 (S.D. Cal. 2018) ............................................................................................ 4

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- ii -

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 3:23-CV-03925

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................................5, 11

*Wehlage v. EmpRes Healthcare, Inc.*,
   791 F. Supp. 2d 774 (N.D. Cal. 2011) ........................................................................3, 8

*Woolfson v. Conn Appliances, Inc.*,
   2022 WL 888442 (N.D. Cal. 2022) ................................................................................7

**Statutes**

Fed. R. Civ. P. 9(b) ...........................................................................................................5

Fed. R. Civ. P. 12(b)(2) ..................................................................................................2, 4

Fed. R. Civ. P. 12(b)(6) ..................................................................................................2, 5

**Constitutional Provisions**

Due Process Clause .........................................................................................................7

**Other Authorities**

*2K vs 4K Security Cameras and Systems*, CCTV Camera World,
   https://www.cctvcameraworld.com/2k-vs-4k-security-cameras-systems ..................8

*What Does 4K Actually Mean*, Boxcast, https://www.boxcast.com/blog/what-does-
   4k-actually-mean .........................................................................................................8

- iii -

Defendants' Motion To Dismiss
Plaintiffs' SAC
Case No. 3:23-cv-03925

Orrick, Herrington & Sutcliffe LLP
Attorneys At Law
Silicon Valley

Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 60, does not remedy either of the defects that required dismissal of their First Amended Complaint ("FAC"), ECF No. 30. *See* ECF No. 56 (dismissal order). Accordingly, it too should be dismissed for the same reasons.

*First*, Plaintiffs' claims must be dismissed as to Defendant Power Mobile Life, LLC ("Power Mobile") because the SAC (just like the FAC) does not (and cannot) allege that Power Mobile's place of incorporation or principal place of business is in California such that it would be subject to general jurisdiction here, and lacks any "particularized allegations about [Power Mobile's] business activities purposefully directed at California" as would be required for specific jurisdiction. ECF No. 56 at 2. In fact, the only particularized allegations the SAC adds about Power Mobile's business activities—that it is listed as the owner of an app to operate certain security devices and that it is responsible for compliance with FCC regulations, SAC ¶¶ 13, 15—have nothing to do with California, or indeed with this case at all. Accordingly, the SAC still fails to show that this case "arises out of or relates to" activities that Power Mobile "purposefully directed" at California, as would be required to exercise personal jurisdiction over it. *Caces-Tiamson v. Equifax*, 2020 WL 1322889, at *3 (N.D. Cal. 2020).

*Second*, the SAC must be dismissed on the merits as to all Defendants, because the SAC (just like the FAC) fails to allege facts showing that Plaintiffs "did not get what [they] bargained for" when they purchased the devices at issue here. ECF No. 56 at 3. As this Court explained, Plaintiffs allege that they purchased two products: (1) "the Eufy Video Doorbell with Homebase because it was advertised as '2K'"—a representation that, according to Plaintiffs, meant the camera was "capable of recording an image with 3,686,400 distinct pixels," and (2) "an S300 eufyCam advertised as '4K,' which [Plaintiffs] said … mean[t] that it is 'capable of recording an image with 8,294,400 distinct pixels." ECF No. 56 at 2-3. But, as this Court found, the FAC did not allege "that [those] device[s] fell short of [those advertised] count[s]." *Id.* at 3. That fatal problem remains true in the SAC as well, which plainly admits (as it must) that "the cameras have the pixel count associated with Defendants' representations." SAC ¶ 1.

Plaintiffs try to dodge around this critical defect in the SAC by dancing around what the labels "2K" and "4K" mean. Specifically, the SAC claims that "when consumers see security

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 3:23-CV-03925

cameras advertised as being '1080p,' '2K,' and '4K,' they reasonably expect not only the correct pixel count, but also the corresponding amount of image detail." SAC ¶ 1. But Plaintiffs themselves have (as shown in the preceding paragraph) previously said exactly the opposite. In fact, they have not only stated (and cited multiple sources stating) that the labels "1080p," "2K," and "4K," refer to the number of "pixels" a camera is "capable of recording," FAC ¶¶ 17-19, nn.2-4, but also have expressly admitted that there is no "simple correlation between pixel quantity and image quality," ECF No. 47 at 11; *see also* ECF 56 at 3 (dismissal order relying on this admission). Plaintiffs' solution to that admission in their SAC to remove those allegations. But because "the Court is not required to accept as true allegations in an amended complaint that contradict allegations made in an earlier complaint," the SAC's suggestion that there is an "amount of image detail" that "correspond[s]" to the labels "1080p," "2K," and "4K" should be disregarded. *Kennedy Funding, Inc. v. Chapman*, 2010 WL 2528729, at *4 (N.D. Cal. 2010)). In any event, even if there were (contrary to Plaintiffs' admissions) some expected "amount of image detail" that a consumer would expect to "correspond[]" to those representations of video resolution, SAC ¶ 1, the SAC does not even attempt to specify what that corresponding level of detail would be—much less show that the devices at issue here fell short of that bar. Just like the FAC, then, the SAC still fails to show the falsity of any advertising statement made by Defendants.

The SAC is thus—for all relevant purposes—in exactly the same position as the FAC. Accordingly, it must be dismissed for the same reasons. This time, with prejudice.

## I.  STATEMENT OF ISSUES TO BE DECIDED

Power Mobile seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(2) dismissing it for lack of personal jurisdiction. Power Mobile and Fantasia both seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the suit for failure to state a claim with prejudice.

## II.  SUMMARY OF RELEVANT FACTS

Plaintiffs Jyotindra Shakya and Thanh Tran are two individuals who claim that they each bought a "eufy" branded security camera manufactured and sold by "Defendants." SAC ¶ 1. As this Court has explained, Plaintiff Tran "says that he purchased the Eufy Video Doorbell with Homebase because it was advertised as '2K,'" which "[h]e "says [meant] … that [it] is capable of

Orrick, Herrington & Sutcliffe LLP
Attorneys At Law
Silicon Valley

- 2 -

Defendants' Motion To Dismiss
Plaintiffs' SAC
Case No. 3:23-cv-03925

recording an image with 3,686,400 distinct pixels." ECF No. 56 at 2-3 (quoting FAC ¶¶ 18, 71). Plaintiff Shakya "says that he bought an S300 eufyCam advertised as '4K,' which is said to mean that it is 'capable of recording an image with 8,294,400 distinct pixels.'" ECF No. 56 at 3 (quoting FAC ¶ 19).[1] In August 2023, Plaintiffs filed this lawsuit, claiming that those "2K" and "4K" representations were false, and in December of that same year (after Fantasia had filed a motion to dismiss), Plaintiffs filed their FAC.

On March 18, 2024, this Court dismissed Plaintiffs' FAC. As an initial matter, it held that it lacked personal jurisdiction over Power Mobile, because the FAC contained "no particularized allegations about [its] business activities purposefully directed at California." ECF No. 56 at 2.

The Court then held that Plaintiffs' claims failed on the merits, because their FAC "d[id] not allege that [Plaintiff Tran] got a device that was anything other than a 2K camera," and or that Plaintiff Shakya "did not get what he bargained for, namely a 4K camera." ECF No. 56 at 3-4. In reaching that conclusion, the Court observed that the FAC contained allegations that Plaintiffs were "disappointed in the image quality" of their cameras, as well as claims that "[e]xpert testing … show[ed] that [a eufy] camera produced blurrier and otherwise inferior images than those of other 4K cameras." ECF No. 56 at 3. But it explained that those allegations were irrelevant because "video resolution"—the subject of the "2K" and "4K" advertising representations—is "not the same thing" as "image quality"—the subject of Plaintiffs' disappointment and their expert's analysis. *Id.* Indeed, the Court noted that Plaintiffs' "own test results show variation in the quality and clarity of the images among … cameras produced by Axis, Nikon, and Apple that are said to be truly 4K." *Id.* (citing FAC ¶ 52). Accordingly, because the FAC contained no allegations that the cameras at issue lacked the pixel counts promised by their "2K" and "4K" labels, Plaintiffs could not state a false advertising claim.

---

[1] Plaintiffs attempt to remove these admissions from their SAC, inserting in their place claims that labels like "2K" and "4K" convey representations about "image detail." *See, e.g.*, SAC ¶ 1. But these new allegations should be disregarded as the law is clear that "an amended complaint cannot allege facts inconsistent with [an earlier] pleading," *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 781 (N.D. Cal. 2011), and that "the Court is not required to accept as true allegations in an amended complaint that contradict allegations made in an earlier complaint," *Kennedy Funding*, 2010 WL 2528729, at *4.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 3:23-CV-03925

On April 25, 2024, Plaintiffs filed their SAC, which largely repeats the allegations this Court already found inadequate in the FAC. As to jurisdiction, the only particularized allegations about Power Mobile's business activities that the SAC adds are claims that "the smart phone application that is used to operate the Eufy Cameras … is listed on the Apple App Store as belonging to Defendant Power Mobile Life," SAC ¶ 13, and that "Defendant Power Mobile is 'the responsible party' for the [S330 eufyCam]'s 'compliance with FCC regulations,'" SAC ¶ 15. The SAC also claims in conclusory manner that "Fantasia and Power Mobile are jointly responsible for the conduct alleged herein." SAC ¶ 12.

On the merits, the SAC adds allegations claiming to report the results of two surveys Plaintiffs performed of "consumers in the United States," SAC ¶ 58, and "consumers of home security cameras" (who are not specifically identified as being in the United States), SAC ¶ 64. Plaintiffs do not claim to have shown the advertisements at issue to any survey respondents, or to have solicited their views on the same. Instead, they asked for views on a series of abstract questions, producing results supposedly showing that those respondents "believe[d] that cameras advertised as having a higher resolution" would "produce clearer video" (90%), "produce more detailed video" (87%), and make them "better able to recognize faces" (89%), SAC ¶¶ 60-62, and "believed that," as compared to a camera advertised as 720p, a camera advertised as 1080p would "provide clearer pictures and videos" (82%), would make it "easier to identify faces" (76%), and "would have a higher resolution" (85%). SAC ¶¶ 67-69. Plaintiffs do not add allegations regarding the actual pixel count or quality or performance of the cameras at issue here beyond those already present in the FAC.

### III.  LEGAL STANDARD

"[A] Rule 12(b)(2) challenge to personal jurisdiction may attack the legal theory supporting jurisdiction based on the facts as pleaded (a facial attack) or the facts themselves (a factual attack)." *Eclipse Grp. LLP v. Target Corp.*, 2016 WL 8395077, at *7 (S.D. Cal. 2016). Where, as here, a defendant brings a facial attack, "it challenges the sufficiency of the allegations to establish jurisdiction." *Park v. Cole Haan, LLC*, 2018 WL 3438693, at *2 (S.D. Cal. 2018). Specifically, a facial challenge is resolved by "accepting the plaintiff's allegations as true and drawing all

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 3:23-CV-03925

reasonable inferences in the plaintiff's favor," and then asking "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). To survive such a challenge, the plaintiff must, as relevant here, allege facts "show[ing] each defendant's sufficient, direct contacts with the forum state." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). That is because, "each party's 'contacts with the forum [s]tate must be assessed individually.'" *Id.* (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Accordingly, "a complaint that lumps multiple defendants together in broad allegations falls short." *Briskin v. Shopify Inc.*, 2022 WL 1427324, at *3 (N.D. Cal. 2022).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That means that the complaint must, at a minimum, "allege facts sufficient to establish each element of each cause of action." *Doe v. City of San Mateo*, 2008 WL 4774931, at *4 (N.D. Cal. 2008). Where a plaintiff fails to allege such facts, particularly when they are readily ascertainable and "offers no explanation why [she] cannot" do so, her claim must be dismissed. *Estell v. McHugh*, 2017 WL 1175589, at *10 (N.D. Cal. 2017). That said, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). While a court must accept all material factual allegations as true, it is not required to accept as true any allegations that are contradicted by matters that are subject to judicial notice, that are exhibits to a complaint, or that are incorporated by reference in a complaint. *See, e.g., Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014). Additionally, "the Court is not required to accept as true allegations in an amended complaint that contradict allegations made in an earlier complaint." *Kennedy Funding*, 2010 WL 2528729, at *4.

What is more, where (as here) a complaint rests on a theory of false advertising, its allegations "are subject to the heightened pleading requirements of Rule 9(b)." *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1085 (S.D. Cal. 2020). That is true even if not all causes of action require a showing of fraud as "a necessary element of [the] claim," because Rule 9(b) applies to any claim that "sound[s] in fraud"—i.e., any claim where the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [the] claim." *Vess*

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 3:23-CV-03925

*v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  Here, every one of Plaintiffs' claims rests on the assertion that Defendants purportedly lied when advertising their products as "4K," "2K," or "1080p," and so every one of those claims must state "'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.  That is, Plaintiffs "must set forth more than the neutral facts necessary to identify the transaction," and must plead facts showing "what is false or misleading about a statement, and why it is false." *Id.*

## IV.  LEGAL ARGUMENT

### A.  The SAC Does Not Correct The FAC's Jurisdictional Defects.

Specific jurisdiction over a defendant exists only where the complaint alleges facts showing (1) the defendant "purposefully direct[s] his activities" toward the state or its residents; and (2) the claim before the court "arises out of or relates to the defendant's forum-related activities." *Caces-Tiamson*, 2020 WL 1322889, at *3.  This Court dismissed Plaintiffs' claims against Power Mobile because the FAC did not get past even the first element:  It lacked any "particularized allegations about business activities purposefully directed at California."  ECF No. 56 at 2.  That same problem plagues the SAC as well.

Indeed, the only "particularized allegations" that the SAC makes about Power Mobile have nothing to do with California at all.  Instead, they claim only that "the smart phone application that is used to operate the Eufy Cameras … is listed on the Apple App Store as belonging to Defendant Power Mobile Life," SAC ¶ 13, and that "Defendant Power Mobile is 'the responsible party' for the [S330 eufyCam]'s 'compliance with FCC regulations,'" SAC ¶ 15.  But neither of those allegations has **any** California connection, much less shows that Power Mobile purposefully directed its business activities at this state.  What is more, neither of those allegations has anything to do with the false advertising claims in this case, and so neither show that Plaintiffs' claims "arise[] out of or relate[] to the defendant's forum-related activities," *Caces-Tiamson*, 2020 WL 1322889, at *3.  Accordingly, just like the FAC, the SAC still remains without any "particularized allegations about [Power Mobile's] business activities purposefully directed at California," and so must be dismissed for this same reason.  ECF No. 56 at 2.

Orrick, Herrington & Sutcliffe LLP
Attorneys At Law
Silicon Valley

- 6 -

Defendants' Motion To Dismiss
Plaintiffs' SAC
Case No. 3:23-cv-03925

The SAC cannot escape this conclusion with its repetitive series of conclusory allegations that Power Mobile is "jointly responsible," with Fantasia, for every allegation in the SAC ¶ 12; *see also id*. ¶¶ 16-20. As an initial matter, as Power Mobile already explained in its prior motion to dismiss, *see* ECF No. 49 at 7-8, "each party's 'contacts with the forum [s]tate must be assessed individually,'" with "an individualized jurisdictional analysis for each" defendant. *In re Boon Glob.*, 923 F.3d at 651 (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Plaintiffs cannot circumvent that foundational legal rule, rooted in the Due Process Clause, *id.* at 650, simply by incanting conclusory allegations to the contrary, *see Iqbal*, 556 U.S. at 678 (courts are "not bound to accept as true a legal conclusion couched as a factual allegation").

Just as important, even if Power Mobile and Fantasia were "jointly responsible for" every allegation in the SAC (they are not), that still would not show that Power Mobile is subject to personal jurisdiction in this Court. Indeed, nothing in the SAC shows *any* case-related act, by any defendant, that was purposefully directed at California in a way that would give rise to the kind of specific personal jurisdiction that Plaintiffs seek to exercise over Power Mobile. Instead, this Court's personal jurisdiction over Fantasia comes from *general* personal jurisdiction, which has nothing to do with purposeful direction of suit-related acts, but is instead based on Fantasia having its "principal place of business in Ontario, California." SAC ¶ 10. That kind of jurisdiction, however, is not available as to Power Mobile, because as the SAC admits Power Mobile's place of incorporation and principal place of business are both elsewhere. SAC ¶ 11; *see Woolfson v. Conn Appliances, Inc.*, 2022 WL 888442, at *2 (N.D. Cal. 2022) (corporation whose place of incorporation and principal place of business are elsewhere can be subject to general jurisdiction in California only if it has contacts with California so "exceptional" as "to approximate physical presence"); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011) (similar).

The SAC's attempt to lump Power Mobile's and Fantasia's acts together for purposes of personal jurisdiction thus fails twice over—not only is such an analysis expressly forbidden by the caselaw, but it would also get Plaintiffs nothing in terms of establishing the specific jurisdiction they seek to have the court exercise over Power Mobile. Accordingly, with respect to personal

jurisdiction, the SAC is in exactly the same position as the FAC and must be dismissed for the same reasons.

### B. The SAC Does Not Correct The FAC's Defects On The Merits.

#### 1. Plaintiffs still fail to plead facts showing that their devices were anything other than as advertised.

This Court dismissed the FAC's false advertising claims for a simple reason: It did not allege facts showing that the devices Plaintiffs purchased were anything other than as advertised. As this Court explained, Plaintiff Tran "purchased the Eufy Video Doorbell with Homebase because it was advertised as '2K'"—a representation that "he sa[id]" meant the camera was "capable of recording an image with 3,686,400 distinct pixels." ECF No. 56 at 2-3. Likewise, Plaintiff Shakya "sa[id] that he bought an S300 eufyCam advertised as '4K,' which [he] said … mean[t] that it is 'capable of recording an image with 8,294,400 distinct pixels." *Id.* at 3. The FAC, however, "d[id] not plausibly allege that [their] device[s] fell short of th[ose] count[s]." *Id.* Said otherwise, it did not show that Plaintiff Tran "got a device that was anything other than a 2K camera," or that Plaintiff Shakya "did not get what he bargained for, namely a 4K camera." *Id.* at 3-4. Accordingly, neither Plaintiff could bring a claim for false advertising.

While Plaintiffs add (and attempt to strategically remove) a number of allegations in their SAC, none of those amendments does or can address the basic problem this Court identified. After all, "an amended complaint cannot allege facts inconsistent with [an earlier] pleading." *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 781 (N.D. Cal. 2011); *see also, e.g.*, *Kennedy Funding*, 2010 WL 2528729, at *4 ("[T]he Court is not required to accept as true allegations in an amended complaint that contradict allegations made in an earlier complaint."). Accordingly, it still remains the case that—as admitted by both Plaintiffs themselves and the sources they cited throughout both their original Complaint and FAC—the labels "4K" and "2K" meant, respectively, "capable of recording an image with 8,294,400 distinct pixels" and "capable of recording an image with 3,686,400 distinct pixels." ECF No. 56 at 2-3; *see also, e.g.*, FAC ¶¶ 17-19 (citing *What Does 4K Actually Mean*, Boxcast, https://www.boxcast.com/blog/what-does-4k-actually-mean; *2K vs 4K Security Cameras and Systems*, CCTV Camera World, https://www.cctvcameraworld.com/2k-vs-

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 8 -

Defendants' Motion To Dismiss
Plaintiffs' SAC
Case No. 3:23-cv-03925

4k-security-cameras-systems). And it still remains the case that the allegations confirm Plaintiffs both got devices that had exactly those capabilities. ECF No. 56 at 2-3; *see also* SAC ¶ 1 ("[T]he cameras have the pixel count associated with Defendants' representations."). Accordingly, it also still remains the case that Plaintiffs have not alleged that Plaintiff Tran "got a device that was anything other than a 2K camera," or that Plaintiff Shakya "did not get what he bargained for, namely a 4K camera." ECF No. 56 at 3-4. Plaintiffs' false advertising claims thus must again be dismissed.

### 2. The SAC's new consumer-survey allegations are irrelevant.

The SAC tries to plead around this problem by suggesting that Plaintiffs performed surveys supposedly showing that "when consumers see security cameras advertised as being '1080p,' '2K,' and '4K,' they reasonably expect not only the correct pixel count, but also the corresponding amount of image detail." SAC ¶ 1. When it comes to the methodology of the surveys themselves, however, Plaintiffs provide little to demonstrate the validity or reliability of their methods. What little description the SAC does provide, though, indicates that the survey respondents were **never** even shown any of the advertisements at issue in this case, much less asked to share their understanding of them. Instead, Plaintiffs indicate that they simply asked for respondents' views on a series of abstract questions, producing results supposedly showing that those respondents "believe[d] that cameras advertised as having a higher resolution" (an unspecified "higher resolution") would "produce clearer video" (90%), "produce more detailed video" (87%), and make them "better able to recognize faces" (89%), SAC ¶¶ 60-62, and "believed that," as compared to a camera advertised as 720p, a camera advertised as 1080p would make "provide clearer pictures and videos" (82%), would make it "easier to identify faces" (76%), and "would have a higher resolution" (85%). SAC ¶¶ 67-69. Nothing in those new assertions, however, comes close to addressing the defects that mandated dismissal of Plaintiffs' FAC, for at least two reasons.

*First*, the conclusion that the SAC seeks to draw from the survey evidence—that when consumers "see security cameras advertised as being '1080p,' '2K,' and '4K,' they reasonably expect not only the correct pixel count, but also the corresponding amount of image detail," SAC ¶ 1—is entirely unsupported by the survey results themselves. In fact, Plaintiffs themselves have admitted that exactly the opposite is true, stating in their FAC (in which they also cited multiple

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 3:23-CV-03925

sources saying the same thing) that a "'2K' camera is one that is capable of recording an image with 3,686.400 distinct pixels," and a "'4K' camera is one that is capable of recording an image with 8,294,400 distinct pixels." FAC ¶¶ 17-19, nn.2-4. What is more, Plaintiffs have also expressly admitted that (contrary to their assertions in the SAC) there is no "simple correlation between pixel quantity and image quality," ECF No. 47 at 11; *see also* ECF 56 at 3 (dismissal order relying on this admission). In fact, they continue to make this admission in their SAC, too, confessing that "pixels alone do not determine video and image detail." SAC ¶ 71.

Unsurprisingly, none of the claimed survey results purport to show that there is any "corresponding amount of image detail" to the labels "1080p," "2K," and "4K." Instead, the results show (at most) that consumers would expect that—as a theoretical matter, holding all else equal—a camera with a higher pixel count would have some, unspecified amount of higher detail than one with a lower pixel count. *See* SAC ¶ 66 (explaining that the "only difference" between the two cameras that survey respondents were asked about were the representations "1080p" and "720p"). But that unremarkable conclusion is worlds away from showing what Plaintiffs claim here—that there is some fixed, "corresponding amount of image detail" for each camera advertised with pixel count of "'1080p,' '2K,' and '4K.'" SAC ¶ 1. Indeed, as this Court has already explained when discussing the analysis supposedly performed by Plaintiffs' technical expert, their "own test results show variation between the quality and clarity of the images among [various] cameras produced by Axis, Nikon, and Apple that are [all] said to be truly 4K." ECF No. 56 at 3 (citing FAC ¶ 52); *see also* SAC ¶ 82 (reproducing those same images). In other words, Plaintiffs' own expert has refuted the SAC's suggestion that there is some expected level of "image detail" that "correspond[s]" with a representation of "4K," "2K," or "1080p" video resolution, SAC ¶ 1.

*Second*, even if there were (contrary to Plaintiffs' admissions) some expected "amount of image detail" that a consumer would expect based on advertising representations of "4K," "2K," or "1080p" video resolution, the SAC does not even attempt to specify what that level of detail would be—much less show that the devices fell short of that bar. At the most basic level, Plaintiffs' false advertising claims require them to identify an advertising statement and plead "what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1103. That means that if, as

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 10 -

Defendants' Motion To Dismiss
Plaintiffs' SAC
Case No. 3:23-cv-03925

here, Plaintiffs wish to claim that Defendants made a false advertisement about video quality, they must allege (at a minimum) facts showing both what level of video quality Defendants advertised their products as having, and that those products actually have video quality at some lower level. The allegations added in Plaintiffs' SAC do not attempt to do either. For this reason, too, Plaintiffs' consumer-survey allegations do not move the needle for them.

Because none of the new allegations in the SAC materially changes the analysis that this Court applied in dismissing the FAC, the SAC should be dismissed on the merits for the same reasons.

### C. Plaintiffs Should Not Be Given Yet Another Chance To Amend.

Plaintiffs have now thrice failed to address the basic defect at the heart of their case—in their initial complaint, in the FAC they filed after Defendants' first motion to dismiss, and again in the SAC after Defendants' second motion to dismiss was granted. And there is no reason to expect a different result if they are given yet another bite at the apple. Indeed, as shown above, given Plaintiffs' admissions to this point, there is nothing they could allege in order to allow their false advertising claims to survive. Accordingly, their SAC should be dismissed in its entirety, without leave to amend. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (leave to amend may be denied where "amendment would be futile").

## V.  CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' SAC in its entirety for lack of personal jurisdiction and for failure to state a claim, with prejudice and without leave to amend.

DATED: May 9, 2024

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Diana M. Rutowski
DIANA M. RUTOWSKI

*Attorneys for Defendants
Fantasia Trading LLC and
Power Mobile Life, LLC*